Robert A. Simon
Texas Bar No. 18390000
**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**ATTORNEYS FOR ALLEGED DEBTOR,
COLE WAYNE JOHNSON**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **COLE WAYNE JOHNSON,** | § | **Case No. 26-43993-mxm** |
| | § | **Chapter 7** |
| **Debtor.** | § | |

# COLE JOHNSON'S MOTION TO DISMISS INVOLUNTARY PETITION
**(Pertains to Docket No. 1)**

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

Cole Wayne Johnson ("Cole Johnson") files this Motion (the "Motion") to Dismiss the Involuntary Petition that was filed on September 4, 2026 (the "Petition" or "Involuntary Petition") by certain Petitioning Creditors: Century Bank ("Century"), Huntington Bank f/k/a Cadence Bank ("Cadence"), Hunt Guillot & Association, LLC ("HGA"), Crawford, Wishnew, & Lang, PLLC ("CWL") and Spin Capital, LLC ("Spin Capital") (the "Petitioning Creditors"). In support of the Motion and dismissal of the Involuntary Petition Cole Johnson would respectfully show the Court the following:

**I.**

**INTRODUCTION**

Involuntary bankruptcy is an extraordinary remedy that should be used sparingly. Here, the Involuntary Petition is procedurally defective and substantively unwarranted. The evidence will show that the Involuntary Petition is already diminishing the value of the assets and future revenue streams that should be used to fund a global settlement with all creditors. Both Cole Johnson and Cord Johnson are working with existing State Court Receiver, Craig Noack, to reach a global settlement that would benefit all creditors far more than would an involuntary bankruptcy. The Involuntary Petition should be dismissed swiftly for the reasons set forth herein.

First, Cole Johnson has more than twelve creditors and there are not three (3) petitioning creditors with claims undisputed as to liability and amount. Alleged creditors, Cadence and Century, hold one indivisible judgment (the "Cadence/Century Judgment") and collectively comprise, at most, one petitioning creditor for purposes of satisfying the requirement of three (3) petitioning creditors in 11 U.S.C. § 303(b). However, neither Cadence nor Century qualifies as a petitioning creditor because they have collected at least $329,393.30 through an interpleader action that was never credited against the Cadence/Century Judgment.

Furthermore, Cadence garnisheed at least six (6) bank accounts and has not accounted for any amounts collected.[1] Cadence and Century have also received the benefit of $15,000 collected by a federal court receivership, and that offset has not been applied. Neither Cadence nor Century holds a claim that is undisputed as to amount since they have not credited Cole or Cord Johnson

[1] Cadence has not informed Cord Johnson or Cole Johnson about what amounts it has received.

for past collections. *See* 11 U.S.C. § 303(b) (claims must be undisputed as to liability **and amount**.)

HGA does not qualify as a petitioning creditor because it unlawfully usurped a claim that belongs to Marilyn Garner, the Chapter 7 trustee for Bighorn Construction and Reclamation, LLC, Case No. 24-42003-mxm-7. Spin Capital does not qualify as a petitioning creditor because*, inter alia*, it is a limited liability company and is not represented by counsel, as required by law. Thus, Spin Capital has not properly appeared in this case. Furthermore, Spin Capital has collected a portion of its judgment and has not stated what portion, if any, remains unpaid. The fact that the unpaid amount is unknown makes the claim disputed. Similarly, CWL does not qualify as a Petitioning Creditor because there is a dispute as to the amount they are owed. Specifically, CWL has failed to disclose that they entered into a settlement agreement with Cole and Cord Johnson by which CWL agreed to reduce the amount they owed from $37,484.39 to $20,000.00, a fact not reflected in the Involuntary Petition.

Second, although Cole Johnson has unpaid creditors from past business ventures, he is currently paying his debts as they come due.

Third, the Involuntary Petition was filed in bad faith, as a punitive action by Cadence and Century after the manifest failure of the efforts to collect their judgment through a Federal Court receivership—a receivership in which Cadence repeatedly pushed the ethical limits of a receivership and then refused to pay the receivers.

Cole Johnson is already subject to prior State Court receiverships and has been working cooperatively with State Court Receiver, Craig Noack, to structure a global settlement for all creditors. There is no evidence that a bankruptcy would provide greater benefit to the creditors. Rather, Mr. Noack should be allowed to finish his work for the benefit of all creditors. Even if the

Petitioning Creditors could satisfy the standard required by 11 U.S.C. § 303(b) (they cannot), the Court may, and should, abstain pursuant to 11 U.S.C. § 305.

Fourth, the Petitioning Creditors—Century, Cadence, HGA, CWL, and Spin Capital—failed to comply with the procedural requirements for an involuntary petition. All of them are corporations or limited liability companies. Accordingly, pursuant to Federal Bankruptcy Rule 1010(b), each was required to file a corporate ownership statement in compliance with Federal Bankruptcy 7007.1. They failed to do so, in violation of Bankruptcy Rules 1010(b) and 7007.1. The failure to do so may constitute grounds for dismissal.

Finally, the Involuntary Petition has already caused Cole Johnson enormous economic injury and threatens to destroy him and his business interests if allowed to proceed. Pursuant to 11 U.S.C. § 303(e), "after notice and hearing, and for cause, the court may order the petitioners to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section." Subsection 303(i) authorizes the Court to award attorneys' fees and costs if the involuntary petition is dismissed. If the involuntary petition was filed in bad faith, the Court may also award any damages proximately caused by the filing and punitive damages. Cole Johnson has incurred substantial attorneys' fees and costs to oppose the Involuntary Petition. Additionally, the Petitioning Creditors filed the Involuntary Petition in bad faith because they knew it was defective and filed it anyway.

Here, a substantial bond is necessary to protect Cole Johnson from ongoing and increasing damages should the Involuntary Petition be dismissed. A bond is particularly appropriate here, because Century and Cadence have both proven to be bad faith actors who refuse to pay their bills—even when ordered to do so by a federal judge. For example, in a co-pending case before Judge Cureton, styled *Candence Bank et al. v. Cord Johnson, et al.*, which is still pending in the U.S. District Court for the Northern District of Texas, Fort Worth Division, Cadence refused to

pay the three (3) Federal Court receivers and/or their attorneys as required by the applicable receivership orders, forcing those receivers to conduct expensive and time-consuming litigation in the District Court to recover their fees. In view of Cadence's and Century's obstinate refusal to pay three (3) prior Federal Court-appointed receivers and/or their attorneys, and the damages likely to result from the bad faith filing of the Involuntary Petition, Cole Johnson seeks a bond in an amount no less than $10,000,000.

## II.

## BACKGROUND FACTS

### A. Cole Johnson

1. Cole Johnson is a natural person who lives in Parker County, Texas. Cole Johnson has a brother, Cord Johnson ("Cord"), who is also subject to an involuntary petition in the Northern District of Texas, Fort Worth Division, in Case No. 26-43995-elm-7. Cole and Cord Johnson are currently involved in various business activities. Cord Johnson's business is the purchase, development, and sale of real estate, through various limited liability companies. Cole is the Co-CEO of Bimergen Energy Corporation ("Bimergen"), which develops and owns utility-scale battery energy storage systems, which are used to store renewable electricity and balance load on the power grid. Bimergen is a public company, traded on the NYSE. Cole is a corporate officer and director, but he is not a shareholder.[2] Cole is paid a salary for his work.

2. Bridgelink Engineering, LLC ("Bridgelink") and Bighorn Construction & Reclamation, LLC ("BCR") had a $34 million credit facility with Cadence and Century that included a $26 million accordion feature to support growth. When Bridgelink and BCR attempted to exercise the accordion feature by requesting the additional $26 million, the banks denied the

[2] Certain entities under Cole's control own some Bimergen stock, but not a controlling interest.

request, making it impossible for BCR to continue its business. Approximately $150 million in projects then halted, disrupting construction and the collection of project receivables. Third-party valuations prepared at the time of the dispute placed the engineering business's median current market value at approximately $350 million. Cole and Cord Johnson were guarantors of the credit facility, and all the claims of the Petitioning Creditors arise directly or indirectly from the failure of Bridgelink Engineering and BCR.

3. On August 7, 2023, Craig Noack was appointed as Receiver for BCR, Cole and Cord Johnson (the "Receivership Order"). A true and correct copy of the August 7, 2023 Receivership Order is attached hereto, incorporated by reference, and marked as **Exhibit "1."** Pursuant to the August 7, 2023 Receivership Order, all non-exempt property of Cole and Cord Johnson was placed in *custodia legis*. On December 16, 2024, Craig Noack was again appointed as Receiver for Cole and Cord Johnson. A true and correct copy of the December 16, 2024, Receivership Order is attached hereto, incorporated by reference, and marked as **Exhibit "2."** Pursuant to the December 16, 2024 Receivership Order, all non-exempt property of Cole and Cord Johnson was again placed in *custodia legis* of Mr. Noack as Receiver. Those Receiverships remain in place. Cole and Cord Johnson have worked cooperatively with Craig Noack to develop a plan for the repayment of creditors. Mr. Noack and his counsel have done a considerable amount of work in that regard, and he opposes the Involuntary Petition as an unnecessary waste of resources that is unlikely to result in a greater recovery by creditors. The evidence will show that a bankruptcy proceeding would destroy value rather than add value.

4. Cole and Cord Johnson are no longer in the businesses that caused their prior financial distress, and their current business activities are successful. For example, Cole Johnson is the Co-CEO of Bimergen Energy Corporation ("Bimergen"), a publicly traded corporation that

has raised tens of millions of dollars from investors.[3] Cole also own Triangle 40 Ranch, LLC, which filed a voluntary petition in this Court, and paid all pre-petition creditors in full, including approximately $3.4 million paid to Blackburn Ranches, LLC. Cole is paying all current debts as they come due from his Bimergen salary. No creditor with a recent claim has joined the Involuntary Petition. All of the alleged debts arise from the prior business activities of BCR/Bridgelink and affiliated entities, which ceased operation in 2022 and early 2023. Including older obligations and current business obligations, Cole Johnson each has more than twelve creditors.

5. Cole Johnson is not disposing of assets or otherwise acting to dissipate assets in any way. On the contrary, Cole Johnson is actively engaged in business, building asset value to help fund a settlement with his creditors through the existing State Court Receiver, Craig Noack.

**B. <u>History with Petitioning Creditors</u>**

***Cadence and Century***

6. BCR and Bridgelink were engineering, procurement and construction companies that worked to construct traditional energy and renewable energy infrastructure across the United States. They had a single credit agreement with Cadence and Century. Those two banks cut off credit at a time when BCR/and Bridgelink needed it, resulting in multiple defaults and the failure of the companies. Cole and Cord Johnson were personal guarantors of the credit agreement. Cadence and Century then sued BCR, several other affiliated entities, Cole Johnson, and Cord Johnson in the United States District Court for the Northern District of Texas in Case No. 4:23-CV-00609. The District Court awarded judgment to Cadence and Century on June 17, 2024 (Dkt. No. 76), in the principal amount of $39,825,693.39 (the "Cadence/Century Judgment"). A true

[3] Cole Johnson indirectly own shares Bimergen, but not a majority.

and correct copy of the Cadence/Century Bank Judgment is attached hereto, incorporated by reference, and marked as **Exhibit "3."** The Cadence/Century Judgment was joint and several as to the defendants and did not divide up the judgment as between Cadence and Century. The Cadence/Century Judgment is one, unitary, indivisible obligation on both sides.

7. Cadence and Century sought from the U.S. District Court and obtained an order creating a new receivership for Cole and Cord Johnson and appointment of additional receivers (the "Receivership Order"). *See* Dist. Ct. Dkt Nos. 231.[4] Cole and Cord Johnson sought modification of the Receivership Order and obtained some relief. *See* Dist. Ct. Dkt Nos. 243. Cadence, Century, and the Receivers availed themselves of extensive post-judgment discovery, pursuant to which they took two depositions of Cord Johnson and received tens of thousands of pages of documents. The Receivership was not successful, collecting only $15,000 or so. Cadence and Century burned through three (3) Federal court receivers in nine (9) months, and the District Court dissolved the Receivership Order on July 7, 2026. (Dist. Ct. Dkt No. 364.) A true and correct copy of the Order Dissolving the Receivership is attached hereto, incorporated by reference, and marked as **Exhibit "4."** The Court reasoned that the existence of prior State Court receiverships obviated the need for an additional Federal Court receivership. Despite the dissolution of the Federal Court receivership, after the expenditure of many hundreds of thousands of dollars, the State Court receiverships (the "Receiverships") and State Court Receiver, Craig Noack (the "Receiver") remain in place. Cole and Cord Johnson continue to work with Mr. Noack on resolution of all of their debts.

[4] The first two Receivers were Kelly McCullough and Jason Rea. They were represented by Rochelle McCullough, LLC. After McCullough, Rea, and their counsel resigned, due to their inability to work with Cadence and Century, Andrew Korn was appointed as Receiver. The same thing happened to him.

8. The Cadence/Century Judgment is held jointly by Cadence and Century and is not readily divisible. The Cadence/Century Judgment itself contains no division or apportionment as between the two banks. Cadence and Century themselves cannot agree about how to divide any proceeds received. To the contrary, Century is currently suing Cadence for *fraud* in relation to the exactly the same obligation. Century asserts that Cadence repeatedly lied to Century about the credit and lending relationship, and it pleads fraud with particularity, even naming the specific bank officer who allegedly made the misrepresentations. Century asserts that Cadence owes it damages for fraud, negligent misrepresentation, money had and received, and attorneys' fees arising from the same transaction that produced the Cadence/Century Judgment. A true and correct copy of Century's state-court Original Petition against Cadence is attached hereto, incorporated by reference, and marked as **Exhibit "5."** Accordingly, not only is the Cadence/Century Judgment on its face a single indivisible claim, but Century Bank is suing Cadence for fraud over the same transaction. As between the two of them, this a disputed obligation. Accordingly, Century and Cadence are, at most, one creditor for purposes of 11 U.S.C. § 303(b). *In re Edwards*, 501 B.R. 666, 677-79 (Bankr. N.D. Tex. 2014); *In re Atwood*, 124 B.R. 402, 409 (S.D. Ga. 1991). Furthermore, Cadence has collected at least $329,303.30 (probably much more), without crediting Cole and Cord Johnson for that amount or for any other funds collected. Accordingly, their liability for the Cadence/Century Bank Judgment is disputed as to amount. Thus, neither Cadence nor Century qualifies as a petitioning creditor under Section 303(b). Century Bank and Cadence each knew of these fundamental defects before they filed the Involuntary Petition, and thus, filed it in bad faith.

***Hunt Guillot & Associates, LLC ("HGA")***

9. HGA is an engineering firm that contracted with BCR (*not* Cord or Cole Johnson) for certain engineering services. BCR defaulted on the obligation, and HGA obtained a state court

judgment in Louisiana for breach of contract *by BCR*. On June 7, 2024, BCR filed a voluntary petition for Chapter 7 relief in this Court in Case No. 24-42003-mxm-7. A true and correct copy of the voluntary petition is attached hereto, incorporated by reference, and marked as **Exhibit "6."** The filing triggered the protection of the automatic stay of 11 U.S.C.§ 362(a). Marilyn Garner is the Chapter 7 trustee for BCR.

10. HGA was a noticed creditor and knew about BCR's bankruptcy. Nevertheless, in defiance of the automatic stay, on November 14, 2024, HGA appeared in State Court in Louisiana and asked for a default judgment holding Cole and Cord Johnson liable as the alter egos of BCR for the full amount of HGA's judgment against BCR. This action represents an egregious violation of the stay. Under prevailing Fifth Circuit case law, claims that Cole or Cord Johnson should be held liable for the debts of BCR as its alter ego belong to the bankruptcy estate, not to individual creditors. *See S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987). The Louisiana state court entered judgment finding alter ego liability on November 22, 2024 (the "Alter Ego Judgment"). A true and correct copy of the Alter Ego Judgment is attached hereto, incorporated herein by this reference, and marked as **Exhibit "7."**

11. The Alter Ego Judgment contains no findings of any fraudulent representations made by Cole or Cord Johnson to HGA.[5] Rather, the Alter Ego Judgment appears to rest on a "pure" alter ego theory that Cole and Cord Johnson are liable for all the debts of BCR based upon their ownership of and relationship to BCR, not based upon any specific lies told to HGA. This is precisely the type of "traditional" alter ego claim that belongs to the bankruptcy estate and not to individual creditors under *S.I. Acquisition*. Although Cole and Cord Johnson received notice of HGA's intent to seek an alter ego determination, there is no evidence that Marilyn Garner received

[5] The improper alter ego judgment specifically references the BCR bankruptcy in its footnote 1.

notice of their action, and the alter ego claim belongs to her, as Trustee for BCR. The Court's docket in the BCR Chapter 7 proceeding, Case No. 24-42003-mxm-7, does not reflect any motion for relief from the automatic stay to pursue an alter ego claim in state court. A true and correct copy of the Court's Docket in the BCR case is attached hereto, incorporate by reference, and marked as **Exhibit "8."**

12. The pursuit of the alter ego judgment violated the automatic stay and is thus voidable. The cause of action belongs to Marilyn Garner, who alone has standing to pursue it. HGA's lack of standing to pursue the claim is a matter of subject matter jurisdiction, implicating an issue of federal bankruptcy law, that can be raised at any time, even collaterally. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("Standing, since it goes to the very power of the court to act, must exist at all stages of a proceeding."). The Court need not adjudicate the standing issue in the action. Rather, the Court need only recognize that ownership of HGA's alter ego claim against Cord and Cole Johnson (*i.e.*, its only basis for claiming to be a creditor of Cord or Cole Johnson) is subject to a *bona fide* dispute. Thus, HGA is not a valid petitioning creditor pursuant to Section 303(b). Furthermore, HGA was aware of the BCR bankruptcy at the time it sought an alter ego determination in violation of the automatic stay and in violation of well-known Fifth Circuit law. *See S.I. Acquisition, 817* F.2d at 1149-51.

***Spin Capital***

13. Spin Capital was a merchant cash advance ("MCA") lender that purchased receivables from Bridgelink/BCR. Spin Capital obtained a judgment against various parties, including Cole and Cord Johnson, in State Court in Nassau, New York on February 9, 2024 (the "Spin Capital Judgment"). The Spin Capital Judgment was domesticated in Harris County, Texas on March 20, 2024. A true and correct copy of the Notice of Filing of Final Judgment with the

Spin Capital Judgment is attached hereto, incorporated by reference, and marked as **Exhibit "9."** Spin Capital is a creditor, owed some amount. However, there are numerous problems with Spin Capital's inclusion as a petitioning creditor here. First, Spin Capital is a limited liability company, and the Involuntary Petition was signed electronically by "Josh Lubin." There is no indication that Mr. Lubin is an attorney, or that he signed the Involuntary Petition in that capacity. Additionally, since Mr. Lubin is not an e-filer in the Northern District of Texas, he cannot have an electronic signature. The Court should disregard the signature as invalid. Even if Mr. Lubin's purported signature were valid, he is not an attorney, and no attorney has appeared for Spin Capital in this case. Spin Capital cannot appear or participate in this case *pro se*. Pursuant to 28 U.S.C § 1654, a natural person may represent himself; however, federal courts have "uniformly held that [the statute] does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993); *Huffines Retail Partners, LP v. Atlas Apartments Acquisition, LLC*, Civil Action No. 3:19-CV-2425-S-BH, 2021 U.S. Dist. LEXIS 49861, at *7 (N.D. Tex. 2021) ("a limited liability company is also an artificial entity that may only appear in federal court through licensed counsel"). Accordingly, Spin Capital has not appeared before the Court and did not validly sign the Involuntary Petition. The Court should disregard Spin Capital as a Petitioning Creditor on that basis alone.

14. But there is more. While Spin Capital has a judgment, the amount of the liability is disputed by the very pleadings filed. Spin Capital's Notice of Filing Foreign Judgment recites a debt of $8,228,824.31. The Involuntary Petition recites a debt amount of $8,234,160.50. The discrepancy is $5,336.19, and there is no explanation for the difference. Further, Spin Capital previously engaged in aggressive collection actions. On August 16, 2024, Spin Capital garnisheed

judgment-debtor accounts at Charles Schwab Bank. A true and correct copy of Writ of Garnishment is attached hereto, incorporated by reference, and marked as **Exhibit "10."** Spin Capital provided no accounting of what it collected and how collections were applied, if at all, to the Judgment amount. Accordingly, the amount still owed under the Spin Capital Judgment remains undetermined. The existence of any offset to the debt, such as unaccounted-for collections on a judgment, may form the basis for a *bona fide* dispute. *Credit Union Liquidity Servs., LLC v. Green Hills Dev. Co., LLC (In re Green Hills Dev. Co., LLC)*, 741 F.3d 651, 658 (5th Cir. 2014). Spin Capital knew about the discrepancy between the Spin Capital Judgment amount and the amount disclosed on the Involuntary Petition. Spin Capital knew about its own collection activities and the garnishment and failed to provide an accurate accounting of the debt, all of which implicate a lack of due diligence and reflect bad faith.

***CWL***

15. CWL is a law firm in Dallas that obtained a judgment against Bridgelink Investments, LLC and Cole Judgment for $37,484.39 for unpaid legal fees. Subsequently, CWL wrongfully filed a lien against Cord Johnson's homestead in effort to collect. Cole Johnson and CWL entered into a Rule 11 agreement. Cole Johnson believes that the intent and effect of the agreement was to reduce the debt amount to $20,000, in exchange for partial payment. Accordingly, the amount of the debt is subject to a good faith dispute.

**Bad Faith**

16. Every Petitioning Creditor signed the Involuntary Petition in bad faith. None of them filed a corporate ownership statement as required by Bankruptcy Rule 1010(b). All of the Petitioning Creditors knew of the requirement to have three (3) petitioning creditors with undisputed claims. Each of them knew or should have known that they did not meet this requirement. Cadence and Century knew their judgment was not readily divisible and knew about

the litigation between themselves as to the specific transaction that gave rise to the judgment. Further, Cadence and Century knew that the amount of their indivisible claim on the Involuntary Petition was inaccurate, as they had already collected funds that should have been deducted from the amount still owed under the Cadence/Century Judgment. Instead, they would lead this Court to believe they never collected anything. HGA asserts a claim it does not own and purported to acquire in direct violation of the automatic stay. Spin Capital filed the Involuntary Petition without an attorney and filed the Involuntary Petition based on a claim amount that it knew to be wrong. Indeed, none of the Petitioning Creditors qualifies as a holder of a claim that is undisputed as to both liability and amount, as required by Section 303(b). CWL has failed to acknowledge that the amount of its claim was reduced via a settlement agreement. The Involuntary Petition plainly does not satisfy the requirements of Section 303(b) and must be dismissed. The defects were obvious, and the Petitioning Creditors either failed to do appropriate due diligence or disregarded the numerous issues with the Involuntary Petition that proper due diligence would have revealed. The Petitioning Creditors' bad faith justifies compensatory and punitive damages. Alternatively, the deficiencies in the Involuntary Petition, combined with the Petitioning Creditors' manifest lack of good faith. justify abstention under Section 305.

## III.

## ARGUMENT

### A. Legal Standard for An Involuntary Petition

17. The standard for consideration of an involuntary petition is statutory and set forth in 11 U.S.C. §§ 303(b) and 303(h). Section 303(b) provides as follows:

> An involuntary petition against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-
>
> By three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or subject to **bona fide dispute as to**

> **liability or amount**, or an indenture trustee representing such holder, if such non-contingent, undisputed claims aggregate at least $21,050 more than the value of any lien on property of the debtor securing such claim held by the holders of such claims.

Section 303(h) states in relevant part:

> [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed only if-
>
> (1) the debtor is generally not paying such debtor's debts as they come due unless such debts are subject to a **bona fide dispute as to liability or amount**[.] (Emphasis added).

If the court dismisses an involuntary petition, other than by mutual agreement of the petitioning creditors and the debtor, the court may grant judgment against the petitioners and in favor of the alleged debtor for reasonable attorney' fees and costs. If the court determines that the involuntary petition was filed in bad faith, the court may also award the alleged debtor compensatory damages and punitive damages. 11 U.S.C. §§ 303(i)(1) and (i)(2). To protect the alleged debtor from the enormous economic and reputational damages that may flow from an involuntary petition, after notice and hearing, and for cause, the court may order the petitioning creditors to post a bond to indemnify the alleged debtor for any future award he may receive under Section 303(i). Finally, even if the involuntary petition meets the technical requirement of Sections 303(b) and (h), the court may nonetheless, dismiss or suspend an involuntary petition under 11 U.S.C. § 305(a)(i) "if the interests of the creditors and the debtor would be better served by such dismissal or suspension." Notably, for purposes of abstention under Section 305, the court is required to consider the interest of "creditors" generally not the particular interests of the *petitioning* creditors.

### B. There Are Not Three Petitioning Creditors Who Hold Claims Undisputed as to Both Liability and Amount

18. Nominally, there are four creditors who hold undisputed claims. In reality, there are none. Century and Cadence are, at most, one "creditor" for purposes of Section 303(b), because

they hold a single, indivisible claim represented by the Cadence/Century Judgment. On its face, the Cadence/Century Judgment is a single, indivisible obligation in the principal amount of $39,825,693.39. The debt arises from a single credit agreement. The debt is joint and several as to Cole and Cord Johnson, and no provision in the Cadence/Century Judgment purports to divide or apportion it as between Century and Cadence. Even though Cadence and Century each had a separate promissory note, they made no effort to apportion the obligation in the Cadence/Century Judgment.[6] They sought and received a single, consolidated judgment. Indeed, there is still no agreement between them as to an apportionment, as Century is suing Cadence for fraud and misrepresentation over the exact same transaction, the same debt, and the amount of money owed. When two creditors jointly hold one indivisible claim and do not agree between themselves how to divide it, they are a single creditor for purposes of Section 303(b). *Edwards*, 501 B.R. at 677-79; *Atwood*, 124 B.R. at 409 ("joint holders of an obligation constitute a single creditor for purposes of § 303(b)"). Thus, Century and Cadence constitute, at most, a single petitioning creditor for purposes of Section 303(b).

19. However, even the Cadence/Century Judgment does not qualify as an undisputed claim because the banks have failed to give Cole or Cord Johnson credit for their collections against that debt. Cadence has collected at least $329,393.30. Specifically, on April 15, 2024, the 157th District Court of Harris County, Texas, in Case No. 2023-33972, ordered that $329,393.30 be released from the court's registry in partial satisfaction of Cadence's and Century's judgment (the "Disbursement Order"). The Disbursement Order was entered before the Cadence/Century Judgment was issued but after the briefing and submission of evidence in support of Cadence's

---

[6] The summary judgment evidence submitted by Cadence and Century in support of the Cadence/Century Judgment indicates that no effort was made to apportion or divide the claim.

and Century's Motion for Summary Judgment that resulted in the Cadence/Century Judgment.[7] The summary judgment evidence submitted by Cadence and Century contains no reference to the Disbursement Order or the collection of the $329,393.30. Since that issue was not part of the summary judgment proceedings, it did not merge into the Cadence/Century Judgment. The Cadence/Century Judgment stands, but Cole and Cord Johnson are entitled to credit for the collections against the judicially determined debt, which, *inter alia*, makes the Cadence/Century Judgment disputed as to amount.

20. The holder of a claim does not qualify as a petitioning creditor under Section 303(b) if its claim is "the subject of ***a bona fide dispute as to liability or amount***." 11 U.S.C. § 303(b); *Green Hills*, 741 F.3d at 655 (emphasis added). Before 2005, a claim could qualify as "undisputed" if liability was clear, but the amount was disputed. In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection ("BAPCPA"). The statute amended the provisions of Section 303(b) to include the words "or amount." *Id.* The amendment changed the meaning of Section 303(b), broadened the definition of "bona fide dispute," and rendered pre-BAPCPA precedent obsolete. *Green Hills*, 741 F.3d at 657. Accordingly, the law is now clear that any good faith dispute as to debtor's liability on the claim or the amount of the claim disqualifies the creditor for purposes of Section 303(b). *Green Hills*, 741 F.3d at 657 n. 23 (citing *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, 913 (Bankr. N.D. Tex 2009)); *In re Mountain Dairies, Inc*., 327 623, 633-34 (Bankr. S.D.N.Y. 2007). The entry of a state court judgment does not necessarily make a claim "undisputed" if there are other reasons to question the validity, enforceability, or accuracy of the judgment. *In re Marbach Associates, LLC*, 2025 Bankr.

---

[7] The summary judgment evidence in support of the Cadence/Century Judgment was submitted on April 1, 2024, two (2) weeks before the Disbursement Order was entered. Cadence probably did not receive the money for some period of time after the Disbursement Order entered, possible several weeks. If Cadence did not receive the money until after June 7, 2024, the funds would have become property of BCR's bankruptcy and stay relief would have been required.

LEXIS 3366 at *12 (Bankr. W.D. Tex. Dec. 30, 2025). For purposes of disqualifying a creditor under Section 303(b), the Court need only find that a good faith dispute exists; it need not adjudicate that dispute. *Green Hills*, 741 F.3d at 658. ([T]he court's aim is to "ascertain whether a dispute that is bona fide exists … not to actually resolve the dispute.").

21. HGA's state court alter ego judgment does not qualify as an undisputed claim because HGA improperly usurped a cause of action that belonged to Marilyn Garner as Chapter 7 trustee for the Estate of BCR, in Case No. 24-42003-mxm-7. BCR filed a Chapter 7 petition in this court on June 7, 2024. The filing of the BRC Chapter 7 petition triggered the protections of the automatic stay as to the BCR bankruptcy estate. 11 U.S.C. § 362(a). Any claim that Cole and Cord Johnson should, on an alter ego theory, be held liable for the debts of BCR is property of the bankruptcy estate and belongs to the Trustee. 11 U.S.C. § 541(a); *S.I. Acquisition*, 817 F.2d at 1149-51. Furthermore, any action to prosecute such a claim would be subject to the automatic stay. *Id*. at 1150-1.

22. HGA was a noticed creditor in the BCR Chapter 7 and was aware of it. Notwithstanding that knowledge, and without seeking relief from the automatic stay, HGA sued Cole and Cord Johnson in Louisiana State Court to hold them liable for BCR's debts as BCR's alter egos. The HGA Judgment does not contain any findings of fraud or misrepresentation by Cole or Cord Johnson. They were apparently held liable simply because of their (indirect) ownership and control of BCR. Although Cole and Cord Johnson apparently were notified of the action, there is no evidence that the Chapter 7 Trustee for BCR was notified. The Court's docket in the BCR bankruptcy does not reflect the filing of any motion for relief from the automatic stay. The stay violation is a voidable act that the Chapter 7 trustee may seek to avoid, on that basis alone.

23. Furthermore, HGA does not own and has never owned the alter ego claim that it wrongfully asserted in state court. The legal right belongs exclusively to the BCR bankruptcy

estate and the Chapter 7 trustee. The wrongful pursuit of the alter ego claim did not divest the Chapter 7 trustee of that claim, and HGA never had standing to assert it. The lack of standing is jurisdictional and can be raised at any time:

> The class contends that defendants waived their right to contest standing by not raising the issue during the original appeal. We have recognized, however, that standing is essential to the exercise of jurisdiction, and that lack of standing can be raised by a party at any time. *United States v. One 18th Century Columbian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), cert. denied., 481 U.S. 1014, 107 S. Ct. 1889, 96 L. Ed 2d 496 (1987). "Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, not merely when the action is initiated or during an initial appeal." *Safir v. Dole*, 231 U.S. App. D.C. 63, 718 F.2d 475, 481, (D.C. Cir. 1983), cert. denied., 467 U.S. 1206, 104 S. Ct. 2389, 81 L. Ed. 347 (1984). We find no waiver.

*Sommers Drug Stores*, 883 F.2d at 348. The HGA Judgment is invalid, because HGA usurped a cause of action it did not own and never had standing to assert. The claim is subject to a good faith dispute as to liability and amount. HGA does not qualify as a petitioning creditor for purposes of Section 303(b). HGA knew about the BCR bankruptcy, ignored the automatic stay, and asserted a claim it did not own under well-known Fifth Circuit case law. Thus, it has acted in bad faith and should be held to account for the damages it is causing.[8]

24. Spin Capital does not qualify as a valid petitioning creditor for at least two reasons: First, Spin Capital signed the Involuntary Petition *pro se*, without representation by counsel. Spin Capital is not natural person; it is a limited liability company. Corporations, limited liability companies, partnerships, and other associations cannot appear in federal court unless represented by a licensed attorney. *Manzoor A. Memon, et. al. v. Allied Domecq QSR et. al.*, 385 F.3d 871, 873 (5th Cir. 2004) *(citing Rowland*, 506 U.S. 192, 202 (1993)); *Huffines Retail Partners, LP,* 2021 U.S. Dist. LEXIS 49861, at *7. Accordingly, Spin Capital has not appeared in this matter

[8] *S.I. Acquisition*, 817 F.3d 1142 is very well-known Fifth Circuit case. It is not esoteric or obscure law. Louisiana is in the Fifth Circuit. Counsel in Louisiana should be familiar with the case. HGA's counsel knew or certainly should have known that alter ego/veil piecing claims against the control persons of BCR belong to the bankruptcy estate.

and cannot be a petitioning creditor. Second, even if Spin Capital hires counsel, its claim is disputed as to the amount. Spin Capital's Notice of Filing Foreign Judgment recites a debt of $8,228,824.31. The Involuntary Petition recites a debt amount of $8,234,160.50. The discrepancy is $5,336.19, and there is no explanation for the difference. Furthermore, Spin Capital engaged in overly aggressive collection actions. On August 16, 2024, Spin Capital garnisheed judgment-debtor accounts at Charles Schwab Bank and seized funds in partial satisfaction of the Spin Capital Judgment. Spin Capital has not given Cole or Cord Johnson credit against the Spin Capital Judgment for the amounts collected. Spin Capital is only entitled to one recovery. The existence of an uncredited offset to the debtor's liability qualifies as a good faith dispute as to the amount of the claim. *Green Hills*, 741 F.3d at 657-59. Thus, Spin Capital does not qualify as a petitioning creditor pursuant to Section 303(b). WCL's claim is disputed as to amount because of the parties' partial settlement agreement reducing the amount of the debt. The Involuntary Petition lacks the required minimum of three petitioning creditors with claims undisputed as to liability and amount. Accordingly, it must be dismissed.

### C. The Petitioning Creditors Have Failed to Comply with Bankruptcy Rules 1010(b) or 7007(1)

25. Pursuant to Bankruptcy Rule 1010(b), the Petitioning Creditors were required to file a Corporate Ownership Statement containing the information described in Bankruptcy Rule 7007(1). Bankruptcy Rule 1010(b) states: "A corporation that files an involuntary petition must file and serve with the petition a corporate-ownership statement containing the information described in Rule 7007.1." Fed. Bankr. R. Pro. 1010(b). For its part, Rule 7007.1 states the information that must be present in a corporate disclosure statement, which requires "a statement identifying any parent corporation and any publicly held corporation that owns 10% or more of its stock or stating there is no such corporation." Fed. Bank. R. Pro. 7007.1(a). Rule 7007.1 further

states that the disclosure statement must "be filed with the corporation's first appearance, pleading, motion, response, or other request to the court." Bank. R. Pro. 7007.1(b).

26. Cadence, Century, HGA, CWL, and Spin Capital are all corporations (or limited liability companies), and were thus required to file a corporate ownership statement. Cadence and Century Bank are also large institutions, represented by high-priced, competent counsel. There is no excuse for the failure to comply with this basic rule.[9] Failing to provide a corporate ownership statement when required is an indicator of bad faith, and when combined with other deficiencies, may constitute grounds for dismissal of a pleading. *Walton v. Roberts (In re Kiamsha Cmty. Dev. Corp.*), 2010 Bankr. LEXIS 4002, at *16-17 (Bankr. N.D. Ga. September 9, 2010) (failure to file a corporate ownership statement was, among other issues, "further evidence of the improper purpose of the filing of the petition" and contributed to grounds for dismissal.). Consequently, the Involuntary Petition should be dismissed.

## D. <u>Cole Johnson is Generally Paying His Debts as they Come Due</u>

27. The Petitioning Creditors must show by a preponderance of the evidence that Cole Johnson is not generally paying his debts as they come due. *In re Green Hills Dev. Co., LLC,* 445 B.R. 647, 657 (Bankr. S.D. Miss. 2011). Proof of a general failure to pay:

> requires not only general information about the debtor's cash disbursements, but also about the due dates of its obligations, whether the debtor's nonpayment of a past due obligation is the result of an inability or an unwillingness to pay, and, if the latter, whether the debtor's dispute involves a substantial issue of fact or law."
> *Id.* at 660-61.

[9] In the case pending before Judge Cureton, Cadence and Century were warned repeatedly about their failure to comply with the Court's local rules. *Cadence Bank et al. v. Cord Johnson, et al.*, Case 4:23-cv-00609-BJ (N.D. Tex.), ECF No. 316 ("The Court recognizes, as outlined in the judgment debtors' response …, that there has been an ongoing failure on all sides to confer with opposing parties as required by the local rules of this District. The Court warns that any further motions filed without a certificate of conference demonstrating good faith conferral will be denied."). Their disregard for this Court's rules persists.

Relevant here, "[a] finding that a debtor is generally not paying its debts 'requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts.'" *Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.)*, 277 F.3d 1057, 1072 (9th Cir. 2002) (citation omitted). The Northern District of Texas has formulated a four part test for determining whether a debtor is paying their debts as they come due:

(1) The number of unpaid claims
(2) The amount of such claims
(3) The materiality of the non-payments; and
(4) The debtor's overall conduct in her financial affairs

*In re Moss*, 294 B.R. 411 (Bankr. N.D. Tex. 2000).

28. Here, all relevant factors support a finding that Cord Johnson is paying his debts as they come due. Cole Johnson has far more than twelve creditors. The Petitioning Creditors' claims represent a minority of Cole Johnson's creditors and obligations.[10] Though Cole Johnson has old debts resulting from the failure of BCR, he is currently his debt as they come due. A chart showing Cole Johnson's current obligations and his payments of those obligations is attached hereto, incorporated by reference, and marked as **Exhibit "11."** Cole Johnson has attempted to settle, without success, with Cadence and Century Bank, to whom he offered a substantial down payment and a stream of payments totaling $10,000,000 over time. Cadence and Century Bank have not responded to that good faith offer in any meaningful way. Furthermore, some of the Petitioning

[10] The Petitioning Creditors all have claims resulting from the prior failure of BCR, which is a Chapter 7 debtor in Case No. 24-42003-mxm-7. Subsequently, Cole and Cord Johnson's other businesses have done well. A Chapter 7 would effectively destroy those more recent and more successful ventures, to the ultimate harm of all creditors. A Chapter 7 would not only hurt Cole and Cord Johnson, it would also hurt thousands of innocent investors in Bimergen, lenders, third-party businesses and employees. The Johnsons have successful businesses and provide employment for 25-50 people at a given time. This does not include the thousands of contractors that the entities employ and pay on time.

Creditors have collected a portion of their judgments but failed to give Cord Johnson credit for those collections.

29. Cole Johnson's overall conduct in his financial affairs also weighs against the Petitioning Creditors. Cole Johnson is a legitimate and savvy businessman who has done nothing to diminish estate assets or otherwise hinder creditors, aside from the simple fact that he does not have the resources on hand to pay every outstanding historical business dispute obligation in full at this moment. Instead, like the majority of individuals or entities with large debt obligations, Cole Johnson is servicing his debts, complying with inquiries of the State Court Receiver, and negotiating with creditors and the State Court Receiver to resolve his debts. Cole Johnson's inability to persuade the Petitioning Creditors, particularly Cadence and Century, to pursue an economically rational course, does not change that fact.

30. All of the relevant factors support a finding that Cole Johnson is generally paying his debts as they come due. Petitioning Creditors can demonstrate nothing more than that Cole Johnson has not paid his debts in full. Simply showing that Cole Johnson has a few unpaid debts insufficient to satisfy the Petitioning Creditors evidentiary burden. *Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.)*, 277 F.3d 1057, 1072 (9th Cir. 2002). Consequently, the Petitioning Creditors cannot satisfy all elements of 11 U.S.C. § 303(b) and the Involuntary Petition should be dismissed.

**E. <u>The Involuntary Petition was Filed in Bad Faith</u>**

31. Involuntary petitions must be filed in good faith. Even if the Court determines the Involuntary Petition satisfies the technical elements of 11 U.S.C. § 303, and this one does not, it is "well-established" that the Court may dismiss an involuntary bankruptcy case that was filed in bad faith. *In re Abir*, Case No. 07-12877 (ALG), 2007 Bankr. LEXIS 4362, 2007 WL 4556909, at *4 (Bankr. S.D.N.Y. Dec. 20, 2007). The Northern District of Texas has previously

acknowledged that bankruptcy courts have applied “a dizzying array of standards” when analyzing whether an involuntary petition was filed in bad faith including:

> (1) the “improper use” test, which finds bad faith when a petitioning creditor uses involuntary bankruptcy proceedings in an attempt to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum[;]
>
> (2) the “improper purpose” test, which finds bad faith based upon the petitioner's improper motivation for filing the petition. Cases under this line of reasoning have emphasized that the petition was motivated by ill will, malice or for the purpose of harassing the debtor[;]
>
> (3) the “objective test,” which essentially asks the question whether or not a reasonable person would have filed the involuntary petition under the same circumstances;
>
> (4) the “subjective test” which is almost identical to the "improper purpose" test in that they both look to the subjective motivation of the petitioning creditor for the filing; and
>
> (5) the “combined” or “two part” test which finds bad faith based upon consideration of both the subjective motivation and the objective reasonableness of the petitioning creditor(s).

*Nuetra, Ltd. Terry (In re Acis Capital Management, L.P.),* 604 B.R. 484, 530-531 (N.D. Tex. 2019) (the court itself applied a “totality of circumstances or combined test in analyzing [petitioning creditor’s] good faith.”).

32. The Fifth Circuit has not yet expressly adopted a particular standard for assessing involuntary petitions, but it has considered objective and subjective factors, such as whether “the filing of the petitions was motivated by ill will, malice or for the purpose of embarrassing or harassing the debtor[s],” and whether petitioning creditors “conducted a reasonable inquiry into the facts and the law prior to filing the petitions, as required by Bankruptcy Rule 9011.” *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993).

33. Here, several factors indicate that the Involuntary Petition was filed in bad faith: (a) the Involuntary Petition was filed for an improper purpose; (b) Cadence and Century pretended to be two petitioning creditors, when they have one, indivisible obligation, about which they are litigating[11]; (c) none of the Petitioning Creditors filed a corporate ownership statement pursuant to Fed. Bankr. R. 1010(b); (d) Spin Capital lied about how much money it is owed; (e) all of the Petitioning Creditors failed to disclose their knowledge of an affiliate bankruptcy, *i.e.*, Bighorn Construction and Reclamations, LLC,[12] (f) HGA acquired its judgment in violation of the automatic stay and did not have standing to assert the claim; (g) the Petitioning Creditors failed to conduct a reasonable inquiry in to the facts and law before filing the Involuntary Petition or ignored what they found; (h) Cadence and Century have collected substantial funds in partial satisfaction of the debt owed to them and have not acknowledged or accounted for those collections to any court, including this Court, the U.S. District Court, or to any receiver in State Court or Federal Court. Cadence and Century knew about the collections, but they still present the Candence/Century Judgment as if those collections did not occur. That is bad faith.

**a. Improper Purpose**

34. "When a Bankruptcy Court suspects an involuntary filing is a sham or is collusive, the Court may make proper inquiry into the circumstances of the filing." *In re Grossinger*, 268 B.R. 386, 387 (Bankr. S.D. N.Y. 2001) (citing *F.D.I.C. v. Cortez*, 96 F.3d 50 (2nd Cir. 1996)). "Filing an involuntary petition for an improper purpose . . . manifests bad faith." *Id.* at 389.

35. "By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power that could be abused." *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d

[11] *See* Exhibit 5.
[12] This failure is particular egregious because all of their claims arose from the failure of BCR, and each of was a noticed creditor in that case.

Cir. 2016). "Such a remedy exists as an avenue of relief for the benefit of the overall creditor body . . . . [It] was not intended to redress the special grievances, no matter how legitimate, of particular creditors . . . . [Such creditors] must seek redress under state law, in the state courts[,] and not in the bankruptcy court." *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997). Courts routinely find it improper for creditors to use the bankruptcy courts to gain a personal advantage in other pending actions or **as a debt-collection device**." *In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3rd Cir. 2015) (holding that an involuntary petition was filed to exert pressure on a debtor to pay a judgment "without regard to [the debtor's] other creditors, many of which had higher priority claims"). "Debt collection is not a proper purpose of bankruptcy." *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 & n.11 (4th Cir. 1993). Bankruptcy courts have "appropriately recognized the interest of the bankruptcy system, and thus the public interest, in preventing parties from exploiting the bankruptcy system for non-bankruptcy-related reasons, especially when adequate remedies exist in state courts." *Wilk Ausland LLP v. Murray (In re Murray)*, 900 F.3d 53, 63 (2nd Cir. 2018). The State Court Receiver has been working with Cord and Cole Johnson for at a least a year on global resolution of their respective obligations. The Petitioning Creditors know about the State Court Receiver, Mr. Noack, but they have never bothered to contact him.

36. The Petitioning Creditors cannot legitimately contend that the Involuntary Petition is being brought to stop the dissipation of estate assets or to protect the creditor body as a whole. There is no evidence that Cole Johnson is dissipating assets. Rather, the evidence indicates that the value of Cole Johnson's assets is increasing. The Petitioning Creditors filed the Involuntary Petition in attempt to conscript this Court into acting as their personal debt collector. The Petitioning Creditors have already undertaken great efforts to collect their judgments against Cole Johnson, including the appointment of three separate Federal Court Receivers, at the instigation of

Candence and Century. The receivership order that initially appointed as receivers Kelly McCullough and Jason Rae and then, after their resignation, appointed as receiver Mr. Andrew Korn, was dissolved once the Federal District Court realized the State Court Receiver already held all of Cole and Cord Johnson's non-exempt assets in *custodia legis*. Now, after the failure of the Federal Court Receivership and the banks' unwillingness to work cooperatively with the State Court Receiver, the Petitioning Creditors now ask this Court to fill the role of the State Court Receiver. The Involuntary Petition is part of a continued campaign by the Petitioning Creditors to forgo reasonable negotiations with Cole Johnson and instead engage in ethically questionable collection tactics for their own benefit, and not for the benefit of the creditors generally. The Involuntary Petition was brought in bad faith, for an improper purpose, and should be dismissed.

**b. Failure to Comply with Bankruptcy Rule. 1010(b)**

37. As described above, pursuant to Bankruptcy Rule 1010(b), the Petitioning Creditors were required to file Corporate Ownership Statements containing the information described in Bankruptcy Rule 7007.1. All of the Petitioning Creditors are corporations (or limited liability companies). Despite that fact, they uniformly failed to comply with this basic requirement. Other bankruptcy courts have previously held that failing to comply with this requirement constitutes "further evidence of the improper purpose of the filing of the petition" and could warrant dismissal of a case when combined with other indicators of bad faith. *Kiamsha Cmty. Dev. Corp.*, 2010 Bankr. LEXIS 4002, at *16-17. "An attorney who undertakes to represent his client as a petitioning creditor in an involuntary case must, at the very least, read and comply with the applicable section of the Bankruptcy Code. Failure to do so manifests bad faith, especially on the part of a bankruptcy specialist with years of experience." *Grossinger*, 268 B.R. at 387. The Petitioning Creditors, save for Spin Capital, which is not represented by an attorney, and has not lawfully appeared in this proceeding, are represented by sophisticated bankruptcy counsel. The

failure to file a corporate ownership statement, which is a requirement for a corporation that appears in any adversary case or involuntary petition and is not some obscure or arcane rule, further evidences the Petitioning Creditors' bad faith.

**c. Spin Capital Mispresented How Much Money It Is Owed**

38. As discussed above, Petitioning Creditor Spin Capital is not being honest about how much Cole Johnson owes it. Spin Capital's Notice of Filing Foreign Judgment recites a debt of $8,228,824.31. The Involuntary Petition recites a debt amount of $8,234,160.50. The discrepancy is $5,336.19, and there is no explanation for the difference. Furthermore, on August 16, 2024, Spin Capital garnisheed judgment-debtor bank accounts at Charles Schwab Bank and seized funds in partial satisfaction of the Spin Capital Judgment. Spin Capital has not given Cole or Cord Johnson credit against the Spin Capital Judgment for the amounts collected. Spin Capital absolutely knew or should have known at the time the Involuntary Petition was filed, under penalty of perjury, that it was not being honest about how much money it was owed. Spin Capital's dishonesty taints the Involuntary Petition at a basic level and constitutes clear bad faith.

**d. The Petitioning Creditors Affirmatively Lied Regarding their Knowledge of Affiliate Bankruptcies**

39. Question 9 on the Involuntary Petition asks: "Do you know of any Bankruptcy cases pending by or against any partner, spouse, or affiliate of this debtor?" Petitioning Creditors answered "no." *See* Involuntary Petition at pg. 2 [Dkt. No. 1]. This is a clear and easily provable falsehood. All the Petitioning Creditors knew of an active bankruptcy of an affiliate of Cole Johnson's, BCR. In fact, all of their claims against Cole Johnson arose due to the failure of that entity.

40. The Bankruptcy Code defines an "affiliate" as a "corporation 20 percent or more of whose outstanding voting securities are directly or **<u>indirectly</u>** owned, controlled, or held with

power to vote, by the debtor." 11 U.S.C. § 101(2)(B) (emphasis added). BCR currently has an active Chapter 7 bankruptcy in this Court. *See* Case No. 24-42003-mxm-7. BCR lists Cole Johnson as a control person on its statement of financial affairs, clearly making it an affiliate of Cole Johnson. *See* Case No. 24-42003-mxm-7, the SOFA at pg. 6 [Dkt No. 11]. While BCR is 100% owned by Bridgelink Engineering, LLC, that entity is ultimately, indirectly owned and controlled by Cole and Cord Johnson, which the Petitioning Creditors know.

41. The Petitioning Creditors' knowledge of the BCR bankruptcy and its status as an affiliate of Cole Johnson is indisputable. Cadence has filed a claim in the BCR case and is one of the largest creditors. *See* Case No. 24-42003-mxm-7, POC 57-1. Century and Cadence both affirmatively appeared in the case and sought a 2004 examination of BCR. *See* Case No. 24-42003-mxm-7 [Dkt. No. 30]. HGA was explicitly listed as a creditor of BCR on its schedules and has been consequently receiving notices regarding the case. *See* Case No. 24-42003-mxm-7, Schedules at pg. 39 [Dkt No. 7]. Likewise, Spin Capital was also listed as a creditor on the schedules. *Id.* at pg. 66.

42. HGA's alleged claim against Cole Johnson is based upon a judgment for $938,678.53, imposing liability on Cole and Cord Johnson **as the alter egos of BCR**. Both the judgment and the pleadings that support it prove conclusively that HGA was well aware of the BCR bankruptcy case and consciously aware that Cole and Cord Johnson controlled BCR before its bankruptcy case was filed. HGA plainly knows that BCR's bankruptcy case is an affiliated case. Despite their clear knowledge of the BCR bankruptcy and its status as an affiliate of Cole and Cord Johnson, the Petitioning Creditors omitted this information from the Involuntary Petition. At a minimum, this failure demonstrates negligence and a lack of diligence on the part of the Petitioning Creditors and serves as yet another indicator of the bad faith and the haphazard nature in which the Involuntary Petition was filed.

**e. HGA Fraudulently Obtained its Judgment and Obtained its Judgment in Violation of the Automatic Stay.**

43. HGA obtained its judgment against Cole Johnson fraudulently. A cursory examination of HGA's judgment shows that it is void and unenforceable due to the fact that: (1) HGA obtained a judgment that belongs to the Chapter 7 trustee for BCR, and (2) HGA violated the automatic stay to obtain the judgment. As discussed above, BCR is a debtor in an active bankruptcy case in which HGA was listed as a creditor. BCR filed its petition on June 7, 2024, thus invoking the protection of the automatic stay. Upon the filing of the Petition, all legal right belonging to the debtor (BCR) vested in the estate. 11 U.S.C. § 541(a). Those rights include any claims that principals of the debtor are liable for debts as alter egos or due to a theory of piercing the corporate veil. The legal theory that alter ego claims against the control persons of a debtor belong to the bankruptcy estate has been well settled law in the Fifth Circuit for nearly 40 years. As explained by the Fifth Circuit in *S.I. Acquisitions*, which applied the automatic stay against a state law alter ego suit against a bankrupt debtor's owners:

> nothing in Texas law prohibits a corporation from asserting on its own an action based on alter ego and that in fact the underlying policy of the remedy supports this conclusion.
>
> We, therefore, conclude that [creditor's] alter ego action is a right of action belonging to [the debtor] and, as such, is "property of the estate" within the meaning of section 541(a)(1). Accordingly, the automatic stay of section 362(a)(3) applies to [creditor's] state action.

*In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1154 (5th Cir. 1987).

44. In flagrant disregard for the law on this issue, HGA sought and obtained a judgment against Cole and Cord Johnson on the theory that they were the alter egos of the bankrupt BCR. A review of the Court's docket in the BCR matter clearly demonstrates that HGA never sought or obtained relief from the stay to pursue this action. Portions of the judgment are excerpted below.

BIGHORN CONSTRUCTION & RECLAMATION, LLC CLERK:

JUDGMENT

On November 14th, 2024, Hunt, Guillot & Associates, LLC ("HGA") appeared in open court arguing a Motion for Sanctions against Cord Johnson and Cole Johnson, individually and on behalf of Bridgelink Engineering, LLC, Bridgelink Investments, LLC, Bighorn Investments & Properties, LLC (collectively, "SBE/AlterEgo Defendants"). Specifically, HGA's Motion for Sanctions asked that the SBE/AlterEgo Defendants' defenses be stricken so that they be held liable jointly, severally, and in-solido with Bighorn Construction & Reclamation, LLC ("BCR")[1] on the two "Judgments" rendered in favor of HGA and against BCR: May 9th, 2022 ($637,623.15) and June 20th, 2023 ($294,055.38). Considering the briefs, arguments, and evidence submitted by HGA — and the lack of opposition or evidence provided by the SBE/AlterEgo Defendants — HGA's Motion for Sanctions is hereby GRANTED, and it is ORDERED, ADJUDGED, & DECREED[2] as follows:

LIABILITY: Cord Johnson and Cole Johnson are individually, jointly, severally, and in-solido liable for the full amount of the Judgments rendered in favor of HGA against BCR — $938,678.53 — plus interest, costs, and attorney fees that have accrued thereon since their rendition. CORPORATE LIABILITY: Bridgelink Engineering, LLC, Bridgelink Investments, LLC, Bighorn Investments & Properties, LLC are also jointly, severally, and in-solido liable for the full amount of the Judgments rendered in favor of HGA against BCR — $938,678.53 — plus interest, costs, and attorney fees that have accrued thereon since their rendition.

Done, rendered, and signed in Ruston, Louisiana on November 22, 2024.

Hon. Judge Bruce E. Hampton — 3rd JDC

Dy. C.D.C.

*See* Exhibit "7".

45. The judgment speaks for itself regarding the legal basis of the claim. Furthermore, the HGA judgment did not emerge *sui generis*. HGA specifically asked the Louisiana State Court for a determination that Cole Johnson was liable for BCR's debts as its alter ego. HGA's *Supplemental Motion for Sanctions*, filed in the Louisiana State Court on October 11, 2024, clearly asserted that Cole Johnson, among others, is the alter ego of BCR.

> **2.** During the judgment debtor examination process of BCR, HGA discovered that BCR was part-and-parcel of a single business enterprise with several other companies that are wholly owned by Cord Johnson and Cole Johnson: Bridgelink Engineering, LLC, Bridgelink Investments, LLC, Bighorn Investments & Properties, LLC, prompting HGA to amend and supplement its petition to add single business enterprise claims, veil-piercing claims, and fraud claims against the SBE/Alter-Ego Defendants.

*See* Exhibit "9" at pg. 2. Consequently, under well-established Fifth Circuit case law, the claim asserted by HGA is property of the BCR bankruptcy estate, and HGA never had legal standing to assert the claim. That lack of standing is a jurisdictional defect and is not waived.

46. Finally, HGA asserted the alter ego claim in plain violation of the automatic stay. HGA filed it Supplemental Motion for Sanctions on October 11, 2024, seeking a determination of alter ego liability, without seeking relief from the stay or notifying the Chapter 7 trustee or BCR's bankruptcy counsel. HGA appeared for the hearing on November 14, 2024, and obtained its judgment of November 22, 2024. All of these events occurred well after the BCR bankruptcy was filed and in violation of the automatic stay.

**f. The Petitioning Creditors Failed to Conduct a Reasonable Inquiry into Relevant Facts or Law**

47. The Fifth Circuit, when determining whether an involuntary petition was filed in bad faith, has explicitly considered whether "creditors conducted a reasonable inquiry into the facts and the law prior to filing the [involuntary] petition." *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993). Here, the Petitioning Creditors failed to conduct a reasonable inquiry into the facts or law. For example, a reasonable inquiry would have revealed that: (1) Cadence and Century only count

as one creditor, if they qualify at all; (2) Cadence, Century, and Spin Capital all know they have collected funds in partial satisfaction of their debts without giving Cole and Cord Johnson credit against those debts in the Involuntary Petition. (3) Josh Lubin, who is purported to have signed the Involuntary Petition on behalf of Spin Capital, is not an attorney, cannot appear for Spin Capital, and has no valid electronic signature; (4) all the Petitioning Creditors knew of the affiliated bankruptcy case of BCR and failed to disclose it on the Involuntary Petition; (5) under well-known Fifth Circuit case law, HGA does not own the claim it asserts in the Involuntary Petition; and (6) all of the Petitioning Creditors failed to file corporate disclosure statements.

48. The numerous clear errors in the Involuntary Petition demonstrate that these problems are not the result of inadvertence; rather, they reflect a total lack of diligence and a failure to conduct a reasonable inquiry into the facts. These "mistakes" may be viewed as a conscious decision to ignore any fact or legal point that could be detrimental to the Petitioning Creditors' cause. Under either interpretation, the numerous mistakes within the Involuntary Petition demonstrate that it was filed in bad faith and should be dismissed with prejudice.

**F. ABSTENTION**

49. In the alternative to dismissing this matter due to Petitioning Creditors' failures to meet the exacting standards of 11 U.S.C 303(b), the Court should dismiss the Involuntary Petition under 11 U.S.C § 305. Section 305(a)(1) states in relevant part:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspensions.

The legislative history of section 305 directly addresses the fact pattern currently before the Court.

> The legislative history states that the court may dismiss [an involuntary petition] if out-of-court arrangements are being worked out which are not prejudicial to the creditors and the case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. *In re Tarletz*, 27 B.R. 787,

793 (Bankr. Col. 1983) (citing to House Report No. 95-595, 95th Cong., 1st Sess. (1977) 325; Senate Report no. 95-989, 95th Cong., 2nd Sess. (1978) 35.

50. The decision to abstain is unreviewable. 11 U.S.C. § 305(c). It is a matter of the Court's discretion. *See In re Central Mortgage & Trust, Inc.*, 50 Bankr. 1010 (S.D. Tex. 1985). The burden of proof is on the party seeking abstention, in this case Cole Johnson. *Matter of Condominium Association of Plaza Towers South*, 43 Bankr. 18 (Bankr. S.D. Fla. 1984).

51. Generally, abstention should be granted if the alleged debtor can show "the interests of creditors and the debtor would be better served by such dismissal or suspension." *In re Gutierrez*, 2020 Bankr. LEXIS 1792, at *37 (Bankr. S.D. Miss. July 6, 2020). The factors relevant to the abstention inquiry are:

> (1) the economy and efficiency of administration;
> (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
> (3) whether federal proceedings are necessary to reach a just and equitable solution;
> (4) whether there is an alternative means of achieving an equitable distribution of assets;
> (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
> (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
> (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Tex. EMC Mgmt., LLC*, Nos. 11-40008-H3-7, 11-40017-H3-7, 2012 Bankr. LEXIS 700, 2012 WL 627844 at *3 (Bankr. S.D. Tex. Feb. 24, 2012). Bankruptcy courts sometimes dismiss involuntary petitions under 11 U.S.C § 305, even when the requirements of 11 U.S.C. § 303(b) have been met. *In re Tarletz*, 27 B.R. 787, 793 (Bankr. Col. 1983). Here, the relevant factors favor abstention.

**1. Economy and Efficiency of Administration Favor the State Court Receiver Resolving this Matter**

52. The economy and efficiency of administration do not favor this matter proceeding in bankruptcy court. The State Court Receiver has already been appointed over Cole Johnson and has spent considerable time and money analyzing Cole Johnson's non-exempt assets and working towards a global settlement. *See* **Exhibit "12"**, Noack Declaration. While the three (3) receivers appointed by the United States District Court all resigned, that was due to the obstinacy of Cadence and Century, who made unreasonable and potentially unlawful demands on the receivers.[13] Cole and Cord Johnson cooperated reasonably with the Federal Court Receivers, before their resignations, and have cooperated reasonably with Mr. Noack. A chapter 7 trustee would largely duplicate the efforts already undertaken by the State Court Receiver, without creating any new value, leading to an inefficient administration of the estate.

**2. There is Already a Pending Proceeding in State Court**

53. "By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power that could be abused." *Rosenberg,* 835 F.3d at 419. "Such a remedy exists as an avenue of relief for the benefit of the overall creditor body . . . . [It] was not intended to redress the special grievances, no matter how legitimate, of particular creditors . . . . [Such creditors] must seek redress under state law, in the state courts[,] and not in the bankruptcy court." *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997).

54. A proceeding in federal court is unnecessary to reach a just and equitable solution. The Petitioning Creditors have already received state court judgments or a federal court judgment[14] and have availed themselves of post-judgment collection remedies through the state and federal courts. Moreover, Cole Johnson has already shown himself more than willing to engage in good

---

[13] The Federal Court Receivership, imposed at the instigation of Cadence and Century Bank, was eventually dissolved because the existing State Court Receiverships. However, each of the receivers resigned before the Receivership was resolved because they could not work with the Cadence, Century and its counsel.
[14] The Candence/Century Judgment was entered by the United States District Court in Fort Worth.

faith settlement negotiations. This proceeding is unnecessary to reach a just and equitable solution for all creditors. This action is not sought to protect the overall creditor body, but rather to satisfy vindictive creditors who are unhappy with their past failures to collect their respective debts. Such matters do not require a bankruptcy proceeding and are properly handled by existing state law collection remedies. This factor favors abstention.

**3. The Existing State Court Receiver Represents an Alternative Means to Equitably Distribute Assets.**

55. An achievable means of equitably distributing **non-exempt** assets is already in place: the State Court Receiver. The State Court Receiver and the parties have already made extensive progress towards that end. This factor weighs in favor of abstention.

**4. Cole Johnson and Reasonable Creditors Can Work Out a Less Expensive Out-of-Court Arrangement.**

56. Cole Johnson is willing and able to work out a less expensive out-of-court arrangement with his creditors. For example, prior to the filing of the Involuntary Petition, Cole Johnson had already offered Cadence and Century an arrangement in which he would pay the banks $10,000,000 in satisfaction of their judgment of approximately $39,000,000. A distribution to unsecured creditors of over 25% would be an excellent result in most Chapter 7 cases. The proposal represented a far more generous deal than the banks could ever receive through a Chapter 7 case. However, Cadence and Century failed to make realistic counteroffers. Cole Johnson stands ready to negotiate a deal that will result in a far less expensive and more profitable (to creditors) out-of-court arrangement, if only certain obstinate creditors will reciprocate his good faith efforts. This factor favors abstention.

**5. The State Court Receivership Has Progressed Too Far to Start Over in Bankruptcy Court**

57. A state court insolvency proceeding began two (2) years ago and has made extensive progress. It will be expensive and time-consuming for all parties to start the process over in bankruptcy court merely because a few creditors are unhappy with a State Court Receiver, not to mention a duplicative waste of judicial resources. This factor favors abstention.

**6. The Petitioning Creditors Brought the Involuntary Petition for an Improper Purpose**

58. "Courts routinely find it improper for creditors to use the bankruptcy courts to gain a personal advantage in other pending actions or **as a debt-collection device**." *In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3rd Cir. 2015) (holding that an involuntary petition was filed to exert pressure on a debtor to pay a judgment "without regard to [the debtor's] other creditors, many of which had higher priority claims"). "Debt collection is not a proper purpose of bankruptcy." *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 & n.11 (4th Cir. 1993). Bankruptcy courts have "appropriately recognized the interest of the bankruptcy system, and thus the public interest, in preventing parties from exploiting the bankruptcy system for non-bankruptcy-related reasons, especially when adequate remedies exist in state courts." *Wilk Ausland LLP v. Murray (In re Murray)*, 900 F.3d 53, 63 (2nd Cir. 2018).

59. The Involuntary Petition was not brought to stop the dissipation of estate assets or to protect the creditor body as a whole. In fact, the evidence indicates that the value of Cole and Cord Johnson's assets were increasing before the Involuntary Petitions were filed. The Petitioning Creditors filed the Involuntary Petitions in an attempt to conscript this Court into acting as their debt collector. The Petitioning Creditors have already undertaken great efforts to collect their judgments against Cole Johnson, including the appointment of three (3) prior Federal Court receivers, each of whom quit because of Cadence and Century's intransigence. Notwithstanding the expense and unproductive activities of the Petitioning Creditors, Mr. Noack is working with

Cole and Cord Johnson to reach a global resolution for all creditors. The Petitioning Creditors are now asking this Court to firebomb that process, for no good reason. The Involuntary Petition fits into a pattern of unreasonable creditor behavior, characterized by vindictive motivations, rather than economic analysis. The Involuntary Petition was brought in bad faith and for an improper purpose. Consequently, the majority of factors favor abstention, and the Court should dismiss the Involuntary Petition pursuant to 11 U.S.C. § 305.

**G. BOND**

60. The Court should require the Petitioning Creditors to post a bond pursuant to 11 U.S.C. § 303(e) and (i). 11 U.S.C § 303 sates in relevant part:

> (e) After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section.
> …
> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> > (1) against the petitions and in favor of the debtor for—
> > (A) costs; or
> > (B) a reasonable attorney's fee;
> > (2) against any petitioner that filed the petition in bad faith, for—
> > (A) any damages proximately caused by such filing; or
> > (B) punitive damages

11 U.S.C. § 303(e)(i).

61. The bond requirement is intended to "discourage frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass the debtor . . . . or to put the debtor out of business without good cause." *In re Reed*, 11 B.R. 755, 757(Bankr. S.D. W.Va. 1981) (quoting H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 323 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787.). Courts have long acknowledged that "involuntary bankruptcy petitions have 'serious consequences [for] the alleged debtor, such as loss of credit standing, inability to transfer

assets and carry on business affairs, and public embarrassment.'" *Forever Green Athletic Fields, Inc.*, 804 F.3d at 335 (quoting *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985)). These very real consequences have already affected Cole Johnson and his solvent businesses and will continue to do so every day this matter continues. All of his businesses' operations have stalled because of the improperly filed Involuntary Petition.

62. "The basic requirements for a bond under § 303(e) are (1) notice; (2) a hearing; and (3) cause." *Pyke v. Funnel Sci. Internet Mktg., LLC (In re Funnel Sci, Internet Mktg., LLC)*, 551 B.R. 262, 272 (E.D. Tex. 2016). "A bond can have a sobering effect in a case that is off to a shaky start and that is fraught with controversy about the bona fides of the petitioners." *In re Kidwell*, 158 B.R. 203, 218 (Bankr. E.D. Cal. 1993). What constitutes "[t]he showing [of cause] which the debtor must make [for posting a bond under § 303(e)] is not clear from the statute." *In re Apollo Health St., Inc.*, 2011 Bankr. LEXIS 1978, at * 7 (Bankr. N.J. May 23, 2011). "A fundamental purpose of § 303(e) is to ensure that if an award is made under § 303(i), the debtor had a ready means of recovery for its losses." Some courts have held that because there is a presumption of good faith in favor of the petitioning creditors, "the putative debtor must establish a prima facie case of bad faith before petitioning creditors may be required to post a bond..." *In re Secured Equip. Trust of E. Air Lines*, 1992 U.S. Dist. LEXIS 15320, 1992 WL 295943, at *6 (S.D.N.Y. Oct. 08, 1992); *see also In re Hutter Assoc., Inc.*, 138 B.R. 512, 516 (W.D. Va. 1992). Other courts have imposed a bond even without an indication of bad faith when additional evidentiary hearings were required prior to a determination of whether the involuntary petition should be dismissed. *See In re Cinnamon Lake Corp.*, 48 B.R. 70, 74 (Bankr. M.D. Fla. 1985).

63. Here, bad faith is present, thus providing the necessary "cause" to require Petitioning Creditors to post a bond. As described above, Petitioning Creditors filed this case in bad faith. *See supra* pg. 19-20. Moreover, a bond is necessary, as there is a significant concern

that the Petitioning Creditors, Cadence and Century in particular, will simply refuse to pay an award granted in favor of Cole Johnson. In the District Court litigation pending before Judge Cureton, Cadence and Century initially refused to pay all three (3) federal court receivers, whom they caused to be appointed. The banks only paid after the receivers filed motions in the U.S. District Court to compel payment. Based upon their track record, there is good reason to believe the Petitioning Creditors will refuse to pay an award to Cole Johnson unless compelled by coercive proceedings in this Court. Consequently, Cole Johnson has established a prima facie case for bad faith and, as a result, the Petitioning Creditors must post a bond of at least $10,000,000 to cover the damages and costs resulting from their bad faith filing.

## IV.

## PRAYER

**WHEREFORE**, Cole Johnson requests that the Court dismiss the Involuntary Petition with prejudice. Cole Johnson also requests an award of attorney's fees, costs, and both actual and punitive damages suffered as a result of Petitioning Creditors' bad faith filing of the Involuntary Petition. In the alternative, Cole Johnson requests that the Court require the Petitioning Creditors to post a bond in the amount of $10,000,000 to secure payment of his fees, expenses, and damages in the event that the Court declines to enter an order for relief. Cole Johnson further requests such other and further relief, whether at law or in equity, to which he may be justly entitled.

September 28, 2026

Respectfully submitted,

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**

By: */s/ Robert A. Simon*
Robert A. Simon
Texas Bar No. 18390000

John Behan
Texas Bar No. 24129111
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
rsimon@whitakerchalk.com
**ATTORNEYS FOR**
**COLE WAYNE JOHNSON**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of September 2026, the forgoing document was electronically served upon all parties registered to receive electronic service via this Court's ECF notification system pursuant to the Electronic Filing Procedures in this District.

*/s/ Robert A. Simon*____________________
Robert A. Simon