Robert A. Simon
State Bar No. 18390000
**WHITAKER CHALK SWINDLE**
**& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**ATTORNEYS FOR ALLEGED DEBTOR,**
**CORD HENRY JOHNSON**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **CORD HENRY JOHNSON,** | § | **Case No. 26-43995-mxm** |
| | § | **Chapter 7** |
| **Debtor.** | § | |

**CORD JOHNSON'S MOTION TO REQUIRE**
**PETITIONING CREDITORS TO POST BOND**

TO THE HONORABLE EDWARD LEE MORRIS,
UNITED STATES BANKRUPTCY JUDGE:

Cord Henry Johnson ("Cord Johnson"), the alleged debtor in the above-referenced bankruptcy proceeding, files this Motion to Require Petitioning Creditors to Post Bond (the "Motion"). In support, Cord Johnson respectfully represents the following:

**I.**

## INTRODUCTION

1. Cord Johnson moves for an order requiring Cadence Bank ("Cadence"), Century Bank ("Century"), Hunt Guillot & Associates, LLC ("HGA"), and Spin Capital, LLC (collectively, the "Petitioning Creditors") to post a bond in the aggregate amount of $10,000,000. The bond is necessary to secure Cord Johnson's potential recovery of costs, reasonable attorney's fees, and, upon a finding of bad faith, damages resulting from the filing of the Involuntary Petition.

2. Section 303(e) authorizes the Court, after notice and a hearing for cause, to require petitioners to file a bond indemnifying the debtor for amounts the Court may later allow under section 303(i). 11 USCS § 303.

## II.

## FACTUAL BACKGROUND

### A. The Alleged Debtors, Cord Johnson and Cole Johnson

3. Cord Johnson is a natural person who lives in Hood County, Texas. Cord Johnson has a brother, Cole Johnson ("Cole"), who is also subject to an involuntary petition in the Northern District of Texas, Fort Worth Division, in Case No. 26-43993-mxm-7. There is a pending Motion to Consolidate the two cases for purposes of scheduling, discovery, and trial. The Motion to Consolidate has been argued and is currently pending. Cole and Cord Johnson are currently involved in various large-scale business ventures. Cord Johnson's business is the purchase, development, and sale of real estate through various limited liability companies. Cole is the Co-CEO of Bimergen Energy Corporation ("Bimergen"), a publicly traded company that develops and owns utility-scale battery energy storage systems, which are used to store renewable electricity and balance load on the power grid. Bimergen is traded on the NYSE. Cole is a corporate officer and director, but he is not a shareholder.[1] Cole is paid a salary for his work.

4. Bridgelink Engineering, LLC ("Bridgelink") and Bighorn Construction & Reclamation, LLC ("BCR") had a $34 million credit facility with Cadence and Century that included a $26 million accordion feature to support growth. When Bridgelink and BCR attempted to exercise the accordion feature by requesting the additional $26 million, the banks denied the request, making it impossible for BCR to continue its business. Approximately $150 million in

---

[1] Bridgelink Development, LLC, an entity subject to Cole's control, owns some Bimergen stock, but not a controlling interest.

projects then halted, disrupting construction and the collection of project receivables. Third-party valuations prepared at the time of the dispute placed the engineering business's median market value at approximately $350 million. Cole and Cord Johnson were guarantors of the credit facility, and all the claims of the Petitioning Creditors arise directly or indirectly from the failure of Bridgelink Engineering and BCR.

5. On August 7, 2023, Craig Noack was appointed as Receiver for BCR, Cole and Cord Johnson (the "Receivership Order"). A true and correct copy of the August 7, 2023, Receivership Order is attached hereto, incorporated by reference, and marked as **Exhibit "1."** Pursuant to the August 7, 2023 Receivership Order, all non-exempt property of Cole and Cord Johnson was placed *in custodia legis*. On December 16, 2024, Craig Noack was again appointed as Receiver for Cole and Cord Johnson. A true and correct copy of the December 16, 2024, Receivership Order is attached hereto, incorporated by reference, and marked as **Exhibit "2."** Pursuant to the December 16, 2024 Receivership Order, all non-exempt property of Cole and Cord Johnson was again placed *in custodia legis* of Mr. Noack as Receiver. Those Receiverships remain in place today. Cole and Cord Johnson have worked cooperatively with Craig Noack to develop a plan for the repayment of creditors. Mr. Noack and his counsel have done a considerable amount of work in that regard, and he opposes the Involuntary Petition as an unnecessary waste of resources that is unlikely to result in a greater recovery by creditors.

6. Cole and Cord Johnson are no longer in the businesses that caused their prior financial distress, and their current business activities are successful. For example, Cole Johnson, in his role as Co-CEO of Bimergen, has helped raise tens of millions of dollars from investors. Cole also owns Triangle 40 Ranch, LLC, which filed a voluntary petition in this Court, and paid all pre-petition creditors in full, including approximately $3.4 million paid to Blackburn Ranches,

LLC.[2] Cole is paying all current debts as they come due from his Bimergen salary. Tellingly, no creditor with a recent claim has joined the Involuntary Petition. All of the alleged debts arise from the prior business activities of BCR/Bridgelink and affiliated entities, which ceased operation in 2022 and early 2023. Including older obligations and current business obligations, Cord and Cole Johnson each has more than twelve creditors.

7. Cord Johnson and Cole Johnson are not disposing of assets or otherwise acting to dissipate assets in any way. On the contrary, Cole and Cord Johnson are actively engaged in business, building asset value to help fund a settlement with their creditors through the existing State Court Receiver, Craig Noack.

## B. History with Petitioning Creditors

### *Cadence and Century*

8. BCR and Bridgelink were engineering, procurement and construction companies that worked to construct traditional energy and renewable energy infrastructure across the United States. They had a single credit agreement with Cadence[3] and Century. Those two banks cut off credit at a time when BCR and Bridgelink needed it, resulting in multiple defaults and the failure of the companies. Cole and Cord Johnson were personal guarantors of the credit agreement. Cadence and Century then sued BCR, several other affiliated entities, Cole Johnson, and Cord Johnson in the United States District Court for the Northern District of Texas in Case No. 4:23-

---

[2] Cadence and Century are familiar with Triangle 40 and its bankruptcy proceeding, because they improperly instructed the Receivers to file an unfounded objection to a Section 363 sale motion filed by the debtor. The Court admonished the Receiver and their counsel for trying to interfere in a matter in which the Receivers, Cadence, and Century had no standing. In fact, Judge Morris expressed his concern that the Receivers' actions may have exposed them "to a big claim … for tortiously interfering with a transaction … and/or violating the automatic stay." *See Cadence Bank et al. v. Bridgelink Engineering, LLC et al.*, Case 4:23-cv-00609-BJ (N.D. Tex.), Dkt. No. 254 (MOTION TO REQUIRE DEBT COLLECTORS' COMPLIANCE WITH THE COURT'S AMENDED RECEIVERSHIP ORDER) at 10-11 and Dkt. No. 255 (Appendix in Support) at Appx. 62-110 (Transcript excerpts); *see also id.* at Dkt. No. 342 at pg. 4-5 (resigning Receiver McCullough described the Banks' lack of sound judgment in instructing the Receivers and their counsel to attend the Triangle 40 hearing).

[3] Cadence is now owned by Huntington Bank. That acquisition occurred long after the Cadence/Century Judgment was taken.

CV-00609. The District Court awarded judgment to Cadence and Century on June 17, 2024 (Dkt. No. 76), in the principal amount of $39,825,693.39 (the "Cadence/Century Judgment"). A true and correct copy of the Cadence/Century Bank Judgment is attached hereto, incorporated by reference, and marked as **Exhibit "3."** The Cadence/Century Judgment was joint and several as to the defendants and did not divide up or allocate the judgment as between Cadence and Century. The Cadence/Century Judgment is one, unitary, indivisible obligation on both sides.

9. Cadence and Century sought from the U.S. District Court, and obtained, an order creating a new (federal court) receivership for Cole and Cord Johnson and appointing additional receivers (the "Receivership Order"). *See* Dist. Ct. Dkt No. 231. Cole and Cord Johnson sought modification of the Receivership Order and obtained some relief. *See* Dist. Ct. Dkt No. 243. Cadence, Century, and the Receivers availed themselves of extensive post-judgment discovery, pursuant to which they took two depositions of Cord Johnson and received tens of thousands of pages of documents. The Receivership was not successful, collecting only $15,000 or so.[4] Cadence and Century burned through three (3) Federal court receivers in nine (9) months,[5] and the District Court dissolved the Receivership Order on July 6, 2026. (Dist. Ct. Dkt. No. 364.) A true and correct copy of the Order Dissolving the Receivership is attached hereto, incorporated by reference, and marked as **Exhibit "4."** The Court reasoned that the existence of prior State Court

[4] Cord Johnson negotiated the settlement of a claim that produced the $15,000 for the Receivership.

[5] The first two Receivers were Kelly McCullough and Jason Rae. They were represented by Rochelle McCullough, LLC. McCullough, Rae, and their counsel ultimately resigned, due to their inability to work with Cadence and Century. When Cadence refused to pay the Receivers' fees, the Receivers – acting as neutral officers of the Court appointed to assist the Banks in their collection efforts – unloaded on the Banks, describing the Banks' "unrealistic" expectations and "obstinance," "question[ing] the soundness" of their judgment and tactics, and describing them as "disingenuous" and "unreasonable." *Cadence Bank et al. v. Bridgelink Engineering, LLC et al.*, Case 4:23-cv-00609-BJ (N.D. Tex.), Dkt. No. 342 at 2, 4, and 9-11; *see also id.* 9 (accusing Banks of making allegations that were "simply false"); *id.* at 10 (suggesting Cadence "thought it okay to pressure [the Receivers] into violating the [Receivership] Order). Thereafter, Andrew Korn was appointed as Receiver. He soon reached the same conclusion, namely, that it was impossible to work with the Banks and nearly impossible to get paid by Cadence. When forced to file a motion seeking payment of his fees from Cadence, he proceeded to detail Cadence's "bad faith" behavior in the litigation. *See Cadence Bank et al. v. Bridgelink Engineering, LLC et al.*, Case 4:23-cv-00609-BJ (N.D. Tex.), Dkt. No. 371 at 1-2.

receiverships obviated the need for an additional Federal Court receivership. Despite the dissolution of the Federal Court receivership, after the expenditure of many hundreds of thousands of dollars, the State Court receiverships (the "Receiverships") and State Court Receiver, Craig Noack (the "Receiver"), remain in place. Cole and Cord Johnson continue to work with Mr. Noack to resolve all their debts.

10. The Cadence/Century Judgment is held jointly by Cadence and Century and is not readily divisible. The Cadence/Century Judgment itself contains no division or apportionment as between the two banks. Cadence and Century themselves cannot agree about how to divide any proceeds received. To the contrary, Century is currently suing Cadence for *fraud* in relation to the exact same obligation. Century asserts that Cadence repeatedly lied to Century about the credit and lending relationship, and it pleads fraud with particularity, even naming the specific bank officer who allegedly made the misrepresentations. Century asserts that Cadence owes it damages for fraud, negligent misrepresentation, money had and received, and attorneys' fees arising from the same transaction that produced the Cadence/Century Judgment. A true and correct copy of Century's state-court Original Petition against Cadence is attached hereto, incorporated by reference, and marked as **Exhibit "5."** Accordingly, not only is the Cadence/Century Judgment on its face a single indivisible claim, but Century is suing Cadence for fraud over the same transaction. As between the two of them, this is plainly a disputed obligation. Accordingly, Century and Cadence are, at most, one creditor for purposes of 11 U.S.C. § 303(b). *In re Edwards*, 501 B.R. 666, 677-79 (Bankr. N.D. Tex. 2014); *In re Atwood*, 124 B.R. 402, 409 (S.D. Ga. 1991). Furthermore, Cadence has collected at least $329,303.30 (probably much more), without crediting Cole and Cord Johnson for that amount or for any other funds collected. Accordingly, the Johnsons' liability for the Cadence/Century Bank Judgment is disputed as to the amount. Thus,

neither Cadence nor Century qualifies as a petitioning creditor under Section 303(b). Century and Cadence each knew of these fundamental defects before they filed the Involuntary Petition, and thus, both filed it in bad faith.

***Hunt Guillot & Associates, LLC ("HGA")***

11. HGA is an engineering firm that contracted with BCR (*not* with Cord or Cole Johnson) for certain engineering services. BCR defaulted on the obligation, and HGA obtained a state court judgment in Louisiana for breach of contract *by BCR*. On June 7, 2024, BCR filed a voluntary petition for Chapter 7 relief in this Court in Case No. 24-42003-mxm-7. A true and correct copy of the voluntary petition is attached hereto, incorporated by reference, and marked as **Exhibit "6."** The filing triggered the protection of the automatic stay of 11 U.S.C.§ 362(a). Marilyn Garner is the Chapter 7 trustee for BCR.

12. HGA was a noticed creditor and knew about BCR's bankruptcy. Nevertheless, in defiance of the automatic stay, on November 14, 2024, HGA appeared in State Court in Louisiana and asked for a default judgment holding Cole and Cord Johnson liable as the alter egos of BCR for the full amount of HGA's judgment against BCR. This action represents an egregious violation of the automatic stay. Under prevailing Fifth Circuit case law, claims that Cole or Cord Johnson should be held liable for the debts of BCR as its alter egos belong to the bankruptcy estate, not to individual creditors. *See S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987). The Louisiana state court entered judgment finding alter ego liability on November 22, 2024 (the "Alter Ego Judgment"). A true and correct copy of the Alter Ego Judgment is attached hereto, incorporated herein by this reference, and marked as **Exhibit "7."**

13. The Alter Ego Judgment contains no findings of any fraudulent representations made by Cole or Cord Johnson to HGA (because there weren't any).[6] Rather, the Alter Ego Judgment appears to rest on a "pure" alter ego theory that Cole and Cord Johnson are liable for all the debts of BCR based upon their ownership of, and relationship to, BCR, *not* based upon any specific lies told to HGA. This is precisely the type of "traditional" alter ego claim that belongs to the bankruptcy estate and not to individual creditors under *S.I. Acquisition*. There is no evidence that Marilyn Garner received notice of their action, and the alter ego claim belongs to Marilyn Garner as Trustee for BCR. The Court's docket in the BCR Chapter 7 proceeding, Case No. 24-42003-mxm-7, does not reflect any motion for relief from the automatic stay to pursue an alter ego claim in state court. A true and correct copy of the Court's Docket in the BCR case is attached hereto, incorporated by reference, and marked as **Exhibit "8."** Furthermore, BCR has amended its Schedules of Assets and Liabilities to include the alter ego claim as an asset of the estate. A true and correct copy of BCR's Amended Schedule A/B is attached hereto, incorporated by reference, and marked as **Exhibit "9."**

14. HGA's pursuit of the alter ego judgment violated the automatic stay and is thus voidable. The cause of action belongs to Marilyn Garner, who alone has standing to pursue it. Counsel for Cord Johnson has discussed this matter directly with Marilyn Garner, who has indicated she believes the claim is property of the estate. Cord Johnson is currently negotiating with Marilyn Garner to purchase the claim from her. HGA's lack of standing to pursue the claim is a matter of subject matter jurisdiction, implicating an issue of federal bankruptcy law, that can be raised at any time, even collaterally. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("Standing, since it goes to the very power of the

[6] The improper Alter Ego Judgment specifically references the BCR bankruptcy in its footnote 1. HGA obviously knew about the bankruptcy but nevertheless proceeded in State Court, in Lincoln Parish, Louisiana.

court to act, must exist at all stages of a proceeding."). The Court need not adjudicate the standing issue in the action. Rather, the Court need only recognize that ownership of HGA's alter ego claim against Cord and Cole Johnson (*i.e.*, its only basis for claiming to be a creditor of Cord or Cole Johnson) is subject to a *bona fide* dispute. Thus, HGA is not a valid petitioning creditor pursuant to Section 303(b). Furthermore, HGA was aware of the BCR bankruptcy at the time it sought an alter ego determination in violation of the automatic stay and in violation of well-known Fifth Circuit law. *See S.I. Acquisition, 817* F.2d at 1149-51.

***Spin Capital***

15. Spin Capital was a merchant cash advance ("MCA") lender that purchased receivables from Bridgelink/BCR. Spin Capital obtained a judgment against various parties, including Cole and Cord Johnson, in State Court in Nassau, New York on February 9, 2024 (the "Spin Capital Judgment"). The Spin Capital Judgment was domesticated in Harris County, Texas on March 20, 2024. A true and correct copy of the Notice of Filing of Final Judgment with the Spin Capital Judgment is attached hereto, incorporated by reference, and marked as **Exhibit "10."** Spin Capital is a creditor, owed some amount.

16. However, there are numerous problems with Spin Capital's inclusion as a petitioning creditor. First, Spin Capital is a limited liability company, and the Involuntary Petition was signed electronically by "Josh Lubin." Mr. Lubin (by his own admission) is *not* an attorney, and there is no indication he attempted to sign the Involuntary Petition in that capacity.

**From:** Josh Lubin <josh@tetonfunding.com>
**Sent:** Friday, October 2, 2026 8:44:15 PM
**To:** Robert A. Simon <RSimon@whitakerchalk.com>
**Cc:** David Skeels <DSkeels@whitakerchalk.com>
**Subject:** Spin Capital - In re Cole Wayne Johnson (No. 26-43993) and In re Cord Henry Johnson (No. 26-43995) - request for a call

Some people who received this message don't often get email from josh@tetonfunding.com. Learn why this is important

Dear Mr. Simon and Mr. Skeels,

I own Spin Capital, LLC, one of the petitioning creditors in these cases. I am not a lawyer, and I am not represented by counsel on this matter.

I would like to set up a short call with you to discuss Spin's claim and the two cases. I would also like to understand what amount, if any, you say Spin collected from the Schwab garnishment.

Please let me know a few times that work for you next week.

Thank you,

Josh Lubin
(732) 608-4905
josh@tetonfunding.com

*See* **Exhibit "11"**.

17. Second, and confusingly, John Leininger, counsel for Spin Capital, has stated on the record at least twice that he represents Spin Capital. Mr. Lubin's unequivocal statements that Spin Capital had no attorney as of October 2, 2026, clearly conflicts with Mr. Leininger's representations at the September 29, 2026, status conference and the October 1, 2026, status conference,[7] that he represented Spin Capital on those dates. In fact, when asked explicitly on October 2, 2026, if Mr. Leininger was representing Spin Capital in this matter, Mr. Lubin again stated he had no counsel for Spin Capital.

[7] This status conference was held in Judge Mullin's court and was regarding the Cole Johnson Involuntary Petition.

**From:** Josh Lubin <josh@tetonfunding.com>
**Sent:** Friday, October 2, 2026 9:40 PM
**To:** David Skeels <DSkeels@whitakerchalk.com>; Robert A. Simon <RSimon@whitakerchalk.com>
**Subject:** Re: Spin Capital - In re Cole Wayne Johnson (No. 26-43993) and In re Cord Henry Johnson (No. 26-43995) - request for a call

John doesn't represent spin. He just called me on my cell and I said ill join if it can potentially recover money though told him I don't want to be busy with it. Is he pretending to be representing Spin? No right?

---

**From:** David Skeels <DSkeels@whitakerchalk.com>
**Date:** Friday, October 2, 2026 at 10:32 PM
**To:** Josh Lubin <josh@tetonfunding.com>, "Robert A. Simon" <RSimon@whitakerchalk.com>
**Subject:** Re: Spin Capital - In re Cole Wayne Johnson (No. 26-43993) and In re Cord Henry Johnson (No. 26-43995) - request for a call

To clarify ... has Spin Capital been represented by counsel at any point during these BR matters?

Sent via the Samsung Galaxy S26 Ultra, an AT&T 5G smartphone
Get Outlook for Android

18. On the very next day, Mr. Lubin performed a complete 180. Astonishingly, Mr. Lubin then emailed counsel for Cord Johnson, copied Mr. Leininger, and requested Mr. Leininger's consent for counsel for Cole and Cord Johnson to speak with Mr. Lubin directly. No explanation was offered for the total reversal.

**From:** Josh Lubin <josh@tetonfunding.com>
**Sent:** Saturday, 03 October 2026 13:44:02
**To:** John C. Leininger <jcl@os.law>
**Cc:** David Skeels <dskeels@whitakerchalk.com>; Robert A. Simon <rsimon@whitakerchalk.com>
**Subject:** Re: Lubin call.

John, I need you to give consent here. Spin has a judge against entities with assets that century does not have. That can create a conflict where the non debtor entities can potentially settle on the merits l, with full disclosure to the bankruptcy court.

Please reply my email give the lawyers consent to talk to me.

---

**From:** Josh Lubin
**Sent:** Saturday, 03 October 2026 13:29:10
**To:** John C. Leininger <jcl@os.law>
**Cc:** David Skeels <dskeels@whitakerchalk.com>; Robert A. Simon <rsimon@whitakerchalk.com>
**Subject:** Lubin call.

John,

I need you to authorize David and Robert to talk to me. Can you please confirm on this email chain.

19. By Mr. Lubin's own admission, Spin Capital was not represented by an attorney when his signature was added to the Involuntary Petition on September 4, 2026. This is wholly consistent with the fact that Mr. Leininger signed the Involuntary Petition as the attorney for Century, but not as attorney for Spin Capital. *See* Involuntary Petition at pg. 6 [Dkt. No. 1]. Based upon the Involuntary Petition itself, and the timeline of Mr. Lubin's emails, it appears that Spin Capital engaged counsel on the morning of October 3, 2026, a month after the Involuntary Petition was filed, purportedly with Spin Capital's signature as a petitioning creditor.[8]

20. Additionally, since Mr. Lubin is neither an attorney nor an e-filer in the Northern District of Texas, he cannot have an electronic signature. The Court should disregard the signature as invalid. Even if Mr. Lubin's purported signature were valid (it is not), Mr. Lubin is not an attorney, and no attorney has actually appeared for Spin Capital in this case. Spin Capital cannot appear or participate in this case *pro se*. Pursuant to 28 U.S.C § 1654, a natural person may represent himself; however, federal courts have "uniformly held that [the statute] does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993); *Huffines Retail Partners, LP v. Atlas Apartments Acquisition, LLC*, Civil Action No. 3:19-CV-2425-S-BH, 2021 U.S. Dist. LEXIS 49861, at *7 (N.D. Tex. 2021) ("a limited liability company is also an artificial entity that may only appear in federal court through licensed counsel"). Accordingly, Spin Capital has not appeared before the Court and did not validly sign the Involuntary Petition. This is another indication of bad faith on the part of Spin Capital.

[8] It is unclear why Mr. Leininger purported to act as Spin Capital's attorney on September 29, 2026, and October 1, 2026, when he was not yet engaged for that purpose. Despite Mr. Lubin's representation on October 3, 2026, that Mr. Leininger then represented Spin Capital, Mr. Leininger has not filed a notice of appearance on behalf of Spin Capital nor signed a pleading for Spin Capital, and Mr. Lubin's emails do not constitute an appearance of counsel. If and when Mr. Leininger files a notice of appearance on behalf of Spin, Mr. Johnson will address the obvious conflict of interest in representing both Century and Spin Capital.

21. Third, on information and belief Josh Lubin never read the involuntary petition before it was filed. According to Mr. Lubin, he merely received a call from counsel for Century Bank asking if he was interested in joining in the Involuntary Petition. Mr. Lubin replied that he was and gave counsel for Century permission to sign his name onto the Involuntary Petition without even reviewing it. Mr. Lubin's consent to add his signature, a signature intended to verify that information he had never seen was true and correct, is yet another indication of Spin Capital's bad faith. The shadow of this improper act also falls across the other parties. At the time the Involuntary Petition was filed, Spin Capital was *pro se*. The other Petitioning Creditors were not. Century plainly knew that Mr. Lubin had never reviewed the Involuntary Petition his signature purported to verify but asked him to sign on to it anyway. That is bad faith *per se*. If Cadence and HGA were not aware of that fact, they should have been. That act constitutes a total lack of due diligence and thus bad faith.

22. Furthermore, Mr. Lubin is a judicially determined liar. The Honorable Michael Warren of the Circuit Court of the County of Oakland Business Court, when issuing a multimillion-dollar judgment against Spin Capital, described Mr. Lubin as follows: "Although unnecessary to the Court's discussion, it was obvious to this Court as factfinder that **Lubin has no credibility whatsoever**." *See* **Exhibit "12"** at pg. 6. A true and correct copy of these findings of fact and conclusions of law are attached hereto **as Exhibit "12"**. The Court went on to describe Mr. Lubin in more damning detail stating:

> ➢ *Josh Lubin*. His testimony was less than credible. He was evasive, rude, arrogant, and purposefully deceitful. He repeatedly testified that the Plaintiff's questions and theory of the case were a "fairy tale." To the contrary, the only fabrications and fantasies here were his. Unless otherwise indicated by the Findings of Fact, his testimony is afforded no weight or credibility.

*See* Exhibit 11 at pg. 6.

23. A finding of fact stating Mr. Lubin is not credible becomes less surprising the more one learns of Mr. Lubin. Further research into Mr. Lubin revealed that he has a judgment against him in his personal capacity for fraudulent inducement and civil conspiracy in the amount of $6 million. A true and correct copy of this judgment is attached hereto as **Exhibit "13"**. This judgment, and indeed the findings of fact in the aforementioned Michigan Business Court case, all arose from Mr. Lubin's management of Spin Capital. Consequently, any contention that Mr. Lubin has acted in good faith in joining this Involuntary Petition must be subject to intense scrutiny and careful skepticism.

24. But there is more. While Spin Capital has a judgment, the amount of the liability is disputed by the very pleadings filed. Spin Capital's Notice of Filing Foreign Judgment recites a debt of $8,228,824.31. The Involuntary Petition recites a debt amount of $8,234,160.50. The discrepancy is $5,336.19, and there is no explanation for the difference. Further, Spin Capital previously engaged in aggressive collection actions. On August 16, 2024, Spin Capital garnisheed judgment-debtor accounts at Charles Schwab Bank. A true and correct copy of the Writ of Garnishment is attached hereto, incorporated by reference, and marked as **Exhibit "14."** The Charles Schwab Bank account contained money at the time of the garnishment. Spin Capital has provided no accounting of what it collected or how the collections were applied, if at all, to the Judgment amount. Accordingly, the amount still owed under the Spin Capital Judgment remains undetermined. The existence of any offset to the debt, such as unaccounted-for collections on a judgment, may form the basis for a *bona fide* dispute. *Credit Union Liquidity Servs., LLC v. Green Hills Dev. Co., LLC (In re Green Hills Dev. Co., LLC)*, 741 F.3d 651, 658 (5th Cir. 2014). Spin Capital knew about the discrepancy between the Spin Capital Judgment amount and the amount

disclosed on the Involuntary Petition, or it would have known about the discrepancy if it had bothered to read the Involuntary Petition. Spin Capital knew about its own collection activities and the garnishment and failed to provide an accurate accounting of the debt, all of which implicate a lack of due diligence and reflect bad faith.

**III.**

**ARGUMENT AND AUTHORITIES**

25. The Court should require the Petitioning Creditors to post a bond pursuant to 11 U.S.C. § 303(e) and (i). Title 11 of the United States Code, Section 303 sates in relevant part:

> (e) After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section.
> …
> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitions and in favor of the debtor for—
> (A) costs; or
> (B) a reasonable attorney's fee;
> (2) against any petitioner that filed the petition in bad faith, for—
> (A) any damages proximately caused by such filing; or
> (B) punitive damages

11 U.S.C. § 303(e)(i).

26. The bond requirement is intended to "discourage frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass the debtor . . . . or to put the debtor out of business without good cause." *In re Reed*, 11 B.R. 755, 757(Bankr. S.D. W.Va. 1981) (quoting H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 323 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787.). Courts have long acknowledged that "involuntary bankruptcy petitions have 'serious consequences [for] the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment.'" *Forever Green Athletic Fields,*

*Inc.*, 804 F.3d at 335 (quoting *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985)). These very real consequences have already affected Cord and Cole Johnson and their solvent businesses and will continue to do so every day this matter continues. All of their businesses' operations have stalled because of the improperly filed Involuntary Petition, and their reputations have been irreparably damaged.

27. "The basic requirements for a bond under § 303(e) are (1) notice; (2) a hearing; and (3) cause." *Pyke v. Funnel Sci. Internet Mktg., LLC (In re Funnel Sci, Internet Mktg., LLC)*, 551 B.R. 262, 272 (E.D. Tex. 2016). "A bond can have a sobering effect in a case that is off to a shaky start and that is fraught with controversy about the bona fides of the petitioners." *In re Kidwell*, 158 B.R. 203, 218 (Bankr. E.D. Cal. 1993). What constitutes "[t]he showing [of cause] which the debtor must make [for posting a bond under § 303(e)] is not clear from the statute." *In re Apollo Health St., Inc.*, 2011 Bankr. LEXIS 1978, at * 7 (Bankr. N.J. May 23, 2011). "A fundamental purpose of § 303(e) is to ensure that if an award is made under § 303(i), the debtor had a ready means of recovery for its losses." Some courts have held that because there is a presumption of good faith in favor of the petitioning creditors, "the putative debtor must establish a prima facie case of bad faith before petitioning creditors may be required to post a bond..." *In re Secured Equip. Trust of E. Air Lines*, 1992 U.S. Dist. LEXIS 15320, 1992 WL 295943, at *6 (S.D.N.Y. Oct. 08, 1992); *see also In re Hutter Assoc., Inc.*, 138 B.R. 512, 516 (W.D. Va. 1992). Other courts have imposed a bond even without an indication of bad faith when additional evidentiary hearings were required prior to a determination of whether the involuntary petition should be dismissed. *See In re Cinnamon Lake Corp.*, 48 B.R. 70, 74 (Bankr. M.D. Fla. 1985).

28. The Northern District of Texas has previously acknowledged that bankruptcy courts have applied "a dizzying array of standards" when analyzing whether an involuntary petition was filed in bad faith, including:

> (1) the "improper use" test, which finds bad faith when a petitioning creditor uses involuntary bankruptcy proceedings in an attempt to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum[;]
>
> (2) the "improper purpose" test, which finds bad faith based upon the petitioner's improper motivation for filing the petition. Cases under this line of reasoning have emphasized that the petition was motivated by ill will, malice or for the purpose of harassing the debtor[;]
>
> (3) the "objective test," which essentially asks the question whether or not a reasonable person would have filed the involuntary petition under the same circumstances;
>
> (4) the "subjective test" which is almost identical to the "improper purpose" test in that they both look to the subjective motivation of the petitioning creditor for the filing; and
>
> (5) the "combined" or "two part" test which finds bad faith based upon consideration of both the subjective motivation and the objective reasonableness of the petitioning creditor(s).

*Nuetra, Ltd. Terry (In re Acis Capital Management, L.P.),* 604 B.R. 484, 530-531 (N.D. Tex. 2019) (the court itself applied a "totality of circumstances or combined test in analyzing [petitioning creditor's] good faith.").

29. The Fifth Circuit has not yet expressly adopted a particular standard for assessing involuntary petitions, but it has considered objective and subjective factors, such as whether "the filing of the petitions was motivated by ill will, malice or for the purpose of embarrassing or harassing the debtor[s]," and whether petitioning creditors "conducted a reasonable inquiry into the facts and the law prior to filing the petitions, as required by Bankruptcy Rule 9011." *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993).

30. Here, Cord Johnson is easily able to establish a *prima facie* argument that the Involuntary Petition was filed in bad faith for multiple reasons. These reasons include: (a) the Involuntary Petition was filed for an improper purpose; (b) Cadence and Century pretended to be two petitioning creditors, when they have one, indivisible obligation about which they are litigating[9]; (c) none of the Petitioning Creditors filed a corporate ownership statement pursuant to Fed. Bankr. R. 1010(b); (d) Spin Capital lied about how much money it is owed; (e) Spin Capital did not review the Involuntary Petition before purporting to sign it; (f) Spin Capital did not validly sign the Involuntary Petition, as it could not do so *pro se*;[10] (g) all of the Petitioning Creditors failed to disclose their knowledge of an affiliated bankruptcy, *i.e.*, Bighorn Construction and Reclamations, LLC,[11] (h) HGA acquired its alter ego judgment against Cord and Cole Johnson in violation of the automatic stay and did not have standing to assert the claim; (i) the Petitioning Creditors failed to conduct a reasonable inquiry in to the facts and law before filing the Involuntary Petition or ignored what they found; and (j) Cadence and Century have collected substantial funds in partial satisfaction of the debt owed to them and have not acknowledged or accounted for those collections to any court, including this Court, the U.S. District Court, or to any receiver in State Court or Federal Court. Cadence and Century knew about the collections, but they still presented the Candence/Century Judgment as if those collections did not occur. Thus, all of the Petitioning Creditors filed the Involuntary Petition in bad faith.

---

[9] *See* Exhibit 5.
[10] Cadence, Century, and HGA are represented by counsel who knew or should have known that Spin Capital could not sign the Involuntary Petition *pro se* or do so by electronic signature.
[11] This failure is particular egregious, because all of the Petition Creditors' claims arose from the failure of BCR, and each of was a noticed creditor in that case.

**a. Improper Purpose**

31. "When a Bankruptcy Court suspects an involuntary filing is a sham or is collusive, the Court may make proper inquiry into the circumstances of the filing." *In re Grossinger*, 268 B.R. 386, 387, 389 ("Filing an involuntary petition for an improper purpose . . . manifests bad faith.") (Bankr. S.D. N.Y. 2001) (citing *F.D.I.C. v. Cortez*, 96 F.3d 50 (2nd Cir. 1996)).

32. "By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power that could be abused." *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d Cir. 2016). "Such a remedy exists as an avenue of relief for the benefit of the overall creditor body . . . . [It] was not intended to redress the special grievances, no matter how legitimate, of particular creditors . . . . [Such creditors] must seek redress under state law, in the state courts[,] and not in the bankruptcy court." *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997). Courts routinely find it improper for creditors to use the bankruptcy courts to gain a personal advantage in other pending actions or **as a debt-collection device**." *In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3rd Cir. 2015) (emphasis added) (holding that an involuntary petition was filed to exert pressure on a debtor to pay a judgment "without regard to [the debtor's] other creditors, many of which had higher priority claims"). "Debt collection is not a proper purpose of bankruptcy." *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 & n.11 (4th Cir. 1993). Bankruptcy courts have "appropriately recognized the interest of the bankruptcy system, and thus the public interest, in preventing parties from exploiting the bankruptcy system for non-bankruptcy-related reasons, especially when adequate remedies exist in state courts." *Wilk Ausland LLP v. Murray (In re Murray)*, 900 F.3d 53, 63 (2nd Cir. 2018). Here, the State Court Receiver, Mr. Noack, has been working with Cord and Cole Johnson for at

a least a year on a global resolution of their respective obligations. The Petitioning Creditors know about the State Court Receiver, but they have never bothered to contact him.

33. The Petitioning Creditors cannot legitimately contend that the Involuntary Petition is being brought to stop the dissipation of estate assets or to protect the creditor body as a whole. There is no evidence that Cord or Cole Johnson is dissipating assets. Rather, the evidence indicates that the value of their assets is increasing. The Petitioning Creditors filed the Involuntary Petition in an attempt to conscript this Court into acting as their personal debt collector. The Petitioning Creditors have already undertaken great efforts to collect their judgments against Cord and Cole Johnson, including the appointment of three separate Federal Court Receivers, at the instigation of Cadence and Century. The receivership order that initially appointed as receivers Kelly McCullough and Jason Rae and then, after their resignation, appointed as receiver Mr. Andrew Korn, was promptly dissolved once the Federal District Court realized the State Court Receiver already held all of Cole and Cord Johnson's non-exempt assets *in custodia legis*. Now, after the failure of the Federal Court Receivership (for at least the reasons described above in footnote 5) and the banks' unwillingness to work cooperatively with the State Court Receiver, the Petitioning Creditors now ask this Court to fill the role of the State Court Receiver. The Involuntary Petition is part of a continued campaign by the Petitioning Creditors to forgo reasonable negotiations with Cord and Cole Johnson and instead engage in ethically questionable collection tactics for their own benefit, and not for the benefit of the creditors generally. The Involuntary Petition was brought in bad faith and for an improper purpose.

**b. Failure to Comply with Bankruptcy Rule 1010(b)**

34. Pursuant to Bankruptcy Rule 1010(b), the Petitioning Creditors were required to file Corporate Ownership Statements containing the information described in Bankruptcy Rule

7007.1. All of the Petitioning Creditors are corporations (or limited liability companies). Despite this fact, they uniformly failed to comply with this basic requirement. As of the date of this Motion, only Cadence has belatedly filed a Corporate Ownership Statement. The remaining Petitioning Creditors continue to flout this rule.[12] Other bankruptcy courts have previously held that failing to comply with this requirement constitutes "further evidence of the improper purpose of the filing of the petition" and could warrant dismissal of a case when combined with other indicators of bad faith. *Kiamsha Cmty. Dev. Corp.*, 2010 Bankr. LEXIS 4002, at *16-17. "An attorney who undertakes to represent his client as a petitioning creditor in an involuntary case must, at the very least, read and comply with the applicable section of the Bankruptcy Code. Failure to do so manifests bad faith, especially on the part of a bankruptcy specialist with years of experience." *Grossinger*, 268 B.R. at 387. The Petitioning Creditors, save for Spin Capital (which may or may not be represented by an attorney), are represented by sophisticated bankruptcy counsel. The requirement to file a corporate ownership statement is a requirement for any corporation that appears in any adversary case or involuntary petition; it is not some obscure or arcane rule. The Petitioning Creditors' failure to follow this rule further evidences their bad faith.

**c. Spin Capital Mispresented How Much Money It Is Owed**

35. As discussed above, Petitioning Creditor Spin Capital is not being honest about how much Cole and Cord Johnson owe it. Spin Capital's Notice of Filing Foreign Judgment recites a debt of $8,228,824.31. The Involuntary Petition recites a debt amount of $8,234,160.50. The discrepancy is $5,336.19, and there is no explanation for the difference. Furthermore, on August 16, 2024, Spin Capital garnisheed judgment-debtor bank accounts at Charles Schwab Bank and seized funds in partial satisfaction of the Spin Capital Judgment. Spin Capital has not given Cole

---

[12] Judge Cureton likewise noted the Banks' persistent failure to follow the rules. *See Cadence Bank et al. v. Bridgelink Engineering, LLC et al.*, Case 4:23-cv-00609-BJ (N.D. Tex.),

or Cord Johnson credit against the Spin Capital Judgment for the amounts collected. Spin Capital knew or should have known at the time the Involuntary Petition was filed, under penalty of perjury, that it was not being honest about how much money it was owed. Spin Capital's dishonesty taints the Involuntary Petition at a foundational level and constitutes clear bad faith.

**d. Spin Capital Signed the Involuntary Petition Without Reviewing It**

36. Josh Lubin, the 100% owner of Spin Capital and the person who purportedly signed the Involuntary Petition on behalf of Spin Capital, did not review the Involuntary Petition before it was filed. Based upon Mr. Lubin's own admission, he merely received a call from counsel for Century asking if he was interested in joining in the involuntary petition. Mr. Lubin replied that he was and gave counsel for Century Bank the go-ahead to sign his name onto the Involuntary Petition without reviewing it. Mr. Lubin's decision to give his consent to add his signature, a signature that was supposed to verify that the contents he had never seen were true and correct, is a clear indication of bad faith. Further, Spin Capital was *pro se* at the time of filing and until at least October 3, 2026. The other Petitioning Creditors had counsel. Century plainly knew that Mr. Lubin had never reviewed the Involuntary Petition but added his signature anyways. Cadence and HGA were almost certainly aware that Spin Capital never reviewed the Involuntary Petition. If they were not, they should have been. If the other Petitioning Creditors had conducted any due diligence on Spin Capital's claim, or if Spin Capital had bothered to read the Involuntary Petition, the Petitioning Creditors could have discovered they had overstated the amount of Spin Capital's claim. This lack of due diligence constitutes bad faith.

**e. The Petitioning Creditors Affirmatively Lied Regarding their Knowledge of Affiliate Bankruptcies**

37. Question 9 on the Involuntary Petition asks: "Do you know of any Bankruptcy cases pending by or against any partner, spouse, or affiliate of this debtor?" Petitioning Creditors

answered "no." *See* Involuntary Petition at pg. 2 [Dkt. No. 1]. This is a clear and easily provable falsehood. All the Petitioning Creditors knew of the active bankruptcy of BCR, which is an affiliate of Cord and Cole Johnson. In fact, all of the claims against Cord and Cole Johnson arose out of the failure of that entity.

38. The Bankruptcy Code defines an "affiliate" as a "corporation 20 percent or more of whose outstanding voting securities are directly or **indirectly** owned, controlled, or held with power to vote, by the debtor." 11 U.S.C. § 101(2)(B) (emphasis added). BCR currently has an active Chapter 7 bankruptcy in this Court. *See* Case No. 24-42003-mxm-7. BCR lists Cord and Cole Johnson as control persons on its statement of financial affairs, clearly making it an affiliate of Cord Johnson. *See* Case No. 24-42003-mxm-7, the SOFA at pg. 6 [Dkt No. 11]. While BCR is 100% owned by Bridgelink Engineering, LLC, that entity is ultimately, indirectly owned and controlled by Cole and Cord Johnson, which the Petitioning Creditors know.

39. The Petitioning Creditors' knowledge of the BCR bankruptcy and its status as an affiliate of Cord and Cole Johnson is indisputable. Cadence has filed a claim in the BCR case and is one of the largest creditors. *See* Case No. 24-42003-mxm-7, POC 57-1. Century and Cadence both affirmatively appeared in the case and sought a 2004 examination of BCR. *See* Case No. 24-42003-mxm-7 [Dkt. No. 30]. HGA was explicitly listed as a creditor of BCR on its schedules and has been consequently receiving notices regarding the case. *See* Case No. 24-42003-mxm-7, Schedules at pg. 39 [Dkt No. 7]. Likewise, Spin Capital was also listed as a creditor on the schedules. *Id.* at pg. 66.

40. HGA's alleged claim against Cole Johnson is based upon a judgment for $938,678.53, imposing liability on Cole and Cord Johnson **as the alter egos of BCR**. Both the judgment and the pleadings that support it prove conclusively that HGA knew about the BCR

bankruptcy case and was consciously aware that Cole and Cord Johnson controlled BCR before its bankruptcy case was filed. HGA plainly knows that BCR's bankruptcy case is an affiliated case. Despite their clear knowledge of the BCR bankruptcy and its status as an affiliate of Cole and Cord Johnson, the Petitioning Creditors omitted this information from the Involuntary Petition. At a minimum, this failure demonstrates negligence and a lack of diligence on the part of the Petitioning Creditors and serves as yet another indicator of the bad faith and the haphazard nature in which the Involuntary Petition was filed.

**f. HGA Fraudulently Obtained its Judgment and Obtained its Judgment in Violation of the Automatic Stay**

41. HGA obtained its judgment against Cord and Cole Johnson fraudulently. A cursory examination of HGA's judgment shows that it is void and unenforceable because: (1) HGA obtained a judgment on a claim that belongs to the Chapter 7 trustee for BCR, and (2) HGA violated the automatic stay to obtain the judgment. As discussed above, BCR is a debtor in an active bankruptcy case in which HGA was listed as a creditor. BCR filed its petition on June 7, 2024, thus invoking the protection of the automatic stay. Upon the filing of the Petition, all legal rights belonging to the debtor (BCR) vested in the estate. 11 U.S.C. § 541(a). Those rights include any claims that principals of the debtor are liable for debts as alter egos or due to a theory of piercing the corporate veil. The legal theory that alter ego claims against the control persons of a debtor belong to the bankruptcy estate has been well settled law in the Fifth Circuit for nearly 40 years. As explained by the Fifth Circuit in *S.I. Acquisitions*, which applied the automatic stay against a state law alter ego suit against a bankrupt debtor's owners:

> [N]othing in Texas law prohibits a corporation from asserting on its own an action based on alter ego and that in fact the underlying policy of the remedy supports this conclusion.

> We, therefore, conclude that [creditor's] alter ego action is a right of action belonging to [the debtor] and, as such, is "property of the estate" within the meaning of section 541(a)(1). Accordingly, the automatic stay of section 362(a)(3) applies to [creditor's] state action.

*In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1154 (5th Cir. 1987).

42. In flagrant disregard for the law on this issue, HGA sought and obtained a judgment against Cole and Cord Johnson on the theory that they were the alter egos of the bankrupt BCR. A review of the Court's docket in the BCR matter clearly demonstrates that HGA neither sought nor obtained relief from the stay to pursue this action. Portions of the judgment are excerpted below.

**BIGHORN CONSTRUCTION & RECLAMATION, LLC** **CLERK:**

**JUDGMENT**

On November 14th, 2024, Hunt, Guillot & Associates, LLC ("HGA") appeared in open court arguing a Motion for Sanctions against Cord Johnson and Cole Johnson, individually and on behalf of Bridgelink Engineering, LLC, Bridgelink Investments, LLC, Bighorn Investments & Properties, LLC (collectively, "SBE/AlterEgo Defendants"). Specifically, HGA's Motion for Sanctions asked that the SBE/AlterEgo Defendants' defenses be stricken so that they be held liable jointly, severally, and in-solido with Bighorn Construction & Reclamation, LLC ("BCR")[1] on the two "Judgments" rendered in favor of HGA and against BCR: May 9th, 2022 ($637,623.15) and June 20th, 2023 ($294,055.38). Considering the briefs, arguments, and evidence submitted by HGA — and the lack of opposition or evidence provided by the SBE/AlterEgo Defendants — HGA's Motion for Sanctions is hereby GRANTED, and it is ORDERED, ADJUDGED, & DECREED[2] as follows:

LIABILITY: Cord Johnson and Cole Johnson are individually, jointly, severally, and in-solido liable for the full amount of the Judgments rendered in favor of HGA against BCR — $938,678.[53] — plus interest, costs, and attorney fees that have accrued thereon since their rendition. CORPORATE LIABILITY: Bridgelink Engineering, LLC, Bridgelink Investments, LLC, Bighorn Investments & Properties, LLC are also jointly, severally, and in-solido liable for the full amount of the Judgments rendered in favor of HGA against BCR — $938,678.[53] — plus interest, costs, and attorney fees that have accrued thereon since their rendition.

Done, rendered, and signed in Ruston, Louisiana on November 22, 2024.

Bruce E. Hampton

Hon. Judge Bruce E. Hampton — 3rd JDC

Dy. C.D.C.

*See* Exhibit "7".

43. The judgment speaks for itself regarding the legal basis of the claim. Furthermore, the HGA judgment did not emerge *sui generis*. HGA specifically asked the Louisiana State Court for a determination that Cord and Cole Johnson were liable for BCR's debts as its alter egos. HGA's *Supplemental Motion for Sanctions*, filed in the Louisiana State Court on October 11, 2024, clearly asserted that Cord and Cole Johnson, among others, are the alter egos of BCR.

**2.** During the judgment debtor examination process of BCR, HGA discovered that BCR was part-and-parcel of a single business enterprise with several other companies that are wholly owned by Cord Johnson and Cole Johnson: Bridgelink Engineering, LLC, Bridgelink Investments, LLC, Bighorn Investments & Properties, LLC, prompting HGA to amend and supplement its petition to add single business enterprise claims, veil-piercing claims, and fraud claims against the SBE/Alter-Ego Defendants.

*See* Exhibit "9" at pg. 2. Consequently, under well-established Fifth Circuit case law, the claim asserted by HGA is property of the BCR bankruptcy estate, and HGA never had legal standing to assert the claim. That lack of standing is a jurisdictional defect and is not waived.

44. Finally, HGA asserted the alter ego claim in plain violation of the automatic stay. HGA filed its Supplemental Motion for Sanctions on October 11, 2024, seeking a determination of alter ego liability, without seeking relief from the stay or notifying the Chapter 7 trustee or BCR's bankruptcy counsel. HGA appeared for the hearing on November 14, 2024, and obtained its judgment of November 22, 2024. All of these events occurred well after the BCR bankruptcy was filed and in violation of the automatic stay.

**g. The Petitioning Creditors Failed to Conduct a Reasonable Inquiry into Relevant Facts or Law**

45. The Fifth Circuit, when determining whether an involuntary petition was filed in bad faith, has explicitly considered whether "creditors conducted a reasonable inquiry into the facts and the law prior to filing the [involuntary] petition." *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993). Here, the Petitioning Creditors failed to conduct a reasonable inquiry into the facts or law. For example, a reasonable inquiry would have revealed that: (1) Cadence and Century only count as one creditor, if they qualify at all; (2) Cadence, Century, and Spin Capital all know they have collected funds in partial satisfaction of their debts without giving Cole and Cord Johnson credit against those debts in the Involuntary Petition; (3) Josh Lubin, who is purported to have signed the Involuntary Petition on behalf of Spin Capital, is not an attorney, cannot appear for Spin Capital, and has no valid electronic signature; (4) all the Petitioning Creditors knew of the affiliated bankruptcy case of BCR and failed to disclose it on the Involuntary Petition; (5) under well-known Fifth Circuit case law, HGA does not own the claim it asserts in the Involuntary Petition; (6) all of the Petitioning Creditors failed to file corporate disclosure statements; (7) Josh Lubin did not

review the Involuntary Petition before it was filed, despite giving permission for his name to be signed onto the document.

46. The numerous clear errors in the Involuntary Petition demonstrate that these problems are not the result of inadvertence; rather, they reflect a total lack of diligence and a failure to conduct a reasonable inquiry into the facts. These "mistakes" may be viewed as a conscious decision to ignore any fact or legal point that could be detrimental to the Petitioning Creditors' cause. Under either interpretation, the numerous mistakes within the Involuntary Petition demonstrate that it was filed in bad faith and should be dismissed with prejudice.

**h. The Requested Bond Amount Is Reasonably Related to the Alleged Debtor's Exposure.**

47. The requested bond of $10,000,000 is based upon a concrete estimate of the amounts for which the Petitioning Creditors may be liable. Cord Johnson expects to incur approximately $250,000 in reasonable attorney's fees and related litigation costs through final disposition of the Involuntary Petition.

48. Cord Johnson faces approximately $9,750,000 in damages arising from business interruption, lost transactions, increased financing costs, and lost revenue. The damages flow from the depreciation in asset value caused by the reputational damage of the Involuntary Petitions. The damages are indirect in the sense devalued assets and lost business opportunities belong to business entities, such as Red Leaf Investments, LLC and Bridgelink Development, rather than Cord Johnson personally, but he is an ultimate beneficial owner of those entities, and the loss of asset value and loss of business opportunity is a loss to him and negatively affects his ability to pay creditor claims through a global settlement structured through the State Court Receiver, Mr. Noack.

49. A bond under Section 303(e) may secure amounts later awarded under section 303(i), including costs and reasonable attorney's fees and, upon the required finding of bad faith, damages proximately caused by the filing. *See* 11 U.S.C. §§ 303(e), (i).

50. The proposed amount is protective rather than punitive. It reflects Cord and Cole Johnson's estimated exposure and protects them from the risk that many of the Petitioning Creditors may simply refuse to pay an award of damages. Spin Capital is managed by the untrustworthy Mr. Lubin. Furthermore, Mr. Lubin recently filed a personal Chapter 11 bankruptcy in New Jersey. *See* Case No. 26-17342-EJO in the Bankruptcy Court of New Jersey. A true and correct copy of Mr. Lubin's personal bankruptcy schedules are attached hereto as **Exhibit "15".** Mr. Lubin has had a Chapter 11 trustee involuntarily placed in control of his estate. Moreover, according to Mr. Lubin's personal bankruptcy filings, Spin Capital has not operated for approximately two years. *See* Exhibit 15 at pg. 44. Spin Capital is obviously unable to pay an award of damages or attorneys' fees, making a bond all the more appropriate.

51. Furthermore, while Cord and Cole Johnson believe that Cadence, a large commercial bank, has the wherewithal to pay an award, it has already demonstrated a posture of refusing to pay court-ordered amounts. For example, as described in footnote 5 *supra*, Cadence has previously refused to pay the fees of the federal court Receivers it had requested, and finally paid only after forcing the Receivers to litigate the issue before the District Court.[13] True and correct copies of the Receivers' filings seeking payment of their fees, or excerpts thereof, are attached hereto as **Exhibits "16", "17" and "18."** As an illustration of Cadence's obstinance, one of the previous receivers described Cadence's unreasonable refusal to pay as follows:

[13] Cadence and Century forced the first set of federal court Receivers to litigate the issue to judgment before they paid. Cadence also refused to pay Mr. Korn's fees and relented only after he filed a response to Cadence's objection and attached a series of embarrassing emails exchanged with Cadence's counsel. *See also* footnote 7 *supra*.

> The Banks [Cadence and Century] chose the Former Receivers for their forensic accounting expertise long before asking the Court to appoint them as independent fiduciaries. But once they were appointed, the Banks challenged their judgment at every turn. And the Banks insisted on unrealistic results on an impossible schedule. The Bank's own obstinance caused distraction and additional expense.

***See* Exhibit 16 at pg. 2.**

52. Andrew Korn, the next Receiver, appointed after the first set of Receivers resigned, bluntly accused Cadence of refusing to pay the fees in "bad faith" stating: "Cadence Bank's opposing to paying [the] Receiver's invoices smacks of bad faith for at least seven reasons." He then detailed their intransigence:

> i. Cadence Bank recognized your Receiver's skill and experience[1] and never complained that Receiver was responsible for a lack of progress being made during the tenure of your Receiver's service to the Court. Now that the Court dissolved the Receivership as to the Johnsons, and the sole remaining issue in the Case is compensating your Receiver, Cadence Bank has new counsel questioning the value of his services;
>
> ii. The Receivership Order – submitted by Cadence Bank – does not contain a specificity requirement for billing and timekeeping;
>
> iii. Cadence Bank chose the method of Receiver's timekeeping that Cadence Bank now complains of;
>
> iv. Cadence Bank's first objection about your Receiver's invoices came **after** he resigned for *inter alia*, non-payment of fees. If there was any merit to Cadence Bank's objection, the delay in making the objection prevented your Receiver from curing it;
>
> v. The original Receivers and their attorneys submitted invoices in the format that Cadence Bank insists on, but Cadence Bank nevertheless refused to pay any portion of those invoices. The original receivers had to compel payment[2] of their fees and expenses;[3]
>
> vi. Century Bank, a similarly situated judgment creditor, paid its share of your Receiver's invoices; and
>
> vii. Cadence Bank refuses to pay Receiver for **anything**, including a single expense or **any undisputed** amount of fees.

*See* **Exhibit 17 at pg. 2.** Moreover, the banks vitriol towards the receivers, who were working on their behalf, is apparent from the receivers' filings. For example, Mr. Korn attached the following emails as exhibits to his response to Cadence's objection to his fee application.

> **From:** Andrew Korn
> **To:** 'christian.george@akerman.com'
> **Cc:** grant.jones@haleyolson.com; michael.napoli@akerman.com; teresa.barrera@akerman.com; Mindy.Langston@huntington.com; david.a.peura@huntington.com; susan.scott@akerman.com; chuckpignuolo@gmail.com; Dave.Hermann@huntington.com; John C. Leininger; Kevin Schutte
> **Subject:** The "Case": No. 4:23-cv-609-BJ; Cadence Bank f/k/a BancorpSouth Bank and Century Bank v. Bridgelink Engineering, LLC, Cord Henry Johnson, Cole Wayne Johnson, et al. (USDC N.D. Tex.) (Fort Worth Division)
> **Date:** Friday, June 26, 2026 9:00:29 PM
>
> ---
>
> You called at 5:40 p.m. today. I answered. It was "easy" to reach me.
>
> I ended the phone call immediately after you said: "*Why are you being such a dick in your emails?*"
>
> I will not tolerate such churlishness and profanity while serving as a representative of the Court. *In re Coeptis Equity Fund LLC*, 2024 U.S.

***See* Exhibit 18 at pg. 39 of 72**.

> David Skeels and the Johnsons – whatever you want to say about them (and there is a lot to say) – never called me a dick. They've never raised their voices to me. As tense as the Johnsons must have felt about things they attributed to me (*e.g.*, I'm the one who showed Cole Johnson the evidence that retroactively pronounces him and Ashley McCormick man and wife), the Johnsons have been civil.

***See* Exhibit 18 at pg. 51 or 72.**

There is no reason to believe that Cadence would treat Cord and Cole Johnson better than it treated its hand-picked former Receivers, who had to fight to recover their fees. There is no

indication Cadence will voluntarily pay any award. The Court should order a bond to guarantee payment of an award without further unnecessary and costly litigation and collection efforts.

## IV.

## REQUESTED RELIEF

WHEREFORE, Cord and Cole Johson request that the Court grant this Motion and enter an Order as follow:

1. Granting the Motion as filed;
2. Requiring the Petitioning Creditors to file a bond, jointly or separately, in the aggregate amount of $20,000,000 for both Involuntary Petitions;
3. Requiring the Bond to be filed within 14 days after the entry of the Court's order;
4. Requiring the bond to be paid in cash or issued by a surety and conditioned to indemnify Cord and Cole Johnson for the amounts the Court may later award them under 11 U.S.C. § 303(i);
5. Requiring the Petitioning Creditors to provide Cord and Cole Johnson with evidence of the bond within 7 days after entry of the Court's order;
6. Providing that the Court retains authority to increase or otherwise modify the bond upon a further showing; and
7. Granting Cord and Cole Johnson such other and further relief as may be just and proper.

October 15, 2026

Respectfully submitted,

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**

By: /s/ Robert A. Simon
Robert A. Simon
Texas Bar No. 18390000
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
rsimon@whitakerchalk.com
**ATTORNEYS FOR ALLEGED DEBTOR, CORD HENRY JOHNSON**

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 12, 2026, I conferred by email with counsel for Petitioning Creditors, regarding the relief sought in the forgoing Motion. Counsel for the Petitioning Creditors are opposed.

*/s/ Robert A. Simon*
Robert A. Simon

## CERTIFICATE OF SERVICE

I hereby certify on this 14th day of October 2026, that I served a true and correct copy of the foregoing Motion upon all parties registered to receive service via this Court's ECF notification system.

*/s/ Robert A. Simon*
Robert A. Simon