Michael D. Napoli, SBN: 14803400
Laura M. Taveras, SBN: 24127243
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9338
michael.napoli@akerman.com
laura.taveras@akerman.com

*Attorneys for Petitioning Creditor Huntington Bank f/k/a Cadence Bank*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 26-43993-MXM-7** |
| **COLE WAYNE JOHNSON** | § | **CASE NO. 26-43995-ELM-7** |
| **CORD HENRY JOHNSON** | § | |
| | § | **(JOINTLY ADMINISTERED** |
| **ALLEGED DEBTORS.** | § | **UNDER 26-43993-MXM-7)** |
| | § | **CHAPTER 7** |

**PETITIONING CREDITORS' OMNIBUS RESPONSE IN OPPOSITION TO ALLEGED DEBTORS' MOTIONS TO DISMISS THE INVOLUNTARY PETITIONS**

Century Bank ("Century"), Huntington National Bank f/k/a Cadence Bank ("Huntington" or "Cadence"), Hunt Guillot & Associates, LLC ("HGA"), and Spin Capital, LLC[1] ("Spin Capital," and collectively, the "Petitioning Creditors") file this Omnibus Objection (the "Objection") the Amended Motion to Dismiss Involuntary Petition filed by Cole Wayne Johnson [Case No. 26-43993, Doc. No. 10] (the "Cole Motion") and Motion to Dismiss Involuntary Petition filed by Cord Henry Johnson [Case No. 26-43995, Doc. No. 14] (the "Cord Motion," and together with the Cole Motion, the "Motions"). Cole Wayne Johnson and Cord Henry Johnson are referred

[1] Spin Capital is participating in this objection subject to its Statement Regarding Spin Capital, LLC (the Spin Statement"). Case No. 26-43993, Doc. No. 24.

to individually as "Cole Johnson" and "Cord Johnson," respectively, and collectively as the "Alleged Debtors." In support, the Petitioning Creditors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Motions ask this Court to dismiss the Involuntary Petitions (as defined below) based on the Alleged Debtors' characterization of the record rather than the record itself. Examined on its actual terms, the record defeats the grounds for dismissal asserted by the Alleged Debtors.

2. Four (4) separate creditors, holding final judgments with claims totaling $48,998,532.41, commenced these cases. See No. 26-43995, Doc. 1 at p. 4. Involuntary Petition Against an Individual at 4. The core of that debt, a $39,825,693.39 breach-of-contract judgment (the "Bank Judgment") held by Century and Huntington, was entered by the United States District Court for the Northern District of Texas on June 17, 2024, and affirmed by the United States Court of Appeals for the Fifth Circuit on November 24, 2025; the mandate issued on December 15, 2025. The Alleged Debtors concede that the Bank Judgment stands. Doc. No. 14 ¶ 18. A judgment that has been fully litigated and affirmed on appeal is the paradigm of a claim "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1).

3. The Alleged Debtors are not paying these debts. In the Motions, the Alleged Debtors concede that they carry unpaid creditors from past business ventures, and they acknowledge that the Bank Judgment stands unsatisfied. Doc. No. 14 at p. 3; *id.* ¶ 18; Doc. No. 10 at 3, ¶ 19. Beyond their own claims, the Petitioning Creditors have identified at least eight (8) additional judgments against Cord Johnson exceeding $24 million in the aggregate, including a $9,792,115.67 judgment, a $6,400,000.00 judgment, and a $6,051,557.19 judgment. Doc. No. at

3–4. And the state-court receivership the Alleged Debtors hold out as a superior alternative has, on the Petitioning Creditors' showing, produced no payment on their claims.

4. Against this record, the Motions rest on arguments that do not withstand scrutiny: that two banks holding separate notes and distinct, record-supported shares of a joint judgment are somehow "one" creditor; that alleged post-judgment collections against a ~$40 million judgment render the entire judgment "disputed"; that a missing corporate-ownership statement warrants dismissal; and that the Court should abstain in favor of a receivership that has produced no payment on the Petitioning Creditors' claims. The receivership argument also overlooks the State Court's express direction that the receiver apply sale proceeds to Amarillo National Bank's Judgment, rather than administer a collective distribution for all creditors. Case No. 26-43995, Doc. No. 14-2 at p. 1

5. The Petitioning Creditors do not contend that the existence of a judgment forecloses every inquiry into claim ownership, the automatic stay, or the amount owed. Rather, the Court should apply the governing burden-shifting framework to each judgment and to the specific evidence offered concerning each creditor. Under that framework, the Petitioning Creditors satisfy 11 U.S.C. §§ 303(b) and (h), the Alleged Debtors cannot carry their burden on bad faith or abstention, and the Motions should be denied.

## BACKGROUND

6. On September 4, 2026, the Petitioning Creditors filed Involuntary Chapter 7 Petitions against Cole Johnson (Case No. 26-43993) and Cord Johnson (Case No. 26-43995) under 11 U.S.C. § 303. The Involuntary Petition against Cord Johnson identifies the following judgment-based claims:

| | | |
|---|---|---|
| a. | Century Bank – Judgment | $16,398,814.92 |
| b. | Huntington Bank f/k/a Cadence Bank - Judgment | $23,426,878.46 |

| | | |
|---|---|---|
| c. | Hunt Guillot & Associates, LLC - Judgment | $938,678.53 |
| d. | Spin Capital, LLC - Judgment | $8,234,160.50 |
| | **Total:** | **$48,998,532.41** |

7. The Petition against Cole Johnson asserts substantially the same claims and was filed by these same four creditors together with a fifth, Crawford, Wishnew & Lang, PLLC ("CWL"), aggregating approximately $49 million. Case No. 26-439993, Doc. No. 1 p. 3.

8. On October 1, 2026, CWL filed a Notice of Withdrawal electing not to proceed further as a petitioning creditor on the 43993 Petition. Doc. No. 13.

9. On October 14, 2026, the Court ordered the cases jointly administered under Case No. 26-43993-MXM-7, transferring Cord Johnson's case to this Court. Case No. 26-43995 at Doc. No. 20; Case No. 26-43993 at Doc. No. 18.

10. Because the Motions raise substantially identical grounds, the Petitioning Creditors respond by this single Omnibus Objection. Consistent with the joint-administration order, however, creditor eligibility, the amount of each individual's obligations, and the requirements of § 303(h) are established separately for each Alleged Debtor. Record citations to the Involuntary Petition against Cord Johnson apply to the Involuntary Petition against Cole Johnsons only where the Involuntary Petition against Cole Johnson asserts the same claim.

**<u>The Judgments</u>**

11. Huntington and Century each extended separate credit to Bridgelink Engineering, LLC under the August 6, 2021 Credit Agreement (the "Credit Agreement"). A true and correct copy of the Credit Agreement is attached hereto as Exhibit A. The Credit Agreement identifies BancorpSouth Bank, now Cadence Bank and now Huntington, as Administrative Agent and a lender, and Century Bank as a separate lender. Exhibit A at 1. Schedule 2.1 to the Credit Agreement separately states BancorpSouth's $20,000,000.00 revolving commitment and

Century's $14,000,000.00 revolving commitment. *Id.* Sched. 2.1, Doc. No. 1-1. The separate notes mirror those commitments: Bridgelink promised to pay BancorpSouth up to $20,000,000.00 under a Revolving Loan Note dated August 6, 2021, and separately promised to pay Century up to $14,000,000.00 under a separate Revolving Loan Note dated August 6, 2021 (the "Notes"). Exhibit B at 1. True and correct copies of the Notes are attached hereto as Exhibit B. The alleged Debtor later executed a March 29, 2022 Guarantee Agreement guaranteeing the "Secured Obligations," which include the obligations owed to the lenders under the Credit Agreement and related loan documents (the "Guarantee Agreement"). Exhibit C at 1–2. A true and correct copy of the Guarantee Agreement is attached hereto as Exhibit C. Cadence, as Administrative Agent, sent default notices identifying payment and reporting defaults, invoking the Default Rate, and reserving the lenders' rights to accelerate and foreclose under the Credit Agreement, Guarantee Agreement, and other loan documents (the "Notice Letter"). Exhibit D at 1–3. A true and correct copy of the Notice Letter is attached hereto as Exhibit D.

12. After default, Judge Cureton, Magistrate Judge with the United States District Court of Texas entered Judgment in favor of both banks, jointly and severally against multiple defendants including the Alleged Debtors (the "Bank Judgment"). The Bank Judgment awards one aggregate sum and does not itself apportion the recovery between the banks. However, the separate commitments, separate notes, guarantees, and damages record underlying the Bank Judgment establish each bank's distinct share. The Fifth Circuit affirmed the Bank Judgment on November 24, 2025, and the mandate issued on December 15, 2025.

13. HGA holds a Louisiana state court judgment against both Alleged Debtors for $938,678.53, plus the interest, costs, and fees provided in the judgment (the "the LA Judgement"). The LA Judgment followed a November 14, 2024 hearing on HGA's motion for sanctions, at

which the trial court struck the defenses asserted by defendants including the Alleged Debtors, and imposed alter-ego liability on the Alleged Debtors for judgments previously entered against Bighorn Construction & Reclamation, LLC ("BCR"). BCR filed its Chapter 7 Petition on June 7, 2024, and the judgment states that no action is taken against BCR because it is in bankruptcy. The ownership and stay objections arising from those circumstances are addressed below.

14. Spin Capital holds a New York state court judgment domesticated in Texas (the "NY Judgment"). On October 19, 2026, at the request of Benjamin A. Stanziale, Jr., the Chapter 11 Trustee for the estate of Avrumi Lubin a/k/a Josh Lubin (the "Lubin Trustee"), the Spin Statement was filed in Case No. 26-43993, Doc. No. 24. According to the Spin Statement, Lubin filed a Chapter 11 Petition in the United States Bankruptcy Court for the District of New Jersey on June 25, 2026 (Case No. 26-17342) and scheduled a 100% membership interest in Spin Capital as an asset of his estate; the Lubin Trustee, appointed on September 18, 2026, commenced Adversary No. 26-01494 (EJO) on October 15, 2026, seeking, among other relief, to extend the automatic stay to Spin Capital. Doc. No. 24 ¶¶ 1–4. The New Jersey Court's October 15, 2026 temporary order (the "Temporary Order") stays litigation and enforcement of judgments against Spin Capital, bars Lubin from acting in Spin Capital's name, and places litigation involving Spin Capital under the Lubin Trustee's sole management pending a preliminary-relief hearing set for October 22, 2026. *Id.* ¶¶ 5–6; Doc. No. 24-1. The Lubin Trustee has authorized Spin Capital's joinder in this submission, subject to the Temporary Order.

**<u>Receiverships</u>**

15. The Alleged Debtors report that Craig Noack ("Noack") was appointed receiver in August 2023 and again in December 2024 by order of a Texas state court in Potter County, Texas (the "Potter County Order"). The Potter County Order expressly appoints Noack under Texas Civil

Practice and Remedies Code § 31.002(b)(3) to take possession of the Alleged Debtors' nonexempt property, sell it, and "pay the proceeds of such sale(s) to one specific creditor, Amarillo National Bank, to apply toward the judgment" entered in that action on August 5, 2024. Case No. 26-43995, Doc. No. 14-2 at p. 1, *Amarillo Nat'l Bank v. Enhanced Midstream, LLC*, No. 111977-E-CV (108th Dist. Ct., Potter Cnty., Tex.). Amarillo National Bank is the judgment creditor in that action. The order places nonexempt property in *custodia legis* and grants broad authority over records, accounts, causes of action, contract rights, and business interests. Potter County Order at 2–4. It also authorizes Noack to "commence, maintain, settle and control any cause of action which any Judgment Debtor has the right to commence, maintain, settle or control." *Id.* at p. 3. That provision concerns causes of action belonging to the Alleged Debtors; it does not itself confer authority to compromise independent claims held against them by nonconsenting creditors. These powers are to be used solely to benefit Amarillo National Bank. The Petitioning Creditors have received no payment on their claims through the state-court receiverships. The Federal District Court dissolved its receivership as to the Alleged Debtors after concluding that the preexisting state-court receiverships required that result.

## LEGAL STANDARD

16. An involuntary petition against a person may be commenced "by three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount," if the claims aggregate at least the statutory threshold. 11 U.S.C. § 303(b)(1). After trial, the Court "shall order relief" if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." *Id.* § 303(h)(1). The Petitioning Creditors bear the burden of proving these statutory requirements by a preponderance of the



88941426;4

evidence. *In re Edwards*, 501 B.R. 666, 673, 680–82 (Bankr. N.D. Tex. 2013); *In re Acis Capital Management, L.P.*, 584 B.R. 115, 143–44 (Bankr. N.D. Tex. 2018).

17. The Fifth Circuit applies an objective standard to the bona-fide-dispute inquiry: "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Subway Equipment Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 221 (5th Cir. 1993). The petitioning creditor bears the initial burden of making a prima facie case that no bona fide dispute exists; the burden then shifts to the debtor, and "neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden." *Id.* The court's aim is to ascertain whether a bona fide dispute exists, not to resolve the dispute, although it may conduct the limited legal analysis necessary to determine whether an asserted dispute has an objective basis. *Id.*; *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651, 658 (5th Cir. 2014). Consistent with that standard, the Fifth Circuit held that the unstayed final judgment before it was not subject to a bona fide dispute under §§ 303(b)(1) and 303(h)(1). *Norris v. Johnson (In re Norris)*, No. 96-30146, 1997 WL 256808, at *5 (5th Cir. Apr. 11 1997)(per curiam). A final judgment does not, however, create an irrebuttable presumption; the Court considers the particular judgment and any objective evidence challenging liability, amount, or enforceability. *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, 920–23 (Bankr. N.D. Tex. 2009).

18. Bad faith is not an independent, non-statutory ground for dismissing an involuntary petition that satisfies § 303. Courts in this Circuit have held that "[a]n argument that a bankruptcy court should dismiss an involuntary petition for bad faith even when the petitioning creditors satisfy Section 303's requirements 'is without merit because this Court lacks the authority to arbitrarily impose non-statutory requirements to the procedure for filing involuntary petitions as

set forth in the Code.'" *In re Terry Graham Trucking Inc.*, 2023 Bankr. LEXIS 408, at *17 (Bankr. W.D. La. Feb. 15, 2023) (citing *In re On-Site Fuel Serv.*, 2019 Bankr. LEXIS 1596, at *29 (Bankr. S.D. Miss. May 24, 2019)); *see also In re Gutierrez*, 2020 Bankr. LEXIS 1792, at *35-36 (Bankr. S.D. Miss. July 6, 2020) (a court lacks the authority to impose non-statutory requirements on involuntary bankruptcy proceedings). Likewise, abstention under § 305(a) is "an extraordinary remedy," and "the party seeking abstention bears a substantial burden of proof." *In re Gutierrez*, No. 20-50129-NPO, 2020 WL 3720234, at *16 (Bankr. S.D. Miss. July 6, 2020) (denying abstention where the alleged debtor failed to show that dismissal would better serve both the creditor's and the debtor's interests).

## ARGUMENT

### I. The Petitions Are Supported by at Least Three Creditors Holding Claims Not Subject to a Bona Fide Dispute.

#### A. Century and Huntington Are Two Separate Creditors, Not One.

19. The Alleged Debtors argue that Century and Huntington hold "one indivisible judgment" and together count as a single petitioning creditor. But using alter-ego-type principles to collapse separate creditors is disfavored when deployed as a debtor's "shield, to avoid involuntary bankruptcy." *Henry S. Miller*, 418 B.R. at 918 (quoting *Sims*, 994 F.2d at 217 n.8). The governing authority permits a court to look behind a jointly held judgment and count the holders separately when the record demonstrates that the judgment is readily divisible into distinct underlying obligations. *In re Edwards*, 501 B.R. 666, 678–79 (Bankr. N.D. Tex. 2013) (adopting the "easily divisible" test for jointly held judgments). *Edwards* treated the judgment there as one claim because the petitioners failed to connect their proposed allocation to the evidence underlying the judgment, *id.* at 679–80.

20. The record here supplies that connection. The Credit Agreement identifies two separate lenders and two separate revolving commitments: BancorpSouth/Huntington at $20,000,000.00 and Century at $14,000,000.00. Exhibit A. The loan documents then evidence two separate notes in those same principal amounts. Exhibit B. Cole and Cord Johnson guaranteed the secured obligations owed under those loan documents. Exhibit C at 1–2. The default record likewise treats the obligations as lender obligations under the Credit Agreement and related loan documents, with Cadence acting as Administrative Agent and lender and Century as a separate lender. *See, e.g.*, Exhibit D. Although the Bank Judgment awards one aggregate sum, the separate commitments, separate notes, and guarantees provide the objective basis for the allocation stated in the Petitions—$16,398,814.92 for Century and $23,426,878.46 for Huntington—which together total $39,825,693.38.

21. Where the record shows "separate claims in separate amounts based on their separate damages claims," the creditors are counted separately under § 303(b). *See Henry S. Miller*, 418 B.R. at 917–18; *Edwards*, 501 B.R. at 678–80. Although the judgment in *Henry S. Miller* expressly stated the separate amounts, *Edwards* permits the Court to consider the underlying judgment record where, as here, the judgment itself does not. The attached loan documents make the division objective rather than artificial: each bank held its own note, each note was payable to that bank or its registered assigns, and the Credit Agreement separately identified each lender's commitment and pro rata rights. Exhibit A §§ 2.1, 2.8(b); Exhibit B at 1. The banks therefore do not rely on a post hoc division of a single undifferentiated claim; they rely on separate loan rights that were reduced to one judgment.

22. The Alleged Debtors' reliance on *Atwood* is misplaced. There, two claimants jointly held a judgment for the full amount, the relevant facts were undisputed, and the record supplied

no basis to identify separate rights to payment. *In re Atwood*, 124 B.R. 402, 404, 409–10 (S.D. Ga. 1991). Likewise, *Forster* treated two payees as holding a single claim where "one lump sum [was] payable to two or more individuals," while distinguishing obligations requiring "separate and distinct payments based on distinct provisions"—even when those obligations are enforced through a joint judgment. *In re Forster*, 465 B.R. 97, 101 (Bankr. W.D. Va. 2012). This is therefore not an undivided joint obligation of the kind addressed in *Atwood* and *Forster*, but an "easily divisible" judgment reflecting distinct underlying claims. *See Edwards*, 501 B.R. at 677–79.

23. The Alleged Debtors' reliance on pending litigation between Century and Cadence does not change the analysis. That the banks may dispute rights or recoveries between themselves does not, without more, establish an objective dispute concerning either bank's claim against the Alleged Debtors. For purposes of § 303(b)(1), "the only claims that are relevant in determining the creditors' qualifications . . . are those of the creditors against the debtors." *Henry S. Miller*, 418 B.R. at 918–19 (explaining that the relevant § 303(b)(1) claims are the petitioning creditors' claims against the alleged debtor, not obligations among the creditors or their affiliates) (quoting *Sims*, 994 F.2d at 219).

### B. The Final, Affirmed Bank Judgment Is Not Subject to a Bona Fide Dispute.

24. An unstayed final judgment ordinarily establishes that the judgment creditor's claim is not subject to a bona fide dispute. *In re Edwards*, 501 B.R. 666, 680–81 (Bankr. N.D. Tex. 2013) (holding that introduction of an unstayed final judgment established the petitioning creditors' prima facie case and that, absent contrary evidence, the claims were not subject to a bona fide dispute). Indeed, "having a judgment goes a long way toward establishing a claim not subject to a bona fide dispute," and "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments." *In re Henry S. Miller Commercial, LLC*, 418

B.R. 912, 920–21 (Bankr. N.D. Tex. 2009) (quoting *Platinum Financial Services Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004)).

25. An appeal alone does not create a bona fide dispute, but an unstayed judgment creates a rebuttable presumption. *Henry S. Miller*, 418 B.R. at 921–23. A debtor may overcome that presumption only by identifying objective post-judgment circumstances that genuinely call the claim's liability, amount, or enforceability into question, such as a default judgment entered without litigation of the facts, a judgment entered against a nonparty, or subsequent payment or satisfaction. *Id.* at 921–22. Where, as here, the judgment followed full, participatory litigation, was affirmed on appeal, and bears no patent irregularity, the judgment creditor holds a claim not subject to a bona fide dispute. *Id.* at 922–23 (declining to treat an unstayed judgment as disputed where it followed a multiday jury trial with the debtor's active participation and contained no facial irregularity).

26. The Bank Judgment was not merely unstayed; it was affirmed by the Fifth Circuit on November 24, 2025, after full adversarial litigation, and the mandate issued on December 15, 2025. The Alleged Debtors concede that the Bank Judgment stands. Doc. No. 14 at ¶ 18. A fully litigated judgment that has been affirmed on appeal presents none of the exceptional post-judgment circumstances identified in *Henry S. Miller*. *See Henry S. Miller*, 418 B.R. at 921–23. The Petitioning Creditors rely on that adjudicated and affirmed history only for the Bank Judgment; the distinct challenges to the LA Judgment and NY Judgment are addressed separately below. Persuasive authority confirms that an unstayed judgment is ordinarily not subject to a bona fide dispute because a contrary rule would undermine the settled enforceability of final judgments. *See In re Euro-American Lodging Corp.*, 357 B.R. 700, 712–13 (Bankr. S.D.N.Y. 2007) (holding that an unstayed judgment remained enforceable and was not subject to a bona fide dispute

notwithstanding a pending appeal); *In re Drexler*, 56 B.R. 960, 966–68 (Bankr. S.D.N.Y. 1986) (reasoning that treating an unstayed final judgment as disputed would undermine the longstanding enforceability of unstayed judgments and require the bankruptcy court to revisit issues already adjudicated).

### C. Alleged Post-Judgment Collection Does Not Create a Bona Fide Dispute as to the Bank Judgment.

27. The Alleged Debtors invoke *Green Hills* to argue that alleged post-judgment collections create a bona fide dispute as to amount. *See* Doc. No. 14 at 16. *Green Hills* confirms that, after BAPCPA, a bona fide dispute as to amount may disqualify a petitioning creditor. *In re Green Hills Development Co.*, 741 F.3d 651, 656–58 (5th Cir. 2014). But the factual basis for the dispute there was unresolved, multiyear litigation asserting claims that directly attacked the validity of the loan agreement and the amount owed, survived multiple summary-judgment proceedings, and could void or offset the underlying debt. *Id.* at 658–60.

28. Here, by contrast, the Alleged Debtors identify no unresolved challenge to the validity of the banks' debt, which has been reduced to a final judgment and affirmed on appeal. Pending litigation over a claim may strongly suggest a bona fide dispute, particularly where the alleged debtor has asserted affirmative defenses, *In re Seven Three Distilling Co., LLC*, 2021 WL 2843849, at *10 (Bankr. E.D. La. July 6, 2021), but no such litigation remains as to the banks' claim, and a disagreement confined to a portion of the amount owed does not disqualify the entire claim. *Id.* at *24 (citing *In re Williams*, 616 B.R. 690 (Bankr. N.D. Tex. 2020)); *see also id.* at *9 (an alleged debtor's subjective belief or intent is insufficient to rebut the prima facie case). Because the credits they assert directly concern the judgment debt, the Petitioning Creditors do not ask the Court to disregard them; *Green Hills* declined to adopt *In re Seko Investment, Inc.*, 156 F.3d 1005, 1008–09 (9th Cir. 1998), as a basis for ignoring related offsets. 741 F.3d at 657–58 & n.29. The

Alleged Debtors point to approximately $329,393.30 in registry funds and unspecified garnishment or receivership proceeds that allegedly were not credited against the Bank Judgment. This was not a post-judgment offset. Rather, it occurred pre-judgment. The registry disbursement order was entered on April 15, 2024, before entry of the Bank Judgment. After resolving summary judgment, the District Court directed the banks to submit a proposed judgment accounting for the amounts due, as of May 30, 2024, allowing the Alleged Debtors until June 30, 2024 to object or file an alternative form of judgment. Exhibit E (Dist. Ct. Doc. No. 63). A true and correct copy of Doc, No. 63 is attached hereto as Exhibit E. The Banks did so and the Alleged Debtors did not object. *See* Exhibit I. A true and correct copy of the District Court docket sheet is attached hereto as Exhibit I. The resulting Bank Judgment, entered June 17, 2024, awarded a specific sum of $39,825,693.39. Exhibit F (Dist. Ct. Doc. No. 76) at 1. A true and correct copy of the Bank Judgment is attached hereto as Exhibit F. The $329,393.30 disbursement the Alleged Debtors invoke therefore preceded—and is already encompassed within—the Court-directed calculation embodied in the Bank Judgment; it is not an uncredited post-judgment collection creating a present dispute as to amount.

29. The banks' own loan records reflect no unaccounted-for collection against the debt. Bridgelink's indebtedness under the Credit Agreement is carried on two loan accounts, Loan No. 49041 and Loan No. 49131, both of which remain open and active. Exhibit G. The transaction history reports for both accounts were generated as of June 22, 2026. *Id.* True and correct copies of the transaction history reports are attached hereto as Exhibit G. Because those reports reflect all activity posted to the accounts as of the report date, they are inclusive of any payment, credit, or other reduction of the indebtedness received through that date. *Id.* As of the report date, the

$33,666,693.35 principal balance converted on Loan No. 49131 on June 22, 2026, remained unpaid, as did the $1,869,877.76 in accrued interest on Loan No. 49041. *Id.*

30. The Bank Judgment establishes the Petitioning Creditors' prima facie case; the Alleged Debtors therefore must present objective evidence, not allegation or uncertainty, showing that the post-judgment collections create a genuine dispute concerning the amount presently owed. *See Sims*, 994 F.2d at 221; *Edwards*, 501 B.R. at 680–81. A fixed credit capable of mechanical application is materially different from the unresolved claims in *Green Hills*; absent competent evidence that a credit was omitted or that unidentified proceeds make the present balance genuinely uncertain, the Alleged Debtors have not rebutted the prima facie effect of the Bank Judgment. *See Henry S. Miller*, 418 B.R. at 921–23. Alternatively, if the Court finds a dispute concerning a discrete portion of the amount, that finding should not disqualify the banks. Since BAPCPA, courts have divided on whether a bona fide dispute as to the amount of a creditor's claim divests that creditor of standing when an undisputed portion of the claim exceeds the statutory threshold. *Williams*, 616 B.R. at 694 (citing *State Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019)). The better view, adopted in this District, is that "[a] bona fide dispute as to the amount of a creditor's claim does not divest that petitioning creditor of standing to file an involuntary petition if there is an undisputed portion of the creditor's claim in excess of the statutory threshold." *Id.* (adopting *In re Gen. Aeronautics Corp.*, 594 B.R. 442, 462–66 (Bankr. D. Utah 2018)); *see also* 2 *Collier on Bankruptcy* ¶ 303.11[2]. The *Williams* court found that reading consistent with the legislative history of § 303(b)(1) and explained that *Green Hills* did not decide the materiality of a partial amount dispute. *Williams*, 616 B.R. at 693–94 & n.10. Courts elsewhere in this Circuit have followed the same approach. *Seven Three Distilling*, 2021 WL 2843849, at *18–19, *24 (rejecting the argument that a dispute as to the amount remaining due on a note after a partial offset



88941426;4

disqualified the noteholder's entire claim). The Petitioning Creditors recognize that court in this Circuit has read § 303(b)(1) to disqualify a claim if any portion of it is subject to a bona fide dispute. *In re ArtiusID, Inc.*, 673 B.R. 340, 356–60 (Bankr. W.D. Tex. 2024). But *ArtiusID* involved unadjudicated invoice claims that remained the subject of pending litigation in which the alleged debtor had asserted affirmative defenses and counterclaims—not a fully litigated judgment affirmed on appeal. *See id.* at 343–44, 362–65.

31. Here, even if the entire $329,393.30 in registry funds were deducted from each bank's share of the Bank Judgment—a deliberately conservative assumption that forecloses any concern about double counting a joint collection—Huntington would retain an undisputed claim of at least $23,097,485.16 and Century an undisputed claim of at least $16,069,421.62, each far exceeding the statutory threshold. Nor would the roughly $15,000 collected through the federal receivership (and paid to the Receiver) alter that conclusion. The banks' loan transaction reports, which are inclusive of all activity posted through the June 22, 2026 report the loans balance. Whatever the Alleged Debtors' asserted credits, they cannot reduce either bank's claim to anywhere near the statutory minimum.

### D. HGA or Spin Capital Supplies the Third Qualifying Creditor, and CWL's Withdrawal Is Immaterial.

32. Whether a state-law cause of action is property of a bankruptcy estate turns on whether, under applicable state law, the debtor itself could have asserted the claim as of the commencement of the case, an inquiry that depends on "the nature of the injury for which relief is sought." *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994). An alter-ego action is property of the estate under § 541(a)(1) where it is a generalized right "belonging to" the debtor corporation — one "available to all creditors" that "does not rest upon a particular creditor's dealings with or reliance on the

control entity." 11 U.S.C. § 541; *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1152 (5th Cir. 1987). The Fifth Circuit treats single business enterprise the same way. *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 360–61 (5th Cir. 1999). But that characterization is not automatic: a claim is not estate property "simply because it could be brought by many creditors," *Educators Grp. Health Tr.*, 25 F.3d at 1286 n.4, and the governing authority arose under Texas law, not the Louisiana law under which HGA's judgment was rendered. *S.I. Acquisition*, 817 F.2d at 1152. The Alleged Debtors' premise — that every claim against a corporation's principals necessarily belongs to its estate — thus oversimplifies a law- and injury-specific inquiry the Court need not resolve here.

33. The Court need not decide ownership, because HGA's final, unstayed judgment is not subject to a bona fide dispute regardless of how that question would come out. A "claim" under § 303(b)(1) is a right to payment "whether or not such right is reduced to judgment," so the relevant claim is HGA's Louisiana judgment itself, not the alter-ego theory underlying it. 11 U.S.C. § 303; *Marciano v. Chapnick (In re Marciano)*, 708 F.3d 1123, 1126–27 (9th Cir. 2013). An unstayed state-court judgment is the paradigm of an undisputed claim: under the majority rule, such judgments "are not subject to bona fide dispute for purposes of § 303(b)(1)," because a contrary rule "would effect a radical alteration of . . . the long-standing enforceability of unstayed final judgments," *Marciano*, 708 F.3d at 1126; and even under the more debtor-friendly approach, "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments." *Byrd*, 357 F.3d at 438–39. A bankruptcy court in this Circuit, applying Louisiana law, has held precisely that "[a] claim arising from an unstayed state court judgment is not subject to bona fide dispute as to liability or amount." *In re Williams*, 636 B.R. 720, 735–36 (Bankr. W.D.

La. 2021). HGA's Lincoln Parish judgment is final and unstayed; it establishes a qualifying, undisputed claim. *Id.* at 735–36; Judgment at 1.

34. The Alleged Debtors' present ownership theory must also be considered against BCR's sworn bankruptcy disclosures. The schedules, verified under penalty of perjury by one or more of the Alleged Debtors, did not identify HGA's claims against them as assets of BCR's estate. That omission undermines their present characterization of those claims as estate property. The Alleged Debtors identify no contemporaneous disclosure treating HGA's claims as BCR's assets, yet now invoke that characterization to defeat HGA's judgment and its eligibility as a petitioning creditor.

35. Full faith and credit forecloses the Alleged Debtors' invitation to re-examine that judgment in the guise of § 303(b). A federal court must give a state judgment the same effect it carries in the rendering State, which "would be of little consequence if a federal court treated a non-default unstayed state judgment differently than it would be treated in its state of origin." 28 U.S.C. § 1738; *Marciano*, 708 F.3d at 1128. Screening an existing judgment under § 303(b) "was not relitigating [the debtor's] liability in violation of settled rules of res judicata . . . because it was not actually resolving any disputed question of fact or law," *Byrd*, 357 F.3d at 440–41; and weighing the Alleged Debtors' collateral ownership and stay theories would improperly "turn[] the court into an odds maker" on a challenge that has never been adjudicated. *Marciano*, 708 F.3d at 1127–28. The objective standard asks only whether a bona fide dispute exists, "not to actually resolve the dispute." *Green Hills*, 741 F.3d at 658.

36. The Alleged Debtors, moreover, are not the parties who could raise the estate's rights. The § 362 stay is "available only for the debtor's benefit and does not prohibit actions against nonbankrupt third parties or codefendants," *S.I. Acquisition*, 817 F.2d at 1147; it "applies



88941426;4

only to the debtor, not to co-debtors . . . nor to co-tortfeasors," *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); and does not reach a non-bankrupt party "even if they are in a similar legal or factual nexus with the debtor." *McConathy*, 111 F.4th at 581–82. The Alleged Debtors are non-debtors in BCR's case. And if the alter-ego claim is estate property at all, it is the BCR trustee — the corporation's "independent voice" — who alone may assert it. *S.I. Acquisition*, 817 F.2d at 1152–53. The Alleged Debtors say as much, conceding the claim "belongs to Marilyn Garner, who alone has standing to pursue it." Cole Mot. at 11. The trustee has not challenged HGA's judgment; the Alleged Debtors cannot assert the estate's rights for her.

37. In sum, the Alleged Debtors identify no order avoiding, vacating, staying, or satisfying HGA's judgment, and no authority permitting this Court to treat a final, unstayed, never-annulled judgment as subject to a bona fide dispute. The Court accordingly need not resolve whether the underlying claim was estate-owned or particular to HGA to conclude that the Alleged Debtors have not carried their burden of showing an objective basis to dispute HGA's claim. *Green Hills*, 741 F.3d at 658.

38. The Alleged Debtors' challenges to Spin Capital likewise do not defeat its claim. They identify a $5,336.19 difference between the NY Judgment and the amount stated in the Petitions and assert that garnishment proceeds were not credited. A writ of garnishment establishes that a collection remedy was invoked. The docket reflects no return, garnishee's answer, or order disbursing funds to Spin Capital, and the Alleged Debtors identify no evidence that any garnishment proceeds were actually collected.

39. A supported interest calculation or accurately applied credit is different from an unexplained disputed balance, and the asserted variance does not negate the existence of the NY Judgment. *See Sims*, 994 F.2d at 221; *Green Hills*, 741 F.3d at 658. The Alleged Debtors also

contend that a non-attorney signed on Spin Capital's behalf. The Petitioning Creditors do not dispute that an artificial entity must litigate through licensed counsel. But the Alleged Debtors' own authority does not require automatic dismissal: *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873–74 (5th Cir. 2004), recognized the representation requirement but reversed a dismissal with prejudice where the corporation had not been warned or ordered to obtain counsel. That decision supports an opportunity to cure a representation defect; it does not dispense with counsel.

40. Finally, the New Jersey proceedings do not create a bona fide dispute as to Spin Capital's claim. Eligibility under § 303(b) is measured as of the date the Petitions were filed, September 4, 2026. *See In re Smith*, 437 B.R. 817, (Bankr. N.D. Tex. 2009). The Lubin Trustee was not appointed until September 18, 2026, and the temporary order was not entered until October 15, 2026—both after the Petitions were filed. Doc. No. 24 ¶¶ 3–5. Those postpetition events cannot retroactively render Spin Capital's claim contingent or disputed as of the petition date, and nothing in the order purports to adjudicate the Alleged Debtors' liability to Spin Capital. *Id.* ¶¶ 5–6 & Ex. A. The order protects Spin Capital from litigation against it and governs, going forward, who may direct Spin Capital's participation in these cases; it does not bear on whether Spin Capital held a qualifying claim on September 4, 2026. Consistent with that order, the Lubin Trustee has authorized Spin Capital's joinder in this submission, subject to the protections of the Temporary Order. The Court should therefore distinguish those participation issues from an objective challenge to the underlying claim.

41. Section 303(b) requires only three eligible petitioning creditors. *See Edwards*, 501 B.R. at 680. The numerical showing for each Petition rests on Century and Huntington, counted separately for the reasons stated above, together with at least one additional qualifying creditor. If HGA qualifies, the Petitions need not depend on Spin Capital; if Spin Capital qualifies, the Court

need not resolve HGA's eligibility to reach the required number. CWL was not a petitioner in Cord Johnson's case, which was commenced by Century, Huntington, HGA, and Spin Capital. In Cole Johnson's case, CWL was a fifth petitioner, and the Petitioning Creditors may rely on CWL to establish the required number of creditors regardless of CWL's "withdrawal". A petitioning creditor's later withdrawal does not retroactively render a petition numerically insufficient, because eligibility is measured as of the petition date. *See In re Antar*, No. 12-13288-AJC, 2013 WL 1622217, at *2–3 (Bankr. S.D. Fla. Apr. 15, 2013) (holding that a petitioning creditor's post-petition settlement and withdrawal did not change its status as a qualifying petitioner as of the filing date).

### E. The Alleged Debtors Are Generally Not Paying Their Debts as They Come Due.

42. Section 303(h)(1) turns on four factors: "(i) the number of unpaid claims; (ii) the amount of such claims; (iii) the materiality of the non-payments; and (iv) the nature of the debtor's overall conduct in its financial affairs." *In re Acis Capital Management, L.P.*, 584 B.R. 115, 143 (Bankr. N.D. Tex. 2018). "No one factor is more meritorious than another"; the determination is made "as of the filing date"; and any debt on which the alleged debtor is not current as of the petition date should be considered a debt not being paid as it became due. *Id.* The analysis considers "both the amount of the debt not being paid and the number of creditors not being paid." *In re Harman*, 243 B.R. 671, 675 (Bankr. N.D. Tex. 1999). Post-petition payments do not change whether obligations were unpaid when the petitions were filed. *Sims*, 994 F.2d at 222; *Edwards*, 501 B.R. at 681–82.

43. A debtor cannot defeat a petition by paying small or ordinary debts while leaving large judgments unpaid. In *Harman*, the court entered an order for relief where the debtor "regularly paid his debts other than" sixteen judgments because "[t]he amount of the unpaid debt

coupled with . . . pre-petition conduct" showed that he was "not generally paying his debts as they came due." *Id.* Likewise, in *Acis Capital Management*, the debtors were "generally not being paid" even though a few "relatively insignificant" debts were current. 584 B.R. at 144.

44. The Alleged Debtors' own submissions establish the point. Each concedes that he carries "unpaid creditors from past business ventures" and that he "does not have the resources on hand to pay every outstanding historical business dispute obligation in full." Doc. No. 14 at 3, ¶ 28; Doc. No. 10 at 3, ¶ 29. Neither disputes that the Petitioning Creditors' judgments—nearly $49 million—remain unsatisfied. Doc. No. 14 ¶ 18. And the Petitioning Creditors have identified at least eight additional judgments against Cord Johnson exceeding $24 million, including judgments of $9,792,115.67, $6,400,000.00, $6,051,557.19, and $1,341,955.69. Doc. No. 11 at 3–4.

45. Against that backdrop, the debts the Alleged Debtors say they are paying are not, on their own description, their personal debts. Section 303(h)(1) asks whether "the debtor is generally not paying *such debtor's* debts." 11 U.S.C. § 303(h)(1) (emphasis added). Although the Cord Motion at one point asserts that Cord Johnson "owes approximately $19,000,000 in current obligations for ongoing business activities," Doc. No. 14 at 3, it elsewhere describes that debt as owed and serviced by his businesses: his "real estate-related businesses" are "servicing approximately $20,000,000 in debt related to his current business," *id.* ¶ 4; he services roughly $19 million in commercial loans "either directly or through entities under his control"; and he pays approximately forty-five vendors "directly or indirectly." *Id.* ¶ 27. His supporting chart likewise lists loans that "Cord Johnson or his businesses are currently servicing." *Id.* ¶ 27 & Ex. 11. Nowhere does he identify which of those obligations, if any, are his own. Obligations owed and paid by separate business entities are not the Alleged Debtor's debts merely because he controls

those entities, and their payment says nothing about whether he is paying the debts he personally owes.

46. Cole Johnson's showing is thinner still. He asserts that he pays "all current debts as they come due from his Bimergen salary." Doc. No. 10 ¶ 4. His supporting chart lists approximately $50,000 in recurring bills—including a vehicle lease, utilities, insurance, internet and streaming subscriptions, and boat financing—and identifies none of the Petitioning Creditors' judgments. Doc. No. 10-11. Keeping ordinary household and service accounts current while leaving tens of millions of dollars in judgments unpaid is precisely the posture that *Harman* and *Acis Capital Management* hold insufficient. *Harman*, 243 B.R. at 675; *Acis Capital Management*, 584 B.R. at 144.

47. Measured by both the number and the magnitude of unpaid claims, the Alleged Debtors are generally not paying their debts as they come due. Persuasive authority confirms the point. *See In re Marciano,* 446 B.R. 407 (Bankr. C.D. Cal. 2010) (holding that a debtor with "no plan or ability to pay the judgments" was generally not paying his debts, even where the unpaid creditors were few but were owed substantial sums); *In re Garland Coal & Mining Co.*, 67 B.R. 514 (Bankr. W.D. Ark. 1986) (finding that a debtor was "generally not paying" its debts although it was "paying most of its creditors in number," where the unpaid debt exceeded half of its total liabilities).

### F. The Alleged Debtors Cannot Prove Bad Faith.

48. The Motions allege an improper collection purpose, a deficient prefiling investigation, omitted corporate-ownership disclosures, an incorrect affiliate-bankruptcy response, uncredited collections, and misconduct in prior receivership proceedings. Doc. No. 14 ¶¶ 30–47. As a threshold matter, those allegations do not supply an independent basis for dismissal: where,

as here, the petitioning creditors satisfy § 303's requirements, the Court lacks authority to impose a non-statutory good-faith requirement on the filing of an involuntary petition. *Terry Graham Trucking*, 2023 Bankr. LEXIS 408, at *17; *On-Site Fuel Serv.*, 2019 Bankr. LEXIS 1596, at *29; *Gutierrez*, 2020 Bankr. LEXIS 1792, at *35-26. In any event, the petitioning creditor's good faith is presumed, and the Alleged Debtors must prove bad faith by a preponderance of the evidence under the totality of the circumstances. *Caucus Distribs.*, 106 B.R. at 923–25. The Fifth Circuit considers both the petitioning creditors' purpose and the reasonableness of their prefiling inquiry. *Sims*, 994 F.2d at 222. Hostility from prior litigation and unsuccessful collection efforts do not, without more, establish that the bankruptcy remedy was invoked for an improper purpose.

49. The Petitions serve a legitimate bankruptcy purpose: collective administration of substantial unpaid obligations, investigation of nonexempt assets and potentially recoverable transfers, and distribution by an independent trustee according to the Bankruptcy Code's priorities, including pro rata treatment within the applicable statutory categories. *See* 11 U.S.C. §§ 704(a)(1), (4)–(5), 726(a)–(b). The Alleged Debtors' authority is not to the contrary. In *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 335–37 (3d Cir. 2015), the creditor used bankruptcy to obtain individual leverage and to obstruct the debtor's pursuit of a claim potentially valuable to other creditors. Nothing of the kind is present here; the Petitioning Creditors seek a trustee who will act for the entire creditor body. That collective purpose differs from the State Court receivership order's direction to collect and apply proceeds toward one particular judgment. Potter County Order at 1. *See also Acis Capital Management*, 584 B.R. at 144–45.

50. Finally, the disputes concerning federal receivership fees and cooperation with the receiver are properly resolved on the actual orders, payment records, and communications. Nor does the existence of receiver-assisted settlement discussions, without more, establish that seeking

collective bankruptcy administration was improper. The Motions characterize Noack's work as a proposed global settlement for all creditors. *See* Doc. No. 10 at 2–4; Doc. No. 14 at 2–3. But the Order appointing Noack directs proceeds toward Amarillo National Bank's judgment, and its express settlement provision concerns causes of action the Alleged Debtors themselves could pursue. Potter County Order at 1, 3. Seeking a trustee to administer assets and claims under the Bankruptcy Code is not rendered an improper collection tactic merely because the Alleged Debtors prefer a consensual workout under that different mandate. Allegations concerning a prior collection proceeding do not establish that collective bankruptcy administration serves no legitimate purpose. On this record, the Alleged Debtors have not proven bad faith by a preponderance of the evidence. *See Sims*, 994 F.2d at 222; *Caucus Distribs.*, 106 B.R. at 923.

**G. Abstention Under § 305(a) Is Unwarranted.**

51. Section 305(a) permits dismissal or suspension only "if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Abstention under that section is "an extraordinary remedy," reserved "for those rare occasions when both the creditors and the debtor would be better served by dismissal," and the movant "bears a substantial burden of proof." *In re Gutierrez*, No. 20-50129-NPO, 2020 WL 3720234, at *16 (Bankr. S.D. Miss. July 6, 2020). "Granting an abstention motion . . . requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served." *In re AMC Investors, LLC*, 406 B.R. 478, 487–88 (Bankr. D. Del. 2009). Courts consider (1) the economy and efficiency of administration; (2) whether another forum is available to protect the parties' interests; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditors can work out a less expensive out-of-

court arrangement; (6) whether a nonfederal insolvency proceeding has proceeded so far that it would be costly and time-consuming to start afresh; and (7) the purpose for which bankruptcy jurisdiction has been sought. *Gutierrez*, 2020 WL 3720234, at *16. *Acis Capital Management*, 584 B.R. at 145–48. The factors overlap and need not receive equal weight. *Acis Capital Management*, 584 B.R. at 145–46. A debtor's "recitation of these seven factors and the facts most favorable to [him]" does not carry that burden. *Gutierrez*, 2020 WL 3720234, at *16. *See also In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995) (explaining that the § 305(a) test is "not whether dismissal would give rise to a substantial prejudice to the debtor," "[n]or . . . whether a balancing process favors dismissal," but whether both the debtor and creditors would be "better served").

52. The Noack receivership is not a viable alternative to bankruptcy. To begin with, the order appointing Noack does not provide that he is to gather the Alleged Debtors' assets and distribute them equitably among their creditors. It does not even authorize Noack to work out an overall settlement between the Alleged Debtors and their creditors. Instead, it directs Noack "to take control and possession of all nonexempt property, real and personal, of" the Alleged Debtors and to "sell such property and pay the proceeds of such sale(s) to Amarillo National Bank to apply toward the judgment signed by this Court in this cause on August 5, 2024." Potter County Order at 1. Noack's duties and authority begin and end with satisfying the Amarillo National Bank judgment. The breadth of the property subject to Noack's control does not change that stated collection purpose. *Id.* at 1–4. Nor does the power to "commence, maintain, settle and control" causes of action that a Judgment Debtor could pursue confer authority to compromise independent claims belonging to creditors against that debtor. *Id.* at 3. The Petitioning Creditors do not contend that Noack is categorically prohibited from facilitating voluntary settlement discussions. But his appointment does not itself authorize him to bind nonconsenting creditors to a global compromise

or replace the order's Amarillo National Bank directed payment mandate with a different distribution scheme. Any proposed workout must establish the necessary creditor consent and court authorization; those cannot be inferred from his control of the Alleged Debtors' assets.

53. Further, Noack is not a general equitable receiver but a mere turnover receiver appointed pursuant to Section 31.002 of the Texas Civil Practice and Remedies Code. That statute authorizes a receiver to take possession of nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(3). The authority of a turnover court and, thus, the receiver it appoints is limited. "The Texas turnover statute provides judgment creditors with a procedural device to assist them in satisfying their judgment debts." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018). As such, the "Turnover Statute is a purely procedural device." *Tomlinson v. Khoury*, 624 S.W.3d 601, 606 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). It addresses only the turnover of property held by the judgment debtor to the judgment debtor and does not address the rights of strangers to the underlying judgment. *Alexander Dubose*, 540 S.W.3d at 585. A court appointing a turnover receiver "may not adjudicate non-party rights through the turnover statute." *JAJWK, LLC v. Primeway Fed. Credit Union*, No. 01-23-00657-CV, 2026 WL 692235, at *1 (Tex. App.—Houston [1st Dist.] Mar. 12, 2026, no pet. h.) (citing *Bizkeeping Corp. v. Benton*, 714 S.W.3d 857, 864 (Tex. App.—Houston [1st Dist.] 2025, orig. proceeding), and *Tomlinson*, 624 S.W.3d at 606 & n.4). By contrast, a Chapter 7 trustee must collect estate property, investigate the debtor's financial affairs, and examine claims where appropriate, with distributions governed by statutory priorities and pro rata treatment within the applicable categories. 11 U.S.C. §§ 704(a)(1), (4)–(5), 726(a)–(b). Courts recognize the pursuit of claims through a trustee with authority unavailable to individual creditors as a valid bankruptcy

purpose. *See AMC Investors*, 406 B.R. at 488–89. Simply put, the Noack receivership cannot determine the claims against the Alleged Debtors and distribute assets to qualifying claimants as this Court can—even if the state court authorized Noack to do so, which it did not.

54. The facts reinforce that distinction. The state receiverships have produced no payment on the Petitioning Creditors' claims, and the related federal receivership—before it was dissolved as to the Alleged Debtors—collected only roughly $15,000, while nearly $49 million in judgments remain unpaid.Doc. No. 14 at 8; Doc. No. 11 at 2, 5. The Petitioning Creditors have raised substantial concerns that the Alleged Debtors are concealing assets. Doc. No. 11 at 5. Those concerns support independent investigation and administration under the Bankruptcy Code; they are not resolved merely by showing that a state receiver already controls nonexempt property. *See* 11 U.S.C. § 704(a)(1), (4). The Potter County Order's direction to apply proceeds to Amarillo National Bank's judgment also means that the absence of distributions to the Petitioning Creditors cannot be answered simply by invoking Noack's broad asset-control powers. Potter County Order at 1–4. The relevant question is whether the proposed alternative actually provides an authorized, funded, and equitable means of addressing the creditor body's claims. A preference for a private workout does not itself satisfy § 305(a)(1), although a supported consensual arrangement remains relevant to that inquiry. The Alleged Debtors' interests must also be considered, but their preference to avoid bankruptcy does not establish that dismissal would better serve both them and their creditors. *See* 11 U.S.C. § 305(a)(1); *AMC Investors*, 406 B.R. at 487–89.

55. The Alleged Debtors' reliance on Noack's declaration and the proposed workout does not eliminate the need to establish that the alternative is both authorized and superior for creditors and debtors. *See* Doc. No. 14-12; Doc. No. 10. Whatever weight the Court gives the declaration, it cannot enlarge the authority conferred by the appointing order. The Court should

require evidence of recoveries, distributions, remaining assets, expected completion, and the consents and approvals necessary to implement the proposed arrangement, rather than infer those matters from the receiver's appointment. Existing discovery and asset records can be made available to a trustee, mitigating duplication; the Code expressly provides for a custodian's turnover and accounting, subject to the Court's authority to excuse compliance when the statutory standard is met. 11 U.S.C. § 543(b), (d)(1). *See Acis Capital Management*, 584 B.R. at 146–47. Noack's October 7, 2026 email underscores the preliminary and limited nature of the alternative then under discussion. He identified himself as the turnover receiver for two judgments and described a potential settlement involving "my judgment creditors as well as Cadence Bank and Century Bank." Email from Craig Noack to John C. Leininger & Michael D. Napoli, *Cole & Cord Johnson—potential global settlement* (Oct. 7, 2026, 4:42 PM), resent with a corrected address (Oct. 7, 2026, 4:44 PM) (the "October 7 Email"). A true and correct copy of the October 7 Email correspondence is attached hereto as Exhibit H.

56. Although Noack stated that he had reviewed the proposal and thought it had possibilities for improving recovery, he expressly cautioned: "I have not yet even spoken to the judgment plaintiffs in my cases." *Id.* He invited a meeting to discuss whether the proposal was worth exploring and stated that he was reaching out to others as well. *Id.* That communication was an invitation to explore a potential settlement, not evidence of an agreed, funded, or comprehensive workout. It did not set out the proposal's payment terms, funding, security, releases, or treatment of creditors outside the identified group. The proposal itself has not been provided to the Petitioning Creditors' counsel. *Id.*

57. The proposed $10 million workout is relevant only as the Alleged Debtors' asserted alternative to bankruptcy; the Petitioning Creditors do not offer it to establish the amount or

validity of any debt. The October 7 Email does not identify a $10 million amount or establish that the proposal Noack described is the same proposal invoked in the Motions. That connection, and any subsequent progress, must be established by evidence rather than assumed. Nor does the email establish that the proposal includes every other creditor: Noack said he was reaching out to others. But it identifies no proposed treatment for HGA, Spin Capital, or the remaining creditor body, and it supplies no basis to conclude that their interests would be better served by dismissal. October 7 Email. A proposal to resolve the claims of Noack's judgment creditors and the two banks is not, without addressing the other creditors, a demonstrated global alternative to collective administration. To the extent the Alleged Debtors seek to obtain selected petitioning creditors' withdrawal through individual settlements while leaving other creditors' claims unresolved (something improper under the Bankruptcy Code), that approach does not itself establish an equitable alternative for the creditor body.

58. An undisclosed, preliminary proposal, does not establish that dismissal better serves creditors and the Alleged Debtors under § 305(a)(1). The Court need not find that Noack has breached any duty, or that a consensual global settlement is impossible, to deny abstention. *See Gutierrez*, 2020 WL 3720234, at *16.

## **CONCLUSION**

For the foregoing reasons, the Petitioning Creditors respectfully request that the Court (i) deny the Cole Motion and the Cord Motion; (ii) deny abstention under 11 U.S.C. § 305(a)(1); (iii) to the extent necessary, permit supplementation of the evidentiary record and determine any disputed creditor-eligibility and § 303(h) issues at an evidentiary hearing or trial rather than dismiss the Petitions on unresolved factual assertions; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: October 23, 2026

Respectfully submitted,

**AKERMAN LLP**

*/s/ Michael D. Napoli*

Michael D. Napoli
Texas Bar No. 14803400
Laura M. Taveras
Texas Bar No. 24127243
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
michael.napoli@akerman.com
laura.taveras@akerman.com

*Attorneys for Petitioning Creditor Huntington Bank f/k/a Cadence Bank*

*/s/ John C. Leininger*

John C. Leininger
Texas Bar No. 24007544
Otteson Shapiro LLP
4851 LBJ Freeway, Suite 650
Dallas, Texas 75244
(214) 619-8325 (Telephone)
Email: jcl@os.law

*Counsel for Century Bank and Spin Capital, LLC*

*/s/ Russell A. Woodward*

Russell A. Woodward
Louisiana Bar No. 34163
Law Offices of Russell A. Woodward Jr., LLC
119 Pelican Blvd.
Ruston, LA 71270
(318) 255-4898 (Telephone)
Email: raw@therawlaw.com

*Attorneys for Hunt, Gulliot & Associates, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026 the foregoing document was electronically filed and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Michael D. Napoli*
Michael D. Napoli