# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CADENCE BANK F/K/A *
BANCORPSOUTH BANK AND *
CENTURY BANK *
*
VS. * NO.
* 4:23-CV-00609-BJ
BRIDGELINK ENGINEERING, LLC;*
COLE WAYNE JOHNSON, CORD *
HENRY JOHNSON, BIGHORN *
CONSTRUCTION AND *
RECLAMATION, LLC; BIGHORN *
SAND & GRAVEL LLC, BIGHORN *
INVESTMENTS AND PROPERTIES *
LLC *

-----------------------------

ORAL DEPOSITION OF
COLE WAYNE JOHNSON
OCTOBER 30, 2024

-----------------------------

ANSWERS AND DEPOSITION OF COLE WAYNE JOHNSON, a witness produced at the instance of the Plaintiff, taken in the above styled and numbered cause, on the 30th day of October, 2024 from 10:07 a.m. to 3:21 p.m., before Gail Spurgeon, a Certified Court Reporter in and for the State of Texas, at the offices of Otteson Shapiro, 4851 LBJ Freeway, Suite 650, City of Dallas, County of Dallas, and State of Texas, pursuant to the Federal Rules of Civil Procedure.

A P P E A R A N C E S

MR. KEVIN SCHUTTE
MR. JOHN C. LENINGER
Otteson Shapiro
4851 LBJ Freeway
Suite 650
Dallas TX 75244
kschutte@os.law
jcl@oslaw.com
APPEARING FOR THE PLAINTIFF
CENTURY BANK

MR. MARSHALL GRANT JONES
MR. BLAKE RASNER
Haley & Olson
100 N. Ritchie Road
Suite 200
Waco TX 76712
grant.jones@haleyolson.com
brasner@haleyolson.com
APPEARING FOR THE PLAINTIFF
CADENCE BANK

MR. CHARLES NORTH
MR. VIKESH PATEL
Kearney McWilliams & Davis
55 Waugh
Suite 150
Houston TX 77007
cnorth@kmd.law
vpatel@kmd.law
APPEARING FOR THE DEFENDANT

ALSO PRESENT:
Cord Johnson
Charles Pignuolo
Tom Lilly (via zoom)

A. Yeah.

Q. -- is where it says it's signed. Do you see that date?

A. Yes.

Q. All right. And the judgment amount is $39,825,693.39. Do you see that reflected in Exhibit Number 2?

A. I do.

Q. All right. So the deposition we're here today to take is a postjudgment deposition that's what the style or the title of Exhibit 1 says is in aid of execution of the judgment. The judgment being Exhibit 2. Do you understand that?

A. I do.

Q. We were into your background when we got diverted by the nondisclosure and the depositions. I want to keep going through your background.

What is your telephone number?

A. (307) 363-3890.

Q. Do you have any other telephone numbers that are in your name?

A. No.

Q. Do you -- you don't carry multiple

cell phones?
A. No.
Q. Do you have work cell phones that you carry?
A. No.
Q. The phone number (945) 208-5293, is that a phone number of yours?
A. I'm not familiar with it.
Q. It's never been?
A. I'm not familiar with it.
Q. Okay. Where do you currently work?
A. I'm in business by myself my whole career.
Q. What's the business by yourself where you currently work?
A. I'm an entrepreneur, work for the family office.
Q. Okay. And so what are those -- what are those entities that you own?
A. They're under nondisclosure. I can't list them or talk about partners. They're all nondisclosure.
Q. You can't list what entities you own because of nondisclosure?
A. That's correct.

A. That's under a nondisclosure. I can't answer that.
Q. How many nondisclosure agreements have you entered into?
A. Multiple. Every company has one.
Q. So how many companies are there?
A. I'm unsure.
Q. Five?
MR. NORTH: Objection, form.
Q (BY MR. SCHUTTE) Are there five entities?
A. I'm unsure.
Q. Are there more than five entities?
A. I'm unsure.
Q. You don't know how many entities you've entered into nondisclosures with?
A. Like I said, I'm unsure.
Q. Have you -- do you have copies of the nondisclosures at your house?
A. That's part of the nondisclosures. Anything with the company is part of nondisclosures.
Q. Well, what's the company?
MR. NORTH: Objection,

form.
Q (BY MR. SCHUTTE) You can answer the question.
A. I said the companies.
Q. What's the companies? Anything with the companies is under a nondisclosure?
A. That's correct.
Q. What are the companies?
A. They're under nondisclosure.
Q. The name of the company is a part of the nondisclosure?
A. That's correct.
Q. All right.
MR. SCHUTTE: Let's take a break.
(Recess 10:30 a.m. to 10:43 a.m.)
Q (BY MR. SCHUTTE) Mr. Johnson, you were talking about your nondisclosure agreements.
A. That's correct.
Q. I want to make sure that I understand correctly. Is there a specific nondisclosure agreement with each entity that you're associated with?
A. That's correct.

you Exhibit 3 is an excerpt of a larger document that was produced in this lawsuit.
All right. So if you will look with me at Exhibit 3, do you see the heading "Confidentiality"? Do you see that heading?
A. I do.
Q. All right. Is that the nondisclosure agreement that you're referring to?
A. I don't even have the whole document, so I don't even know what this is.
Q. That wasn't my question. My question is: Is the confidential heading the nondisclosure that you're referring to?
A. This is half a document. I don't know what this is.
Q. Well, take a look at the confidential paragraph, please.
A. Okay.
Q. Look at it and let me know if that is the nondisclosure agreement you're citing to in this lawsuit.
A. This is half a document. I don't know what this is.
Q. I understand. I'm not asking you what the full document is. I'm asking you that

paragraph that's headed "Confidentiality," is that the nondisclosure agreement that you keep referring to in this lawsuit?
A. I have the same answer.
Q. Yes or no?
A. This is not the full document. I don't know what this is.
Q. All right. So do you think that if you had the full document, there would be another section called nondisclosure?
MR. NORTH: Objection, form.
A. This is not the full document, sir.
Q (BY MR. SCHUTTE) I understand. What I'm asking you is, the nondisclosure agreement that you have the entities, is it in fact a confidentiality agreement that you have?
A. You're asking me to opine on a document that is not full.
Q. No, my question now is broader than that. My question is: As you've testified here today that you have a nondisclosure agreement with each of the entities that you're associated with, is it in fact a confidentiality provision that you have that's with each entity and not --

A. I can't answer that question.
Q. -- a nondisclosure agreement?
A. I can't answer that question.
Q. You can't answer the question whether --
A. It's a half document.
Q. Turn Exhibit 3 over, please. Just turn it over. I'm not asking about Exhibit 3. I'm asking -- I said it's broader. The nondisclosure agreement that you keep citing to, do you have a freestanding or section within the agreement that says nondisclosure, or are you referring to a confidentiality provision that you have with each entity?
A. I don't recall.
Q. You just don't know?
A. I don't know.
MR. NORTH: Objection, form.
Q (BY MR. SCHUTTE) Have you looked -- when is the last time you looked at your nondisclosure agreement?
A. I don't recall.
Q. Was it in preparation for this lawsuit?

answer the question first and then
we --

MR. SCHUTTE: Then we can take a break.

MR. NORTH: Can we take a break after this question?

MR. SCHUTTE: We can take a break after the question.

A. Repeat it.

Q (BY MR. SCHUTTE) Do you have an ownership interest in Bridgelink Power Holdings LLC?

A. Define interest.

Q. Do you have a member interest in Bridgelink Power Holdings LLC?

A. I don't know how to answer that question correctly.

Q. That's yes or no.

A. I don't -- I don't know how to answer that. That's why I asked for a break.

Q. You don't know how to answer if you have a membership interest?

A. That's correct.

Q. Does Cole Johnson own a membership interest? Are you a member, Cole Johnson, of

Bridgelink Power Holdings LLC?
A. I don't believe I'll be able to answer that correctly without talking to my attorneys.
Q. No. I'm happy to take a break and you can talk to your attorneys, but I do need you to answer if the membership lists, all the members, if Cole Johnson's name is on there as a member of Bridgelink Power Holdings LLC.
MR. NORTH: You can answer.
A. I don't recall. We're set up -- our companies are set up in a way to where they flow down. So I don't recall who owns what and I don't recall.
Q (BY MR. SCHUTTE) Just so the record is clear, you do not know if Cole Johnson individually, you, own a membership interest in Bridgelink Power Holdings LLC?
A. I don't understand the law --
MR. NORTH: Objection, form.
Q (BY MR. SCHUTTE) You can answer that question.
A. I don't understand the law good

some point through the lawsuit.
Q (BY MR. SCHUTTE) Do you have an ownership interest in -- a membership interest or any type of ownership interest in Enhanced Midstream, LLX?
A. I'm going to have you back up and ask the question again.
Q. Sure.
Do you have an ownership interest in Enhanced Midstream, LLX?
A. I have a nondisclosure. I can't answer.
Q. Do you have -- just so that we're clear, Cole Johnson has a nondisclosure agreement with Enhanced Midstream, LLX?
A. I was clear. I have a nondisclosure. I can't opine on anything within the agreements.
Q. I need to know the parties to that nondisclosure agreement. Is it Enhanced Midstream, LLX?
A. I have a nondisclosure.
Q. You're just not going to answer the question?
A. That is the answer.
Q. That you can't answer?

A. That's the answer.
MR. NORTH: Objection, form.
Q (BY MR. SCHUTTE) How about Bighorn Investments & Properties LLC? Do you own it? Do you have --
A. I have nondisclosure --
Q. -- an ownership interest --
A. I have a nondisclosure with all these companies.
Q. On Exhibit 5?
A. No. I have all -- I have a nondisclosure with any companies that I'm associated with. I can't answer that.
Q. Are you associated with all the companies on Exhibit 5?
A. I have a nondisclosure.
Q. You have a nondisclosure with every entity that's listed on Exhibit 5?
A. I have a nondisclosure with every company that I've ever been associated with.
Q. And those are the ones listed on Exhibit 5?
MR. NORTH: Objection, form.

A. I have a nondisclosure with any company, any of them, that I've been associated with.

Q (BY MR. SCHUTTE) The -- we've already talked about Bridgelink Power Holdings LLC. The other entity at the top row is C&C Johnson Holdings LLC. Do you have an ownership in that entity?

A. I have a nondisclosure with all entities that I've ever been associated with.

Q. What about Johnson River Ranch LLC? Do you have an ownership --

A. I have a nondisclosure.

Q. I'll ask the question. You can answer.

MR. NORTH: Can I clarify something real quick. On this document, you're saying was produced by --

MR. SCHUTTE: You.

MR. NORTH: I'm just trying to note for sure the origin of it. It came from us?

MR. SCHUTTE: It came from y'all.

Q. What's that?
A. I have an NDA in place and if I was associated with them, I can't tell you.
Q. And if you were not associated with them, could you tell me?
A. I couldn't tell you.
Q. What does Johnson River Ranch LLC do?
A. Same answer.
Q. Are you associated with that entity?
A. Same answer.
Q. Well, on Bridgelink you're a limited. What do they do?
A. Same answer.
Q. Are you associated with that entity?
A. Same answer.
Q. What about Bridgelink Power LLC? What do they do?
A. Same answer.
THE REPORTER: I can't hear.
MR. SCHUTTE: Yeah. I think we're on the record.
Q. (BY MR. SCHUTTE) All right. Back to Bridgelink Power LLC. What do they do?
A. Same answer.
Q. Have any association with that

entity?
A. Same answer.
Q. What about Bridgelink Operating LLC? What do they do?
A. It's going to be the same answer throughout the whole day.
Q. Okay. What do they do?
A. Same answer.
Q. Are you associated that entity?
A. Same answer.
Q. What about Bridgelink Engineering LLC? What do they do?
A. Same answer.
Q. Are you associated with that company?
A. Same answer.
Q. What about Bighorn Construction and Reclamation LLC? What do they do?
A. Same answer.
Q. Are you associated with that entity?
A. Same answer.
Q. What about Bighorn Sand & Gravel LLC? What do they do?
A. Same answer.
Q. Are you associated with that company?
A. Same answer.

Q. See, you keeping adding if. I want to know can you answer?
A. That's my answer.
Q. If?
A. If I was, then I couldn't answer it.
Q. See, I can't leave it as if because then you're going to leave and then you're going to say, well, I'm not involved. I could have answered; you didn't ask me. So you keep saying if and I want to know are you. Are you involved with Bridgelink?
A. I said if I was.
Q. You either have a nondisclosure and you're not going to tell me or you are not involved with them and you can tell me.
A. It's going to be the same answer, sir.
Q. If. If you were involved --
A. Yes.
Q. -- you couldn't tell me?
A. That's correct.
MR. SCHUTTE: Objection, nonresponsive.
Q (BY MR. SCHUTTE) Are you involved with Bridgelink Power --

A. That's my answer.
Q. And is it your answer that the nondisclosure prevents you from answering my questions?
A. That's not what I said.
Q. Then why won't you answer my question?
A. I did answer your question.
Q. You're not answering my -- you're answering my question with your answer.
A. He keeps repeating.
Q. You can -- your lawyer can ask questions when I'm done. You can answer my question. Are you involved?
A. I did answer the question.
Q. You did not, respectfully, sir.
A. That's your opinion.
Q. The transcript shows you did not.
A. That's good.
Q. You either are involved or you're not involved?
A. That's fine.
Q. And you're saying if?
A. That's correct.
Q. I need to know, are you involved with

Bridgelink Investments, LLC?
THE WITNESS: Ma'am, these gentleman keep talking over here.
MR. RASNER: I don't think we're missing much.
THE WITNESS: That's fine.
MR. SCHUTTE: We'll just keep all the sidebar down.
Q (BY MR. SCHUTTE) And I just need to know, are you involved with Bridgelink Investments, LLC?
A. It's the same answer.
Q. And that is if?
A. If I was involved, I'm under NDA and I can't answer that question.
Q. And if you aren't involved, you're not under an NDA. Do you see where the if is a problem here? So I need to know if --
A. That's my answer.
Q. If you're involved?
A. That's my answer.
Q. You're not going to answer my question about are you involved?
A. No. That's my answer.
Q. Your going to answer your question,

if?
A. That's any answer.
MR. SCHUTTE: All right. Let's certify that question at the back.
Q (BY MR. SCHUTTE) What about Bridgelink Renewable Energy Investments LLC? Are you involved in that entity?
A. Same answer.
Q. If you're involved, you can't answer?
A. That's correct.
Q. And if you're involved, you have an NDA? Is that your answer?
A. Same answer.
Q. Okay. Bridgelink Commodities LLC, are you involved in that entity?
A. Same answer.
Q. If you're involved, you can't tell me because you might have an NDA?
A. No, not might. You added might.
Q. I'm asking you to answer my question. So that's wrong?
A. Same answer.
Q. If you're involved, you can't answer?
A. That's correct.

Q. But you won't tell me if you're involved?
A. That's correct.
Q. Well, Bridgelink Renewable Energy Investments LLC? All right?
A. Yeah.
Q. Bridgelink Renewable Energy Investments LLC?
A. Can you repeat the question?
Q. Yeah. It's the same question I've asked you for the last 40 minutes.
A. Yeah.
Q. Bridgelink Renewable Energy Investments LLC, are you involved in that entity?
A. If I was, I'm under an NDA and I can't answer that.
Q. So you're not going to tell me today if you are?
A. That's my answer.
Q. If you are? That's your answer.
A. My answer is what I just said.
Q. Bridgelink Development, LLC, what do they do?
A. I'm under an NDA. If I was involved,

I wouldn't be able to answer. That's going to be my answer all the way through, sir.
Q. I understand. If you were involved, you can't answer. And I'm going to follow up with, are you involved with Bridgelink Development, LLC?
A. Same answer.
Q. Intermountain Electric Service Inc., what do they do?
A. Same answer.
Q. Are you involved in that entity?
A. Same answer.
Q. What about Bridgelink Renewable Energy Development LLC?
A. Same answer.
Q. Are you involved in that entity?
A. Same answer.
Q. What do they do?
A. Same answer.
Q. What about Project Companies? Are you involved in that entity?
A. Can you ask it differently?
Q. I don't know. It's the box that your lawyer provided to us. It says Project Companies.

sending -- if they were sense this W-2 or any other W-2 you received in the last five years?
A. I don't recall.
Q. Do you use for your accounting firm -- is it the same accounting firm that is used for any of the entities that you're associated with?
A. Say that question again.
Q. So your personal accounting firm services, like income tax returns, is that the same firm that's used for the entities that you're associated with?
A. Yes.
Q. And what's the name of that firm that your entities are associated with?
A. I don't recall.
MR. PATEL: Asked and answered.
MR. SCHUTTE: I'm going to pass the witness for now. We're getting the judge on the phone for the nonresponsive answers and the evasive answers. If I get him on the phone, then we are going to come back and pick up questioning with

the questions that I've already asked today. I'm going to pass the witness to Cadence Bank now.

EXAMINATION

BY MR. JONES:

Q. Mr. Johnson, my name is Grant Jones. I'm an attorney for Cadence Bank.

You don't have any personal bank accounts; is that true?

A. That's correct.

Q. Did you ever an account with Wells Fargo?

A. I don't recall.

Q. You don't recall if you ever had a bank account with Wells Fargo?

A. That's correct.

Q. Did you ever have a bank account with JPMorgan Chase?

A. I did.

Q. How much was in that account?

A. I don't recall.

Q. When was the last time you operated that account?

A. It's been a couple years.

Q. Been a couple years.

take a break?

A. Anything to do with the companies, or if they were to do with the companies, would be under nondisclosure. That's my answer. I'm taking a break.

Q. So the companies are putting gas in your truck?

A. I'm taking a break.

MR. JONES: All right.

(Recess 2:36 p.m. to 2:54 p.m.)

Q (BY MR. JONES) All right, Cole. Let's back up a little bit. Let's talk about where you live.

A. Okay. I've talked about where I live. This is becoming harassment at this point in time. I've talked about it. I went over it. You guys are harassing -- you're pretty much harassing me now. It's been multiple times.

MR. SCHUTTE: Are you shutting down this deposition?

THE WITNESS: It's pretty much harassment at this point.

MR. SCHUTTE: I'm asking your lawyer.

Are you shutting down this

deposition.
MR. PATEL: Not at this time, but we'll continue.
MR. SCHUTTE: Ask the questions.
MR. JONES: Okay.
Q (BY MR. JONES) When did you move into your current residence?
A. I don't recall.
Q. Was it a year ago?
A. I don't recall.
Q. Ballpark it.
A. I don't recall.
Q. You don't recall at all?
A. I'm not here to ballpark it. I don't recall.
Q. How many acres do you live on?
A. I don't recall.
Q. You don't recall the acreage that you currently live on?
A. That's correct.
Q. Do you have any animals on your property?
A. If I did, it would be under a nondisclosure.

THE WITNESS: Oh, come on.

THE REPORTER: Wait. Make sure. Off the record, everybody?

(Simultaneous response.)

(Discussion off the record.)

(Recess 2:56 p.m. to 3:17 p.m.)

MR. PATEL: Look, at this point, a lot of repetitive questions. At this point we feel like it's harassment. It's unreasonably oppressive. The same line of questioning over and over and more or less. We're going to terminate the deposition here. We can go from there. We'll proceed accordingly.

MR. RASNER: So you're going to terminate it now or do you want to wait see what we ask?

THE WITNESS: No, terminate it now.

MR. PATEL: Terminate it now.

THE WITNESS: Thank you.

MR. SCHUTTE: On what

grounds?

MR. PATEL: Like I said, harassment --

MR. SCHUTTE: Harassment.

MR. PATEL: -- unreasonably oppressive, aggressive questioning, a lot of questions just repeatedly asked, but yes.

MR. SCHUTTE: You do know that under the Rules Civil of Procedure how long we have to take a deposition, right?

MR. PATEL: I understand. Seven hours.

MR. SCHUTTE: Seven hours. How much time have we taken, Ms. Court Reporter?

MR. PATEL: About two hours and ten minutes are on the record.

MR. SCHUTTE: So you're terminating this based on the questions that were asked?

MR. PATEL: Correct.

MR. SCHUTTE: Okay.

MR. PATEL: Oh, sorry. Incorrect.

MR. SCHUTTE: Oh, you're -

MR. PATEL: We're terminating it on the questions asked. They have been the same questions asked over and over, more or less. It's harassment. And that's it.

THE WITNESS: Shut it down.

MR. PATEL: Thank you.

MR. RASNER: One more question.

THE WITNESS: Shut it down.

MR. SCHUTTE: No. We're not going off the record yet.

MR. RASNER: We're not going off the record.

MR. SCHUTTE: No, we're not going off the record because we're not agreeing to shut it down. You can walk out if you would like.

Is Cord under the same

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CADENCE BANK F/K/A BANCORPSOUTH BANK AND CENTURY BANK *

VS. * NO. 4:23-CV-00609-BJ

BRIDGELINK ENGINEERING, LLC; COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, LLC; BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES LLC *

REPORTER'S CERTIFICATION
DEPOSITION OF COLE WAYNE JOHNSON
OCTOBER 30, 2024

I, GAIL SPURGEON, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the foregoing deposition of COLE WAYNE JOHNSON was reported by me stenographically at the time and place indicated, said witness having been placed under oath by me, and that the transcript is a true record of the testimony given by the witness;

I further certify that the signature of the deponent:

X was requested by the deponent or a party before the completion of the deposition and is to be returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

______ was not requested by the deponent or a party before the completion of the deposition;

I further certify that the amount of time used on the record:
KEVIN SCHUTTE 1:17
MARSHALL GRANT JONES 0:50

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Given under my hand this the 5th day of November, 2024.

GAIL SPURGEON
Texas CSR 1718
Expires: 11/30/24
Firm No. 571
Veritext Legal Solutions
300 Throckmorton Street
Suite 1600
Fort Worth, Texas 76102
817.336.3042

VIKESH PATEL

vpatel@kmd.law

November 5, 2024

RE: Cadence Bank, Et Al v. Bridgelink Engineering, Llc, Et Al

10/30/2024, Cole Wayne Johnson (#6991181)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at CS-NY@veritext.com

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions