# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CADENCE BANK f/k/a BANCORPSOUTH BANK and CENTURY BANK, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| BRIDGELINK ENGINEERING, LLC; COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, L.L.C.; BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES, LLC, | ) | Civil Action No 4:23-CV-00609-BJ |
| Defendants. | ) | |

*******************************************************

ORAL DEPOSITION OF

CORD H. JOHNSON

JUNE 2, 2026

*******************************************************

ORAL DEPOSITION OF CORD H. JOHNSON, produced as a witness at the instance of the Plaintiffs, was taken in the above-styled and -numbered cause on the 2nd day of June, 2026, from 10:08 a.m. to 5:05 p.m., before Karen Gonzalez, Commissioned Notary, in and for the State of Texas, reported by machine shorthand, from Tarrant County, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

A P P E A R A N C E S

FOR PLAINTIFFS:

Mr. Andrew Korn
ATTORNEY AT LAW
RECEIVER
4221 Avondale Ave
Dallas, Texas 75219
Telephone: (214) 521-8800
E-mail: Akorn@receiverandrewkorn.com

Mr. M. Grant Jones
Mr. Blake Rasner
HALEY & OLSON, P.C.
100 North Ritchie Road
Suite 200
Waco, Texas 76712
Telephone: (254) 776-3336
E-mail: Grant.jones@haleyolson.com
Brasner@haleyolson.com

FOR THE DEFENDANTS:

Mr. David Skeels
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street
Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0500
E-mail: Dskeels@whitakerchalk.com

was?
A. I believe how many times have I reviewed this?
Q. You weren't able to say an exact number. So I was asking -- I was trying to dial in on tying it to an occasion or a date that you would then remember why you were looking at it at that time?
A. Sure. I've reviewed it. How many times, I'm not sure.
Q. Okay, going back from the present, when was the last time you looked at the receivership order?
A. Besides when you just handed it to me. Or I would say, I can't probably -- I can't give you a good answer on that. I don't know.
Q. How many times have you been deposed?
A. I don't know that exact answer.
Q. More than six?
A. Potentially.
Q. I mean, you've been a defendant in several lawsuits, correct?
A. That's correct.
Q. Do you know how many judgments there are against you?
A. Generally.
Q. What's that number?
A. There's three or four for sure, could be more. I

don't know the exact number, I'm -- just going to say I'm trying to be, but I don't want to misstate anything. I'm trying to give you the best answer I -- I can.

Q. So, if I found more than twelve, does that surprised you, or is that in line with what you remember?

A. I don't know how many there are.

Q. Do you know whether or not you're solvent or insolvent?

A. Can you explain the question?

Q. Sure. What is your definition of the term insolvency?

MR. SKEELS: Objection, form.

THE WITNESS: Sorry, can you ask that a different way?

Q. (BY MR. KORN) Sure. Mr. Johnson, you've referred to yourself as the CEO, correct?

A. I have.

Q. As an executive, correct?

A. I have.

Q. As a chief executive manager, correct?

A. I believe so.

Q. So do you have an understanding of whether a person is solvent or insolvent? What goes into making that determination?

But that's for a business.
Q. For which business?
A. Red Leaf Investments.
Q. Let me -- let me ask it this way. At this point, I don't care whether or not you did it. Are you aware since October '22 or '25, of any person or entity making an application for credit, that used some of your personal information in the application?
MR. SKEELS: Objection, form.
Q. (BY MR. KORN) Because you keep making a distinction saying, you didn't do it.
A. Well, I'm --
MR. SKEELS: Objection -- objection, form.
THE WITNESS: Okay.
Q. (BY MR. KORN) You can answer the question.
A. Okay. There are -- there are two distinctions, 1, I didn't personally fill it out. If I did, and I've qualified that with you. Number 2, if you're talking about an entity, that also is not me. Those are another distinction. Red Leaf Investments is a business that I'm a manager of.
Q. I'm eventually going to get every credit application you've ever made.
A. I understand and --
Q. All right.

entities that are in the real estate business. Which entities were you referring to? So I can be more specific about what I'm asking?

MR. SKEELS: Objection, form.

THE WITNESS: I'm -- I'm trying to think of the best way to explain it. I'm not -- I have an investment company. I don't, but I'm a manager of an investment company that owns real estate assets. Those assets are owned in specific LLCs. Those specific LLCs are SPVs that own the -- own the property. I have several entities that own real estate. Almost every developer that I've ever met has it set up this way. I do not specifically know what your question is. And I'm -- and I don't know how to answer it. I'm trying to explain a little bit more.

Q. (BY MR. KORN) How many deeds of trusts have you signed?

A. I don't know.

Q. More than 20?

A. I don't know.

Q. You can't say whether it's more than 12?

A. I would be guessing. I've signed a few.

Q. Okay, did you sign the one that's right in front of you there as Exhibit 4?

A. Yes, sir.

original registration date is 11/14/2023. With the expiration date 10/31/2024.

And then Exhibit 12 shows the same vehicle, you can see the VIN numbers match. Being registered in January of 2025. So about three months after the registration expired in the name of Bighorn Investments and Property, there's a Raymond Modica in Bossier County, Louisiana, now registering the 2021 Ford F-150 King Ranch?

(Exhibits 11 and 12 marked.)

MR. SKEELS: Objection, form. Andrew, I'm sorry to interrupt. But it does not appear to be the same VIN number. The last two numbers are transposed. I have 1-8 and 8-1.

MR. KORN: 1-8, that one.

MR. SKEELS: Oh, I'm sorry. It carried onto the next line.

MR. KORN: Yes.

MR. SKEELS: I apologize. Gotcha.

Q. (BY MR. KORN) Do you know anything about this particular 2021, Ford F-150 King Lariat?

A. I do not.

Q. Do you recognize the name Raymond Modica?

A. No, sir.

Q. Do you have a theory, so I don't want you to

guess, but I don't think you necessarily have personal knowledge. A theory how this vehicle got out of the name of Bighorn Investment and Properties, and into the name of Raymond Modica?

A. No, sir, I do not. You know, we at one point had over 200 vehicles, so I don't know all the people, but I -- we have caught some people stealing and we've tried to collect or --

Q. Was there --

A. -- the only -- go ahead.

Q. Was there a registry that would -- would have kept up with the inventory? Some --

A. We used to have a -- well, on the lease they track their own. We had a lease for most of these vehicles. Most of those weren't owned vehicles, they were leased vehicles. There were some owned vehicles, I don't know if these were leased or owned. And --

Q. Okay. That makes sense. Got it.

Cottonmouth Solar LLC., is that an LLC that you own or worked for?

A. I -- I believe we disclosed, and I'm not trying to say that I already told you that. I'm just trying to say that I -- I believe that sounds familiar, but it was -- was it one that I own, I don't -- I'd have to double check.

Q. Well, it'll be -- you'd be more familiar with the non-judgments debtor entities than me.
A. Well, --
Q. But just to --
A. But there's probably 30 or 40 of them that need to be wound down. There are old SPVs that are just completely nothing. If it's on there then, yes, sir. And it's --
Q. Okay.
A. And it does need to be wound down. I have on the -- a list also that needs -- if we haven't provided it, we need to provide it. It shows you the list of assets that we plan to wind down.
Q. Is Enhanced Midstream still doing business?
A. I'm trying to answer that. I -- I'm not doing anything with Enhanced Midstream. Is it doing business, I'm not sure, I don't believe so. No -- I mean, as far as employees or anything like that, no. As far as there's assets there, yes.
Q. All right. What -- what assets are in Enhanced Midstream?
A. Pipelines and saltwater disposals.
Q. Is anybody doing anything with the assets?
A. I don't believe so.
Q. So are they just at risk of deteriorating?

they come due?
A. There are --
MR. SKEELS: Objection, form.
Go ahead and answer.
THE WITNESS: There are businesses that I -- that I'm a manager of that are insolvent and are -- and are struggling, or I would call it, I think, what do they label it, at risk. But, yes, there are businesses that are, I would call insolvent.
Q. (BY MR. KORN) What about you personally?
A. Personally, I don't know. I don't -- I guess, if you -- I mean, there's a $43 million judgment, if you ask me to write a check for it today, I could not. So based on that definition I would say, I can't pay that bill.
Q. Well, there's several judgments for millions of dollars, right?
A. Uh-huh.
Q. So even if this one went away -- is this the one keeping you from being solvent?
A. No, there's others, as you mentioned.
Q. Then on the -- is it the same answer on liabilities exceeding assets, with the -- with all the judgments against you? Do those add up -- add up to more than the fair market value of your assets?

let's say there's $100 million of judgements against you. So your liability is at $100 million.

A. Uh-huh.

Q. So you -- let's go through the fair market value of your assets, whatever they are: Interest, and LLCs, diamond rings, what -- whatever they are that's going to be over $100 million. If that's the case, maybe you could be solvent?

A. Sure.

Q. So, go ahead -- you can go ahead and describe the assets that may exceed your liabilities.

A. Well, again, I don't own them directly. But -- and I think there's an org chart that was distribute, that might be helpful to walk through and kind of can talk through my assets, my ownership, or the lack thereof.

But at a high level without an org chart in front of me, they -- we do have assets that are sold, that have receivables coming in. I say we, as a general term, because it's not me, I don't own it. But those are assets and could potentially be depending on the person or entity holding, or value over 100 million, easily, yeah.

So I would say, there's a lot of gray area in that. And I'm not trying to be vague, I'm just trying,

without an org chart or anything in front of me to point and demonstrate how that asset works. It's kind of like, and don't read into this, it's like Bitcoin, to me it's not worth that much, 'cause I don't know a lot about it. But to somebody else it is. Same with the assets. I do believe that we have the ability to pay off all judgments. Can I write a check for them, no. My value -- the assets that are valued, are they higher, in my opinion, yes.

Q. All right. Well, tell me how that happens. What -- where does -- what occurs, to make what worth more than $100 million?

A. Well, first, I think it's important to break down the difference between liquidity, and asset value. And then even net asset value, as it's reduced. I have assets, there are assets I'm -- I'm generally speaking 'cause I don't have the org chart in front of me. But just trying to give you the lay of the land.

We have development assets, that's what we've done for ten years, is developed, and built assets. Noble energy assets, oil and gas assets, those are not as valuable at the moment. But those assets are valuable and then when you put assets together and the reason -- the reason for the ambiguities, because people put a multiplier on companies, and assets.

Q. So, how -- how are you paid? Once a month, once a quarter. How is it determined that you're to be paid?
A. Monthly.
Q. And is there withholding on a monthly basis?
A. On my W-2 income, on my tax filing, is that what you're saying?
Q. On your -- you get a paycheck or a paystub? You get paid once a month, how is it paid? Paid by wire, how do you get your --
A. Yeah, so this is a good question. It's a -- it's a little bit of a tough scenario. Reason being is I have these judgments, we're aware of. Any account that I have is garnished. I get paid monthly, I use that money to pay in -- pay bills. And with that I pay the taxes on -- on the above, whatever that would be. For instance; if my bills are $15,000, these are round numbers, these are not -- these are just for explanation purposes only. I pay the taxes above the 15,000, on an annual basis.
Now, this year would be the first year I've had to do it that way. I also have the 1099, that pays me a supplemental income. So those two ways. I do not have a personal bank account, so it is a very weird way to have to do it. I don't know. And I'd love for some advice, if you can give it, on how I could go about

A. I can't control what anybody puts on an invoice. I'm simply telling you that I -- I need to clarify B. And then I think, right, wrong or indifferent, I think my attorneys are paid to protect the entities that are valuable.

Q. Exclusively?

A. I mean, what is there to protect against me?

Q. Why -- why are they even here to -- defending you? They're not here today on behalf of any corporation or any company. You're here individually.

A. Okay. So what's the question?

Q. Question is; then why have them here today? If they're only representing the interest of the company?

A. I don't know how the legal system works, I guess.

Q. It's not for a lack of practice though, is it?

A. Well, you said --

MR. SKEELS: Objection, argumentative.

Q. (BY MR. KORN) At what point are you going to understand it? After your 17th judgment?

MR. SKEELS: Objection, argumentative.

THE WITNESS: Is that a question?

Q. (BY MR. KORN) Yes.

A. I don't know when I'll understand it.

Q. On Page 2, you see (c) says; "Copies of supporting documentary back-up." And then you get an

Q. Okay. So your testimony is the $538,473.08 in expenses there, for the month of December. There's been a document produced that shows what those expenses are?
A. Yes, sir.
Q. Is that the -- is that answer the same for the New Standard Living, LLC, $50,000 in expenses, in the sentence right underneath it?
A. Yes, sir.
Q. All right. So would you agree with me, it might be an easy fix to just reference the Bates-label numbers, and let somebody go find it?
A. Yeah, absolutely. But at the time, I don't [sic] know the future Bates' numbers -- Bates-stamped numbers.
Q. This would've already happened. December, right? December -- you're talking about in January expenses that happened in December, so you'd have a full month of QuickBooks by the 7th of the month?
A. Yeah. So I guess, what I'm saying is, when we fill these out and turn these in, I then go and try to support that. And I don't know if there's a way to Bates-stamp them and -- I don't know the exact processes but I -- I know, that we --
Q. But would you agree with me on this, if you know -- if you have a number like 538,473.08, you're looking at a document that probably does have each

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CADENCE BANK f/k/a BANCORPSOUTH BANK and CENTURY BANK, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| BRIDGELINK ENGINEERING, LLC; COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, L.L.C.; BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES, LLC, | ) | Civil Action No 4:23-CV-00609-BJ |
| Defendants. | ) | |

REPORTER'S CERTIFICATION
ORAL DEPOSITION OF
CORD H. JOHNSON
JUNE 2, 2026

I, Karen Gonzalez, a Notary in and for the State of Texas, hereby certify to the following:

That the witness, CORD H. JOHNSON, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That a copy of the certificate was served on all parties and/or the witness shown herein on ____________________.

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

X was requested by the deponent or a party before the completion of the deposition and that signature is to be before any notary public and returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

Was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 29th day of June, 2026.

/s/ Karen Gonzalez

__________________________

KAREN GONZALEZ, CSR
Notary in and for the
State of Texas
Notary: 132644762
My Commission Expires:
October 9, 2028
Associated Court Reporters
Firm Registration No. 29
425 Austin Avenue, Suite 1206
Waco, TX 76701
254-753-3330
800-340-5881