Robert A. Simon
State Bar No. 18390000
**WHITAKER CHALK SWINDLE**
**& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**ATTORNEYS FOR ALLEGED DEBTORS,**
**CORD HENRY JOHNSON AND COLE WAYNE JOHNSON**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **CORD HENRY JOHNSON AND** | § | **Case No. 26-43995-MXM-7** |
| **COLE WAYNE JOHNSON** | § | **Case No. 26-43993-MXM-7** |
| | § | **Chapter 7** |
| **Alleged Debtors.** | § | |

**MOVANTS' REPLY TO PETITIONING CREDITORS'**
**RESPONSE TO THE MOTION TO DISMISS**
**(Pertains to Docket No. 29)**

TO THE HONORABLE MARK X. MULLIN
UNITED STATES BANKRUPTCY JUDGE:

Cord Henry Johnson ("Cord Johnson") and Cole Wayne Johnson ("Cole Johnson") (collectively the "Movants"), the alleged debtors in the above-referenced involuntary bankruptcy proceedings, files this Reply (the "Reply") to the Response (the "Response") to Alleged Debtor's Motion to Dismiss filed by Century Bank ("Century"), Huntington National Bank f/k/a Cadence Bank ("Cadence"), Spin Capital, LLC ("Spin Capital"), and Hunt Guillot & Associates (collectively the "Petitioning Creditors") (the "Response"). In support, Movants respectfully represents the following:

## I.
## REPLY

### A. AN INVOLUNTARY PETITION CAN BE DISMISSED FOR BAD FAITH

1. Petitioning Creditors argue that even if they filed the involuntary petitions in bad faith, bad faith alone does not warrant dismissal of an involuntary petition if the other required elements of

11 U.S.C. § 303 are met. To support this proposition, Petitioning Creditors cite to a line of cases from Louisiana and Mississippi. These cases say what they say, and Movants do not dispute that. However, this proposition simply is not the law in Texas, nor is it consistent with how the Fifth Circuit has generally ruled. Texas bankruptcy courts hold that an involuntary petition may be dismissed if the petition was filed in bad faith even if all other factors are met. For example, the Bankruptcy Court for the Western District has previously stated "even where the statutory criteria for commencing an involuntary suit are satisfied and where the putative debtor is not paying its debts as they become due, bad faith on the part of petitioning creditors provides a basis for dismissing an involuntary bankruptcy petition." *In re Bates*, 545 B.R. 183, 193 (Bankr. W.D. Tex. 2016). Other jurisdictions have similarly ruled that it is "well-established" that the Court may dismiss an involuntary bankruptcy case that was filed in bad faith. *In re Abir*, Case No. 07-12877 (ALG), 2007 Bankr. LEXIS 4362, 2007 WL 4556909, at *4 (Bankr. S.D.N.Y. Dec. 20, 2007).

**2.** Moreover, Petitioning Creditors' argument simply runs contrary to the basic principles underlying our judicial system. The Petitioning Creditors essentially argue that even if they are acting in bad faith and are coming to this Court with unclean hands, they should be rewarded. That is a subversion of justice and should not be tolerated. Courts would never tolerate such behavior if a debtor was acting in bad faith and would dismiss the debtor's case in such a scenario. *In re Privada, Inc.* 2008 Bankr. LEXIS 2717, at * 18 (Bankr. W. D. Tex. 2008) ("Use of the bankruptcy process as a litigation tactic is abuse of the reorganization process constituting a lack of good faith in filing which warrants dismissal."). Good faith is an essential requirement for any request for relief from a bankruptcy court. The Fifth Circuit, and, indeed, even the Supreme Court, have made similar rulings. The Fifth Circuit has stated unequivocally that "the Supreme Court has held that bad faith can be the basis of a decision under the Code even if the text does not

require its consideration." *Krueger v. Torres (In re Krueger),* 812 F.3d 365, 373 (5th Cir. 2016 (citing *Marram*, 549 U.S. at 373-75). The Fifth Circuit went on to explain that "it is incorrect to infer that Congress's silence on good faith in chapter 7 is a license for bad faith debtors to misuse that chapter to their ends." *Id.* While that court was applying this principle to Chapter 7 debtors, the same principles apply to creditors acting in bad faith in the context of 11 U.S.C § 303. The Court should never reward bad faith conduct, and the cases cited by the Petitioning Creditors are inapposite in view of contrary authority from Texas bankruptcy courts, the Fifth Circuit, and the Supreme Court. Good faith is always required from all litigants in a bankruptcy court, there is no special exception for petitioning creditors in an involuntary petition, which is, itself, a draconian and extraordinary procedure that puts the debtor at great risk of serious economic harm.

**B. THE CENTURY AND CADENCE JUDGMENT IS NOT DIVISBLE**

3. Petitioning Creditors first argue that Century and Cadence should be treated as two separate creditors for purposes of the Involuntary Petition. Petitioning Creditors do not dispute that there is only one judgment but instead ask the Court to look behind the indivisible judgment to the record in the Federal District court case to determine how much each entity is entitled to. The bank's argument in this regard obviously fails and fails for the exact same reason this argument failed in *Edwards*, the case Petitioning Creditors rely on for this proposition. *Edwards* does state that a Court can look behind the final judgment to the trial record to determine if a unitary judgment is "easily divisible." *In re Edwards*, 501 B.R. 666, 679 (Bankr. N.D. Tex. 2013). In *Edwards*, the Court found that the judgment was not divisible because the evidence attached by the petitioning creditors in that case was not clearly part of the trial record. Specifically, the court stated that "there is no evidence in the trial record that the [evidence] was part of the summary judgment evidence presented to the Probate Court in connection with the [Petitioning Creditors'] summary judgment motion." *Id.*

4. Petitioning Creditors here have the same problem. Petitioning Creditors have merely attached the loan documents that made up the business transaction they had with Movants. They have not shown that those documents were part of the trial court record. Without such evidence, the documents serve no purpose and can't be relied on by this Court to determine how much of the single unitary judgment Cadence and Century respectively own.

5. Moreover, *Edwards* is not the only authority on this issue. Other jurisdictions considering similar facts have found that it is inappropriate to look beyond the plain language of a judgment, holding that a judgment was not readily divisible when "separateness of any individual claims was not maintained and reflected in the final judgment, such that the judgment can be divided among its holders". *See, e.g.*, *Huszti v. Huszti,* 451 B.R. 717, 721 (E.D. Mich. 2011); *see also In re Priddis*, 2022 U.S. Dist. LEXIS 37832, at *12 (Bankr. Ariz. 2022) (holding that a judgment was not readily divisible when there "was nothing from the judgment that could be used to determine the amount owed to each petitioning creditor."). Consequently, the Court can consider this alternative standard and simply look to the plain language of the judgment, which clearly awards only one unitary judgment to the two banks. It would be inappropriate for this Court to act as an appellate court and give the judgment a different meaning than its plain language.

6. The banks similarly try to downplay their own lawsuit against each other. Century accuses Cadence of **committing fraud** in relation to this exact business transaction that gave rise to the debt Movants owe to the banks. If Century's allegations are true, it is unclear why Cadence would be entitled to receive anything. There is a very real dispute between the banks regarding who should receive the money related to their single unitary judgment, and they are only putting up a united front for the purposes of trying to force through a bad faith involuntary petition. Perhaps the banks should

sort out their own lawsuit first to determine how much is owed to each bank, then return to this Court to file a good faith petition once the amounts owed to each bank have been properly determined.

**C. THE BASIS OF HGA'S JUDGMENT IS A CLAIM IT DOES NOT OWN**

7. HGA does not qualify as a legitimate creditor because it asserts a claim it clearly does not own. Petitioning Creditors first argue that HGA has a judgment, and that judgments generally are not subject to bona fide disputes. While that is often true, there are exceptions. The entry of a state court judgment does not make a claim "undisputed" if there are other reasons to question the validity, enforceability, or accuracy of the judgment. *In re Marbach Associates, LLC*, 2025 Bankr. LEXIS 3366 at *12 (Bankr. W.D. Tex. Dec. 30, 2025). Here, there is reason to question the validity of the judgment because the claim asserted is not owned by HGA. The claim is based upon the allegation that Cord and Cole Johnson are the alter egos of Bighorn Construction & Reclamation, LLC ("BCR"). Under venerable Fifth Circuit case law, that type of claim plainly belongs to Marilyn Garner in her capacity as the Chapter 7 Trustee for BCR. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1154 (5th Cir. 1987).

8. Petitioning Creditors next argue that because Bighorn Construction & Reclamation, LLC ("BCR") did not initially list this claim as an estate asset on its schedules, Movants do not truly believe the BCR estate owns the claim. The response to this is simple. First, BCR has listed HGA's supposed claim on its schedules, and BCR did so once it found out HGA had asserted this claim. BCR would have done so earlier if HGA had done what a normal good faith creditor would have done when asserting a claim that would impact the bankruptcy estate of a debtor. But HGA did *not* act as a good faith creditor. For example, HGA did not file a motion for relief from the automatic stay. HGA did not inform Ms. Garner, the BCR Trustee, about its actions. HGA did not inform the bankruptcy

counsel of BCR. Instead, HGA took a stealth default judgment,[1] which states that Cord Johnson and Cole Johnson are liable for all the debts of BCR as its alter ego due to their control of BCR. HGA and the other Petitioning Creditors now assert in bad faith that BCR's failure to list these assets on its original schedules is proof that HGA's ownership of the claim is legitimate. The reason HGA's claim was not originally listed is simple: BCR did not and does not believe Movants are its alter ego. If it was aware of HGA's allegations, it would have listed the claim on its schedules and valued it at zero dollars.[2] Now that BCR knows about this matter, it has corrected the issue.

| | | | | |
|---|---|---|---|---|
| 64. | **Other intangibles, or intellectual property**<br>**Own company name - Bighorn Construction and Reclamation LLC** | **$0.00** | | **$0.00** |
| | **Offer Made to Trustee - Alter Ego Claim against Cord Johson and Cole Johnson as Control Persons** | **$20,000.00** | | **$20,000.00** |

*See* Exhibit 1, Amended BCR Bankruptcy Schedules

9. Moreover, the Court should be aware that the BCR Trustee agrees that HGA does not own the claim. She has stated in writing that the BCR estate owns the claim, and she acknowledges that BCR is **actively trying to sell the judgment HGA claims it owns.**

[1] Stealth in the sense the BCR did not notify the Chapter 7, BCR's bankruptcy counsel, or BCR's creditors of its intent to usurp the alter ego claim in a Louisiana State Court.
[2] The alter ego claim is valued at $20,000 because Cord and Cole Johnson have offered Ms. Garner $20,000 to settle the claim. Negotiations are ongoing.

**From:** Marilyn Garner <mgarner@marilyndgarner.net>
**Sent:** Thursday, October 15, 2026 5:17 PM
**To:** Robert A. Simon <RSimon@whitakerchalk.com>; Alexandra Jennings <ajennings@marilyndgarner.com>
**Subject:** Big Horn

Robert:

Your clients have offered $20,000 to purchase the Estate's alter ego claims. The claim cannot be settled for that amount. However, I would accept $50,000.00 for the claim. It will be necessary for me to file a motion seeking approval of the sale under Section 363 of the Bankruptcy Code and/or as a settlement agreement pursuant to Bankruptcy Rule 9019. Please advise after you have discussed this matter with your clients.

Law Office of Marilyn D. Garner
2001 East Lamar Blvd., Suite 200
Arlington, Texas 76006
(817) 505-1499
(817) 549-7200 (FAX)

*See* Exhibit 2, Sale Offer from the BCR Trustee, Marilyn Garner.

10. Under well-established bankruptcy law, alter ego claims are owned by the estate. The legal theory that alter ego claims against the control persons of a debtor belong to the bankruptcy estate has been well settled law in the Fifth Circuit for nearly 40 years. As explained by the Fifth Circuit in *S.I. Acquisitions*, which applied the automatic stay against a state law alter ego suit against a bankrupt debtor's owners:

> [N]othing in Texas law prohibits a corporation from asserting on its own an action based on alter ego and that in fact the underlying policy of the remedy supports this conclusion.
>
> We, therefore, conclude that [creditor's] alter ego action is a right of action belonging to [the debtor] and, as such, is "property of the estate" within the meaning of section 541(a)(1). Accordingly, the automatic stay of section 362(a)(3) applies to [creditor's] state action.

*In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1154 (5th Cir. 1987).

11. There is, at minimum, a colorable argument based on *S.I Acquisition* that HGA obtained a judgment based on a claim that belongs to the bankruptcy estate, not HGA. In such a scenario, HGA always had the burden to seek relief from the automatic stay before suing on the alter ego claim. It failed to do so. *Brown v. Chesnut (In re Chesnut)* clearly addresses this issue. The Fifth Circuit stated in relevant part in that case:

> For the assertion of creditors' rights, these provisions suggest a preference for adjudication rather than seizure. If a creditor wishes to seize property for lack of adequate protection, § 362(d)(1), or for lack of equity, § 362(d)(2), he cannot do so first and thereby force the debtor to vindicate his rights after the seizure. Instead, he must first seek relief from the bankruptcy court. **Where seized property is arguable property, it is no answer for the creditor to defend the foreclosure by claiming that the property was not properly covered by the stay.** We discern no principle, and Brown offers none, for why the "for cause" clause in § 362(d)(1) should be treated differently from the other § 362 grounds for relief.
>
> **Finally, a retroactive classification of the property to shape the scope of the stay would encourage creditor abuse. Knowing a debtor is in a difficult pecuniary condition and may not be able to vindicate his rights in a later adversary proceeding, a creditor could simply seize arguable property without fear of later judicial retribution**. Or the creditor could gamble that a court would accept potential legal arguments long after foreclosure (as did the district court here), when the harm may be more difficult to remedy. Given that in some instances arguable property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his wrongfully seized assets.

12. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 304 (5th Cir. 2005) (emphasis added). *Chesnut* is dispositive of this issue. If there was even a colorable argument that the alter ego claim belonged to the BCR estate, and indeed there was a strong argument, the automatic stay applied, and HGA violated the automatic stay by not filing a motion for relief from the stay before asserting the claims. HGA is acting in bad faith by ignoring clearly relevant case law on this issue and by continuing to claim it as an "undisputed" creditor. Ultimately, Movants agrees with the Petitioning Creditors' assertion that the Court "need not resolve whether the underlying claim was estate-owned or particular to HGA." This is correct; the Court merely needs to acknowledge that there is a good faith dispute regarding ownership of the HGA's alleged claim to disqualify HGA as a petitioning creditor, which there clearly is here. *In re Green Hills Dev. Co., LLC,* 445 B.R. 647, 658 (Bankr. S.D. Miss. 2011). (the court's aim is to "ascertain whether a dispute that is bona fide exists … not to actually resolve the dispute.").

### D. PETITIONING CREDITORS HAVE NO EXPLANATION FOR SPIN CAPITAL'S BEHAVIOR

13. Spin Capital overstated how much it is owed, and Petitioning Creditors have no real explanation, only theories. Petitioning Creditors state that discrepancy may be simply interest but provide nothing to support that assertion. Cord Johnson does not know why the number is wrong, but it is not his burden to show why it is wrong. That burden lies with the Petitioning Creditors. The Petitioning Creditors provide no evidence or real explanation of why there is an approximately $5,000 difference, and it is their burden to do so. *Liberty Tool v. Vortex Fishing Sys. (in re Vortex Fishing Sys.)* 277 F.3d 1057, 1064 (9th Cir. 2001) ("the burden is on the petitioning creditors to show that no bona fide dispute exists."). Petitioning Creditors are attempting to improperly shift the burden of explaining the discrepancy in Spin Capital's claim to Movants. It is Petitioning Creditors' burden to provide evidence on this issue, and they have failed to do so. Consequently, there is a bona fide dispute as to the amount of Spin Capital's claim and it does not qualify as an undisputed petitioning creditor.

14. Petitioning Creditors acknowledge that a non-attorney signed the Involuntary Petitions on behalf of Spin Capital, but state that they should be given a chance to cure this issue. This position is confusing, as Petitioning Creditors previously represented that John Leininger, counsel for Century, represented Spin Capital. Josh Lubin, the owner of Spin Capital and the person who signed the Involuntary Petitions for Spin Capital, was shocked to learn that John Leininger was claiming to represent Spin Capital.

**From:** Josh Lubin <josh@tetonfunding.com>
**Sent:** Friday, October 2, 2026 9:40 PM
**To:** David Skeels <DSkeels@whitakerchalk.com>; Robert A. Simon <RSimon@whitakerchalk.com>
**Subject:** Re: Spin Capital - In re Cole Wayne Johnson (No. 26-43993) and In re Cord Henry Johnson (No. 26-43995) - request for a call

John doesn't represent spin. He just called me on my cell and I said ill join if it can potentially recover money though told him I don't want to be busy with it. Is he pretending to be representing Spin? No right?

---

**From:** David Skeels <DSkeels@whitakerchalk.com>
**Date:** Friday, October 2, 2026 at 10:32 PM
**To:** Josh Lubin <josh@tetonfunding.com>, "Robert A. Simon" <RSimon@whitakerchalk.com>
**Subject:** Re: Spin Capital - In re Cole Wayne Johnson (No. 26-43993) and In re Cord Henry Johnson (No. 26-43995) - request for a call

To clarify ... has Spin Capital been represented by counsel at any point during these BR matters?

Sent via the Samsung Galaxy S26 Ultra, an AT&T 5G smartphone
Get Outlook for Android

*See* Exhibit 3, email communication from Josh Lubin of Spin Capital

15. Regardless of who really represents Spin Capital, which is currently unclear, Movants realize the lack of an attorney representing Spin Capital is a fixable problem, though it still has not been fixed.[3] Movants highlighted this issue to demonstrate the slipshod manner in which the Involuntary Petitions were filed. One of the requirements of an involuntary petition is that the Petitioning Creditors were supposed to conduct a reasonable inquiry into the facts and the law prior to filing the [involuntary] petition." *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993). Clearly, no inquiry occurred as to whether a limited liability company can represent itself in bankruptcy court, even though the well-known answer to that question is an unequivocal "no." Furthermore, Mr. Lubin's electronic signature is invalid, since only attorneys can have an electronic signature. The failure of Spin Capital and the other Petitioning Creditors to conduct this basic due diligence demonstrates bad faith at the time of filing and is not something that can be retroactively fixed.

[3] The Involuntary Petitions still bear only the electronic signature of Josh Lubin, who is not eligible to sign for a limited liability company, and has no electronic signature, as he is not an attorney. To this day, Mr. Leininger has not made a formal appearance on behalf of Spin Capital nor filed the requisite corporate disclosure statement.

## E. MOVANTS ARE PAYING THEIR DEBTS AS THEY COME DUE

16. Petitioning Creditors next argue that Movants are not paying their debts as they come due. Petitioning Creditors provide no evidence of this, and merely state that Movants' own exhibits show they are not paying their debts, because they admit they have unpaid debts from past ventures and cannot pay every debt in full immediately. Again, Petitioning Creditors are improperly attempting to shift the burden of proof onto the Movants. The Petitioning Creditors bear the burden to show the Movants are not paying their debts as they come due, not the other way around. *Soc'y of Lloyd's v. Harmsen (In re Harmsen)*, 320 B.R. 188, 197 (10th Cir. BAP 2005) ("The petitioning creditor has the burden of demonstrating that the debtor is not generally paying his debts as they become due"). Petitioning Creditors have presented no evidence on this point, other than acknowledging that Movants owe money to various entities. The Petitioning Creditors provide no evidence of what Movants are or are not paying beyond Movants' own exhibits. The fact that Movants owe money to various entities is irrelevant if Movants are paying those debts down. Presently, Movants are actively servicing at least $20,000,000 in debt obligations. Moreover, Movants are actively pursuing a plan to settle with all of their creditors through the state court receiver. *In re Marciano*, 446 B.R. 407, 421 (Cent. Bank. Cal. 2010) ("An alleged debtor's ability or plan to pay creditors is also important" to determining whether a debtor is paying his debts as they come due). Movants have already offered $10,000,000 and offered to pledge valuable collateral to get that plan off the ground.

17. Proof of a general failure to pay simply requires more than what Petitioning Creditors have shown. Proof of a general failure to pay:

> requires not only general information about the debtor's cash disbursements, but also about the due dates of its obligations, whether the debtor's nonpayment of a past due obligation is the result of an inability or an unwillingness to pay, and, if the latter, whether the debtor's dispute involves a substantial issue of fact or law."

*In re Green Hills Dev. Co., LLC,* 445 B.R. 647, 660-61(Bankr. S.D. Miss. 2011). Petitioning Creditors have shown none of this. They have only shown that their particular debts are not being actively paid and argue that the Debts Movants are paying are not enough in their opinion, which is insufficient under the standard. The Petitioning Creditors have not made any showing regarding any other fact.

18. The statutory language of Section 303 is written in the present tense, not the past tense. Cord and Cole Johnson owe money to the Petitioning Creditors, other than HGA, which is owed nothing, due to their guaranties of the BCR's obligations. Those are old debts, which "came due" four years ago, when BCR failed. For purposes of Section 303, the issue of whether Cord and Cole Johnson are "generally paying [their] debts as they come due, is a present tense inquiry, rather than a past tense inquiry. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (U.S. 1989) (when the "statute's language is plain, the sole function of the courts is to enforce it according to its terms."). They are indeed paying current debts as they come due, which is consistent with the statutory language. Cole and Cord Johnson are working to pay the old debts from past failed business ventures through the State Court Receiver, Craig Noack. They offered to pay $10,000,000 over a period of time to do so through the State Court Receivership. That offer shows a commitment to address past debts, while continuing to pay current debts as they come due. The Petitioning Creditors do not satisfy the statutory requirements for entry of an order for relief, even assuming *arguendo* they meet the requirement of three creditors with liquidated claims undisputed as to liability and amount (they do not).

**F. ABSTENTION IS WARRANTED**

19. Petitioning Creditors' primary argument regarding abstention is that attempting to reach a settlement through the state court receiver, Craig Noack, is not feasible. Petitioning Creditors

point to a variety of facts they claim prove this, such as the fact that the purpose of the receivership is to sell property to pay Amarillo National Bank, and that he is only a turnover receiver. While these facts are true as far as they go, they prove very little. Nothing prevents Craig Noack from acting as an intermediary to facilitate a settlement globally with all creditors, including the Petitioning Creditors. Nothing prevents Mr. Noack from recovering assets from Cole and Cord Johnson, under the protection of the Receivership, and then distributing those proceeds pro rata to creditors. The real issue the Petitioning Creditors have with a global settlement is that they are not interested in a financially feasible settlement, and they have embraced a fairy tale, devoid of any supporting evidence whatsoever, that the Movants are hiding assets that could pay their debts in full. The Petitioning Creditors' apparent refusal to participate in a reasonable global settlement discussion simply does not equate to the State Court Receiver being a hopeless alternative. Rather, it speaks to their strained relationship with reality.

20. Moreover, Petitioning Creditors claim that the State Court Receivership will be a waste of time, because the separate federal court receivership was only able to recover $15,000.00.[4] This is rewriting history. As the Movants laid out in their respective *Motions to Set Bond* [Docket Nos. 19 and 20], those federal receivers failed because of the actions of Cadence and Century. This was made apparent by the various receivers' filings when they quit, due to Cadence and Century's intransigence. As an illustration of Cadence and Century's obstinance, the first set of receivers describe the banks' actions as follows:

> The Banks [Cadence and Century] chose the Former Receivers for their forensic accounting expertise long before asking the Court to appoint them as independent fiduciaries. But once they were appointed, the Banks challenged their judgment at every turn. And the Banks insisted on unrealistic results on an impossible schedule. The Bank's own obstinance caused distraction and additional expense.

---

[4] There was one federal court receivership. Cadence and Century quickly burned through three (3) receivers before the U.S. District Court had seen enough pointless controversy and name-calling and cancelled the melodrama mid-season.

*See* Exhibit 4 at pg. 2.

The second receiver, Andrew Korn, was more blunt in his statements to the banks:

> **From:** Andrew Korn
> **To:** "christian.george@akerman.com"
> **Cc:** grant.jones@haleyolson.com; michael.napoli@akerman.com; teresa.barrera@akerman.com; Mindy.Langston@huntington.com; david.a.peura@huntington.com; susan.scott@akerman.com; chuckpignuolo@gmail.com; Dave.Hermann@huntington.com; John C. Leininger; Kevin Schutte
> **Subject:** The "Case": No. 4:23-cv-609-BJ; Cadence Bank f/k/a BancorpSouth Bank and Century Bank v. Bridgelink Engineering, LLC, Cord Henry Johnson, Cole Wayne Johnson, et al. (USDC N.D. Tex.) (Fort Worth Division)
> **Date:** Friday, June 26, 2026 9:00:29 PM
>
> You called at 5:40 p.m. today. I answered. It was "easy" to reach me.
>
> I ended the phone call immediately after you said: "*Why are you being such a dick in your emails?*"
>
> I will not tolerate such churlishness and profanity while serving as a representative of the Court. *In re Coeptis Equity Fund LLC*, 2024 U.S.

*See* Exhibit 5 at pg. 39 of 72.

*See also* Exhibit 5 at pg. 51 or 72 (explaining that the Johnsons and their counsel "never called me a dick [and] never raised their voices to me. As tense as the Johnsons must have felt about things they attributed to me …, the Johnsons have been civil").

21. The federal receiverships failed because of Cadence's and Century's actions, not because Cole and Cord Johnson would not cooperate, nor because receiverships cannot work. State court or federal court receiverships can be excellent and relatively inexpensive vehicles to negotiate settlement, marshal assets, adjust claims, and pay creditors. To claim that the state court receivership will be ineffective because of the failure of the prior federal court receivership is disingenuous and ignores the leading role that Cadence and Century played in causing it to fail.

22. Finally, Petitioning Creditors claim that "there is a substantial concern that [Movants] are concealing assets" that support independent investigation and administration under the bankruptcy

code. *See* the Response at ¶ 54. This statement is again an attempt to rewrite history. Cadence, Century, and the Receivers, both state and federal, have conducted an immense amount of post-judgment discovery to try to locate any "hidden assets." They have not identified or located any, because there aren't any. Movants have each been deposed; Cord Johnson sat for two separate depositions. Movants have produced more than 10,000 pages of documents and have disclosed their entities and assets in detailed declarations and in monthly reports filed in the district court. Despite all of that, Petitioning Creditors make no specific allegations of what Movants fraudulently concealed, because that never occurred. Years of post-judgment discovery support that conclusion. The Movants' answers to Cadence's and Century's questions are not going to change. If fraudulent concealment had occurred, it would have been uncovered by the one of the three separate receiverships (state and federal) or by Cadence and Century during their extensive post judgment discovery. To argue that there is "substantial concern" that assets are being concealed is simply unsubstantiated and unsupported attorney argument and a total fabrication in light of the actual history of this matter. There is no evidence of (and therefore no legitimate concern about) any hidden assets. Petitioning Creditors' position on this issue is another indicator of their bad faith. Petitioning Creditors are desperately hoping to find a smoking gun after years of searching for one in vain. That smoking gun does not exist, and there is no fact-based concern the Movants are concealing assets.

## II.
## REQUESTED RELIEF

WHEREFORE, Cord and Cole Johnson request that the Court grant this Motion and enter an Order as follow:

1. Granting the Motion, as filed;
2. Granting Cord and Cole Johnson such other and further relief as may be just and proper.

November 9, 2026

Respectfully submitted,

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**

By: /s/ Robert A. Simon
Robert A. Simon
Texas Bar No. 18390000
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
rsimon@whitakerchalk.com
**ATTORNEYS FOR ALLEGED DEBTORS,
CORD HENRY JOHNSON AND
COLE WAYNE JOHNSON**

## CERTIFICATE OF SERVICE

I hereby certify on this 9th day of November 2026 I served a true and correct copy of the foregoing Reply upon all parties registered to receive service via this Court's ECF notification system.

*/s/ Robert A. Simon*
Robert A. Simon