Robert A. Simon
State Bar No. 18390000
**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**ATTORNEYS FOR ALLEGED DEBTORS,
CORD HENRY JOHNSON AND COLE WAYNE JOHNSON**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **COLE WAYNE JOHNSON** | § | **Case No. 26-43993-MXM-7** |
| **CORD HENRY JOHNSON AND** | § | **Case No. 26-43995-MXM-7** |
| | § | **Chapter 7** |
| **Alleged Debtors.** | § | |

**MOVANTS' REPLY TO PETITIONING CREDITORS' OBJECTION TO THE MOTION TO SET BOND
(Pertains to Docket No. 32)**

TO THE HONORABLE MARK X. MULLIN
UNITED STATES BANKRUPTCY JUDGE:

Cord Henry Johnson ("Cord Johnson") and Cole Wayne Johnson ("Cole Johnson") (collectively the "Movants"), the alleged debtors in the above-referenced involuntary bankruptcy proceedings, file this Reply (the "Reply") to the Objection (the "Objection") to Alleged Debtors' Motion to Set Bond filed by Century Bank ("Century"), Huntington National Bank f/k/a Cadence Bank ("Cadence"), Spin Capital, LLC ("Spin Capital"), and Hunt Guillot & Associates ("HGA") (collectively the "Petitioning Creditors"). In support, Movants respectfully represent the following:

## I.
## REPLY

### A. The Involuntary Petitions Were Filed in Bad Faith

1. The involuntary petitions were filed in bad faith. This issue has been extensively briefed by all sides in a number of pleadings, and thus Movants will not reiterate every point

already raised on this issue and instead will only address new arguments raised by the Petitioning Creditors.

2. Petitioning Creditors state that the involuntary petitions were not filed in bad faith because previous post-judgment discovery was fruitless. *See* the Objection at ¶ 32. The mere fact that the Petitioning Creditors did not achieve the hoped-for result does not mean that post-judgment discovery was fruitless. Rather, it means that their hopes were unrealistic. Petitioning Creditors are simply deflecting from their own actions by complaining that Cadence and Century previously had a post-judgment discovery dispute with Cord and Cole Johnson. First, Petitioning Creditors argue that because Cadence and Century had post-judgment discovery disputes with Cord and Cole Johnson (that were resolved long before the involuntary petitions were filed), the involuntary petitions were not filed in bad faith. Specifically, Petitioning Creditors complain that Cadence and Century felt the need to file a motion to compel because they did not like Cord and Cole Johnson's objections to their discovery requests, and that Cole Johnson did not behave himself at his initial deposition.

3. As an initial matter, post-judgment discovery is adversarial. Cord and Cole Johson did not ignore the discovery requests, as Petitioning Creditor Spin Capital recently did in this very matter only a few days ago.[1] The banks simply did not like that Cord and Cole Johnson objected to some of their requests. In the same breath, the Petitioning Creditors are forced to admit that at least some of the objections were legitimate and were sustained. *See, e.g.*, the Objection at ¶ 11. Moreover, Cord and Cole Johnson supplemented their responses after some objections were overruled. The

[1] Spin Capital was served with written discovery on October 13, 2026, and its deadline to respond was November 12, 2026. On November 13, 2026, Spin Capital admitted it forgot about its discovery deadline and asked for an extension. When the extension was declined, Spin Capital then stated it had no temporal frame of reference for when it was required to respond, since its current management admits it has no knowledge of the circumstances under which Spin Capital decided to become a Petitioning Creditor or the allegations that Spin Capital has made to date. *See* Exhibit 1.

banks did not object to the new supplemented responses, and the parties moved on from the dispute. Simply put, the post-judgment discovery disputes regarding the banks' written requests have been resolved. The dispute is irrelevant to the inquiry before this Court and is merely an attempt to distract from the Petitioning Creditors' bad faith behavior.

4. Likewise, the Petitioning Creditors' complaint about Cole Johnson's behavior at his first deposition reflects after-the-fact whining about a dispute that has long since been resolved. Cole Johnson was unnecessarily combative and unresponsive at his first post-judgment deposition. Movants admit this freely. Cord and Cole Johnson then fired their previous counsel and hired Whitaker Chalk to represent them. Cole Johnson sat for another deposition, and the issues with his first deposition were resolved. The banks have not complained (nor can they) about his second deposition. Filing an involuntary petition against an opposing litigant because you do not like his deposition answers reflects a fundamental misunderstanding about the rules of procedure and the procedural mechanisms available to address challenges in discovery. Here, the Banks' recourse was to file a motion to compel.

5. The Petitioning Creditors also complain that they don't like the answers they received in post-judgment discovery. Petitioning Creditors claim that post-judgment discovery revealed that Cord and Cole Johnson are members of 50 companies, and Petitioning Creditors believe the Johnson Brothers are using these companies to transfer or conceal assets. Notably, Petitioning Creditors have zero evidence of any improper transfers or concealments, because no such transfers or concealments have occurred. Petitioning Creditors argue that in post-judgment discovery, Cord and Cole Johnson did not fully understand the structure of these 50 or so companies because they were set up by outside counsel and complain that post-judgment discovery showed some of the companies were transferring assets. Movants are not aware of caselaw to support the Petitioning Creditors' apparent contention

that being a member of 50 companies is a clear indicator of fraud. To the contrary, the Johnsons explained in detail, through three separate depositions, exactly how the various entities were structured and managed, and they explained that many in the real estate industry establish separate legal entities for each property acquired. Many real estate assets are owned by special purpose limited liability companies that exist to buy and own a single asset. Nothing about that is fraudulent, or even unusual. Further, lawful transfers occur in some of the companies with which Cord and Cole Johnson are involved, because they are actively conducting business. None of that proves fraud or fraudulent transfers. After years of discovery, Petitioning Creditors cannot point to any actual evidence or any specific examples to support their previous contention that these companies are being used by Cord and Cole Johnson to commit fraudulent transfers or to conceal assets. The mere fact that Cord and Cole Johnson do not recall each and every specific buyer or the exact details of years-old transactions proves nothing.

6. Petitioning Creditors' actual complaint here, with the histrionics removed, is that they do not like the fact that the true and honest answers they received in post-judgment discovery revealed that Cord and Cole Johnson, individually, do not own vast assets for them to seize and provided them no evidence of fraud. Frustrated creditors, who are disappointed with the honest answers they receive in discovery, do not acquire, by virtue of their disappointment, a license to file meritless involuntary petitions. Here, Petitioning Creditors simply seek an alternate forum to relitigate previously resolved discovery disputes, and these ancient quarrels do not dispel the specter of bad faith surrounding their filings.

**B. Petitioning Creditors' Argument that the Involuntary Petitions Are Not "Spiteful" is Disingenuous**

7. Petitioning Creditors also argue the involuntary petitions are not spiteful. Petitioning Creditors' evidence for lack of "spite" is that the "limited" post-judgment discovery

they received revealed Cord and Cole Johnson are involved in approximately 50 companies and that some of those companies buy and sell assets. *See* the Objection at ¶ 33. Respectfully, this is nonsense. Cadence and Century were given every opportunity by Judge Cureton to conduct written discovery and depositions, and their request to have a very aggressive receiver (Andrew "The Gator" Korn) appointed to replace two equally competent receivers (Jason Rae and Kelly McCullough) was granted. The banks and the receivers took full advantage of the discovery rules and the orders appointing the receivers to engage in every permissible form of asset identification. The various receivers personally inspected their personal residences, arranged to intercept their mail, imaged electronic devices, and pressured administrators at the elementary school where Cord Johnson's daughter attends to explain who paid her tuition. In each instance, the banks were disappointed with the results of such efforts, bullied the receivers into submitting their resignations, and ultimately prompted Judge Cureton to dissolve the receivership entirely.

8. The banks' refusal to timely pay the Receivers is well documented by the receivers themselves, in detailed filings with Judge Cureton that paint Cadence and Century in a very unflattering light. The Petitioning Creditors seem unable to discuss prior post-judgment discovery experience honestly. Cord and Cole Johnson produced more than 10,000 pages of documents to the Petitioning Creditors and to the federal court receivers. The Petitioning Creditors deposed Cole Johnson and his girlfriend. They deposed Cord Johnson twice. No motions were filed to compel further responses to any of their deposition questions. The Petitioning Creditors and the appointed receivers have conducted exhaustive post-judgment discovery and their complaints about the result of such efforts ring hollow.

9. Furthermore, an examination of the "evidence" that Petitioning Creditors cite to justify their supposedly "legitimate and well-founded concern that [Cole and Cord Johnson] would

dissipate or transfer assets beyond the reach of creditors" reveals that there is no evidence at all. *Id.* As discussed above, Cord and Cole Johnson's mere involvement with numerous companies is not evidence that fraudulent transfers are occurring. The allegation that those businesses are transferring assets, even if taken as true, is not evidence of a fraudulent transfer, especially since Petitioning Creditors do not allege the absence of reasonably equivalent value exchanged in such transfers. Petitioning Creditors have no evidence that anything improper is occurring. It appears that Petitioning Creditors filed the involuntary petitions precisely because exhaustive post-judgment discovery did not reveal a treasure trove of nonexempt assets for them to collect. Regardless of whether that counts as "spite," it is bad faith.

### C. Petitioning Creditors Have Already Changed their Story Regarding Cord and Cole Johnson's Alleged Improper Conduct

10. The Court should note that Petitioning Creditors' Objection represents a major retreat from their initial accusations in this matter. In the Pre-Conference Statements filed on September 28, 2026, and September 30, 2026, respectively[2] [Docket No. 11; Case No. 26-43993] [Docket No. 13; Case No. 26-43995], Petitioning Creditors affirmatively stated that Cord and Cole Johnson were both "actively engaged in hiding assets to avoid paying [their] creditors." *See* Pre-Conference Statement Docket No. 11 Cause No. 26-43993 at ¶ 19; Pre Conference Statement, Docket No. 13 Cause No. 26-43995 at ¶ 18. In the context of the Objection, Petitioning Creditors' previous accusations now appear to have been a knowing misrepresentation. Faced with the prospect of having to actually *prove* that Cole and Cord Johnson are "actively engaged in hiding assets," and knowing that they *cannot prove* this, Petitioning Creditors have instead attempted to move the goal posts. Petitioning Creditors now state that they filed the involuntary petitions because they were worried Cord and Cole Johnson "***would*** *dissipate or transfer* assets" (emphasis

[2] The Pre-Conference Statements were filed before these two matters were consolidated.

added). While the change in wording is minor, the change in meaning is material and substantial. Petitioning Creditors have abandoned the claim that Cord and Cole Johnson are "actively hiding assets" and now claim they filed the involuntary petitions merely because they had a concern that they *might* do so in the future. Petitioning Creditors have no evidence Cord and Cole Johnson have done anything improper, and now, they cannot even keep their story straight. A vague "concern" about what someone might do in the future is not grounds for filing an involuntary petition, with all of the potential harm this draconian device entails. The involuntary petitions were filed in bad faith, and the Petitioning Creditors' mischaracterization of past discovery disputes and their current recharacterization of why they filed these involuntary petitions exemplify Petitioning Creditors' bad faith.

**D. An Unproven Criminal Accusation is Not Material**

11. Petitioning Creditors next raise the issue that Cord and Cole Johnson have been accused (but not indicted) of a crime in Parker County, Texas. The Petitioning Creditors do this for two reasons. First, it is yet another shameless attempt at character assassination. Second, Petitioning Creditors argue that they have not caused any reputational damage to Cord and Cole Johnson, because the true source of any such damage is the Parker County arrests. This argument fails for an obvious reason. The Parker County District Attorney is not and has not been actively attempting to contact other creditors of Cord and Cole Johnson for the purpose of informing them Cord and Cole Johnson may be involuntarily placed into bankruptcy. Petitioning Creditors have already engaged in this behavior and are actively trying to learn the names of more creditors to continue this behavior. Petitioning Creditors are the only entities attempting to spread news of Cord and Cole Johnson's alleged financial issues, and they are the principal cause of any reputational harm they will suffer from these proceedings. Moreover, as described below, Cord Johnson is the personal guarantor of

numerous promissory notes that become immediately payable if he is placed into bankruptcy. Unfounded allegations of criminal behavior do not create immediate new financial obligations (beyond attorney's fees) for Cord and Cole Johnson, whereas being involuntarily placed into bankruptcy will.

12. Moreover, the arrests related to the Parker County accusation will not cause any serious harm to Cord and Cole Johnson because the charges are demonstrably false – so much so that the District Attorney's office is conducting further research and has thus far declined to submit the case to a grand jury to seek an indictment. The criminal allegations, unsurprisingly, arise from the Movants' unfortunate decision to do business with Spin Capital. As collateral for the usurious MCA loan Spin Capital provided to Bridgelink Engineering, LLC and guaranteed by the Movants, Spin Capital created a list of every company in which it believed Movants owned controlling interests (including Oak Creek Consulting and Production Services, LLC, which the Johnsons once owned but no longer owned at that time) and demanded all assets of those companies be pledged as collateral for the loan. Before signing the credit agreement with Spin Capital, Movants neglected to remove Oak Creek from the list. Some years later, Oak Creek was dragged into a lawsuit by Spin Capital, because Oak Creek had been listed on the credit application. Oak Creek later secured its dismissal from that lawsuit but nevertheless lodged a criminal complaint with the Parker County Sheriff's Department, complaining about its inclusion on a credit application and suggesting, erroneously, that the Movants' actions constituted fraud. They did not. It was merely a clerical error that Oak Creek now seeks to mischaracterize as a crime.[3]

[3] Cord and Cole Johnson, through their criminal defense counsel, are cooperating with the Parker County District Attorney to resolve this issue and to have the criminal complaint dismissed.

### E. Petitioning Creditors Fail to Address Numerous Other Instances of their Bad Faith

13. Petitioning Creditors claim that each "Bad Faith Flag" raised by Movants "has a ready record-based answer." *See* the Objection at ¶ 49. This statement has some surface appeal provided that Petitioning Creditors get to cherry pick which instances of bad faith they respond to and which ones they ignore. In reality, Petitioning Creditors' Objection merely regurgitates the same points regarding their bad faith that they previously raised in their response to the Motion to Dismiss. The problem for Petitioning Creditors with that approach is twofold. First, the repeated arguments fail for the same reasons described in Movants' *Reply to Petitioning Creditors' Response to the Motion to Dismiss* [Docket No. 33]. Movants won't belabor those points by repeating them here. Second, Petitioning Creditors ignore every instance of bad faith for which they do not have a "ready, record-based answer." *See* the Objection at ¶ 49. Specifically, Petitioning Creditors fail to answer any of the questions below, including those about Spin Capital's principal, Josh Lubin, himself a felon and adjudicated fraudster:

A. Why haven't the involuntary petitions been amended to remove Josh Lubin's improper signature, which Petitioning Creditors admit should not be there?

B. Why was Josh Lubin's signature included in the first place? Petitioning Creditors knew at the time of execution that his signature was improper. *See* the Motion at ¶ 19.

C. Why was Josh Lubin claiming that John Leininger and Otteson Shapiro, LLP was *not* Spin Capital's attorney and that the firm was lying when it stated it represented Spin Capital? Did Otteson Shapiro, LLP represent Spin Capital when the involuntary petitions were filed? To this day, it is unclear whether John Leininger and Otteson Shapiro currently represent, or ever represented, Spin Capital, since nobody has made a formal appearance or filed a corporate disclosure statement on behalf of Spin Capital. *See* the Motion at ¶ 17-18.

D. Josh Lubin admitted he never read the involuntary petition before he "signed" it on behalf of Spin Capital. This accusation is not even addressed, let alone denied. *See* the Motion at ¶ 36.

E. Why didn't any of the Petitioning Creditors file corporate ownership statements contemporaneously with the involuntary petitions, as required by the Bankruptcy Rules of Procedure? *See* the Motion at ¶ 34. Why has this statutory requirement been ignored by every Petitioning Creditor except Cadence, which belatedly filed its disclosure.

F. Why did the Petitioning Creditors lie on the involuntary petitions and state they knew of no related bankruptcy cases, when Cadence, Century, and HGA were actively involved in the related bankruptcy case of Bighorn Construction & Reclamation, LLC ("BCR")? *See* the Motion at ¶ 37.

G. How does HGA justify its actions in usurping an alter ego claim that belongs to the Chapter 7 trustee for BCR and in obtaining a state court judgment against Movants in violation of the automatic stay in the BCR Chapter 7 case? *See* the Motion at ¶ 41. Petitioning Creditors merely argue Cord and Cole Johnson don't have standing to assert this argument, instead of addressing the merits.

H. What reasonable inquiry, if any, was conducted into the relevant facts and law before the involuntary petitions were filed? *See* the Motion at ¶ 45.

Petitioning Creditors' "record ready" response to these glaring problems is to ignore them and hope that their war stories about long-resolved discovery disputes will distract this Court from their active malfeasance in this case.[4]

**F. Movants have Evidence to Support $20,000,000 in Damages**

14. Finally, Petitioning Creditors argue that a $20,000,000 bond is not justified because the involuntary petitions were not filed in bad faith and because Movants cannot prove those damages. At the bond hearing, Movants can and will prove that this damage number is reasonable or even conservative. First, Cord Johnson is the personal guarantor for millions of dollars of real estate loans. The actual borrowers in these various agreements are entities in which Cord Johnson is a member. The relevant contracts state that in the event of a default on the loan (and the filing of an involuntary petition against Cord Johnson arguably constitutes such a default), the entire obligation may become immediately payable. Every day that the involuntary petition against him

[4] Ignoring the elephant in the room does not make it disappear.

remains pending, Cord Johnson is at serious risk that lenders to his real estate entities will declare a default and call his guaranties.

15. Furthermore, the reputational damage in this situation is obvious and real. Cord and Cole Johnson's success as businessmen largely depends on their credibility and trustworthiness in the eyes of the lenders who finance their business ventures. An attempt to involuntarily place them into bankruptcy, and the equally public (though baseless) accusations that they are "actively hiding assets," are actions that constitute defamation *per se* and have unquestionably damaged their reputations, even if the accusations are later withdrawn or proven to be false. Other bankruptcy courts have acknowledged the damaging effect an improper involuntary petition has on an alleged debtor's reputation and have awarded damages accordingly. *In re. John Richards Homes Bldg. Co., LLC*, 291 B.R. 727, 729 (Bankr. E.D. Mich. 2003) (awarding $4,100,000 in reputational damages and stating, when awarding that amount, that "any lingering uncertainty about the calculation [damages] is a result of [petitioning creditor's] own conduct in filing the improper bankruptcy petition and thus must not be permitted to prejudice the [alleged debtor]"). Movants' documentary evidence and testimony at the trial will show that the requested bond is conservative, not speculative, and necessary.

## II.
## REQUESTED RELIEF

WHEREFORE, Cord and Cole Johnson request that the Court grant this Motion and enter an Order as follows:

1. Granting the Motion, as filed;
2. Order the Petitioning Creditors to post a bond in the amount of $10,000,000 for each involuntary petition as a condition of maintaining the involuntary petitions; and

3. Granting to Cord and Cole Johnson such other and further relief as may be just and proper.

November 20, 2026

Respectfully submitted,

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**

By: /s/ Robert A. Simon

Robert A. Simon
Texas Bar No. 18390000
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
rsimon@whitakerchalk.com
**ATTORNEYS FOR ALLEGED DEBTORS, CORD HENRY JOHNSON AND COLE WAYNE JOHNSON**

## CERTIFICATE OF SERVICE

I hereby certify on this 20th day of November 2026 I served a true and correct copy of the foregoing Reply upon all parties registered to receive service via this Court's ECF notification system.

*/s/ Robert A. Simon*
Robert A. Simon