Robert A. Simon
State Bar No. 18390000
**WHITAKER CHALK SWINDLE**
**& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**Attorneys for Alleged Debtors,**
**Cord Henry Johnson and Cole Wayne Johnson**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **COLE WAYNE JOHNSON and** | § | **Case No. 26-43993-MXM-7** |
| **CORD HENRY JOHNSON** | § | **Case No. 26-43995-MXM-7** |
| | § | **Chapter 7** |
| **Alleged Debtors.** | § | |

# CORD JOHNSON'S OMNIBUS MOTION TO COMPEL DISCOVERY RESPONSES

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

Cord Johnson (the "Movant") hereby files this Motion to Compel Discovery Responses (the "Motion") from Century Bank ("Century") and Cadence Bank ("Cadence"). In support the Movant respectfully represents:

## I.

## INTRODUCTION

1. This discovery dispute arises in the context of an involuntary petition (the "Involuntary Petition") filed against Movant on September 4, 2026. Century and Cadence are two of the petitioning creditors who signed the Involuntary Petition filed against Movant. Movant has filed a Motion to Dismiss the Involuntary Petition [Docket No. 14], currently set for hearing on January 25-26, 2027, and a Motion to Set Bond [Docket No. 20], which is currently set for December 23, 2026. One of the grounds underlying Movant's Motion to Dismiss and

Movant's Motion to Set Bond is that Century and Cadence filed the Involuntary Petition in bad faith.

2. On October 15, 2026, the Movant served its First Set of Interrogatories and First Set of Requests for Production (collectively the "Requests") on Century and Cadence, by and through their respective attorneys, John Leininger, of Otteson Shapiro, LLP and Michael Napoli of Akerman, LLP. True and correct copies of the Requests sent to Century and Cadence are attached hereto, incorporated herein by this reference, and marked as **Exhibit "A" and Exhibit "B"** respectively. Responses to the Requests were due on November 16, 2026. On November 15, 2026, Century and Cadence asked for an extension to November 20, 2026, which was granted without argument by Movant.

3. Despite the extension, Cadence and Century have failed to answer the Requests fully and completely. Century and Cadence filed the Involuntary Petition and have made numerous inflammatory allegations against Movant. Century and Cadence now refuse to answer questions about the basis for those allegations and the factual history leading up to the Involuntary Petition. If Century or Cadence are not willing or able to answer the Requests, they should withdraw as petitioning creditors. These issues cannot be resolved between the parties despite their mutual attempt to confer and requires resolution by the Court.

## II.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## RESPONSE TO OBJECTIONS

5. Movant believes the Involuntary Petition filed against him is improper and should be dismissed for a variety of reasons, including bad faith on the part of the petitioning creditors, which include Cadence and Century.

6. On September 28, 2026, the Movant filed a Motion to Dismiss the Involuntary Petition [Docket No. 14]. On October 15, 2026, Movant filed his Motion to Set Bond [Docket No. 20].

7. In connection to the Motion to Dismiss and the Motion to Set Bond, Movant served his Requests on Cadence and Century on October 15, 2026. The normal response time for such discovery requests is 30 days under Federal Rule 33 and 34. On November 15, 2026, Century and Cadence requested an extension, which was granted. On November 20, 2026, Century and Cadence served discovery responses, which responses are clearly evasive and inadequate. True and correct copies of Century's and Cadence's Objections and Responses to the Movant's First Set of Interrogatories and First Request for Production of Documents are attached hereto, incorporated herein by this reference, and marked as **Exhibit "C"** (Century responses) and **Exhibit "D"** (Cadence responses) respectively. After reading the discovery responses, counsel for Movant reached out to counsel for Century and Cadence to meet and confer regarding the responses. The meet and confer occurred on Wednesday, November 25, 2026. However, the parties were not able to agree on certain matters, which will require resolution by the Court. The disputed matters are set forth below.

### A. Disputed Interrogatory Responses of Century

8. Request No. 1 asks Century to identify the documents it reviewed or relied upon before agreeing to sign the Involuntary Petition. Century has refused to answer this question because it claims the list of documents reviewed were compiled by its attorney and thus constitute work product privilege. As an initial matter, Century in general has failed to produce a privilege log, which is not optional. *Goodyear Tire & Rubber Co. v. Ceva Logistics Singapore, Ltd.*, 348 F.R.D. 54, 69 (E.D. La. 2024) (When asserting work product privilege, "[t]he production of a privilege log, including the detail specified by Rule 26(b)(5)(A)(i) and (ii), is mandatory"). Century also freely admits that these documents are critically relevant to the underlying facts. Century states in their objection the documents they refuse to identify are "legally significant" and that the withheld documents show the facts that "supported the viability of this action." Exhibit A at 1-2. This objection is an abuse of the work product privilege. The work-product doctrine "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). "It protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979). Movant is not asking for materials specifically prepared for the Involuntary Petition, it is merely asking for what preexisting documents Century reviewed. Century's attorney merely putting preexisting documents into a list for Century to review does not transform the documents into work product. Work product privilege only protects attorney work product, not the underlying facts. *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir.

1982). Century cannot refuse to identify the documents it contends would explain why this bad faith petition is "viable" because its attorney supposedly compiled them together at some point.

9. Request No. 3 asks Century to identify any contracts, understandings, or other agreements that exist between Century and the other petitioning creditors. Century has refused to answer, stating without explanation that any applicable document is protected by work product "or any other applicable privilege" without even bothering to explain what those other privileges might be. When asserting a work product privilege, a party "***must*** (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added). This conclusion that Century's privilege objections are improper are also well supported by the relevant case law. Numerous courts have held that the party claiming the privilege must supply opposing counsel with sufficient information to assess the applicability of the privilege without revealing information which is privileged or protected. *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2nd Cir.), *cert. denied*, 519 U.S. 927, 117 S. Ct. 294, 136 L. Ed. 2d 213 (1996). Mere conclusory assertions of privilege are insufficient to satisfy this burden. *In re Grand Jury Subpoena*, 750 F.2d 223, 225 (2nd Cir. 1984) (citing *United States v. Kovel*, 296 F.2d 918, 923 (2nd Cir. 1961)).

10. Century makes no effort whatsoever to describe the nature of the documents it is refusing to identify. It is also totally unclear how an agreement between Century and an unaffiliated third-party could possibly constitute work product of an attorney. Movant made this request because it believes Century was offering financial rewards to other creditors of the Movant to induce them into joining the Involuntary Petition. For example, it appears to Movant

that Century offered to cover all of the litigation expenses of Spin Capital, an insolvent company with an insolvent owner, since Spin Capital is purportedly represented by the same attorney as Century and Spin Capital's owner, Josh Lubin, is currently having to represent himself *pro se* in his own bankruptcy case due to an apparent lack of funds.[1]

11. Request No. 13 asks Century to identify all communications between itself and the other petitioning creditors between January 1, 2025, and October 3, 2026, regarding the Involuntary Petition and whether the other petitioning creditors would participate in filing an involuntary petition against Movant. Century refused to answer this question and instead offered a boilerplate objection asserting attorney client privilege, work product privilege and common interest/join-defense privilege. The issues with these unfounded objections are obvious. Communications between Century and third parties are clearly not protected by attorney client privilege. The inclusion of a third party in the communication defeats the privilege. Likewise, Century's communications with a third party are not work product. The only objection that could even have a scintilla of legitimacy here is the assertion of common interest privilege. However, this objection falls apart upon examining when this privilege is applicable. The Fifth Circuit has stated that a common interest privilege applies in two circumstances:

> According to our circuit precedents, the two types of communications protected under the [common legal interest] privilege are: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel.

*United States v. Brown*, 151 F.4th 647, 656 (5th Cir. 2025) (citations omitted). The issue for Century here is obvious, they are not the defendants in this matter, they are the aggressors and plaintiffs. Century and the other petitioning creditors initiated this matter by filing the

[1] Josh Lubin's previous attorney in his New Jersey bankruptcy case stated that Josh Lubin's father had to pay her retainer in her motion to withdraw. A copy of the Motion to Withdraw and the supporting affidavit is attached hereto as **Exhibit "E."**

Involuntary Petition against Movant. Century is seeking affirmative relief against Movant. Century is not the "defendant" in this matter in any sense of the word. The need to be a defendant for this privilege to apply exists in both the civil and criminal context. *Id.* (declining to apply the common interest privilege when "there was no 'palpable threat of litigation' that would make [the objecting parties] 'potential co-defendants' in civil or criminal proceedings. Although [objecting parties] and the attorneys may have been aware that the **filing of a fraudulent petition** 'might someday result in litigation' that alone does not give rise to the protections of the common legal interest privilege.") (emphasis added) (citing *In re Santa Fe Int'l Corp*., 272 F.3d 705, 707 (5th Cir. 2001). Further, even if Century were a defendant in this matter, its interests are clearly not aligned with the other petitioning creditors. In the context of a bankruptcy, creditors' interests are not aligned. They are all competing for the same limited pool of money. Further, Century is actively suing Cadence for fraud and has alleged Cadence defrauded Century into giving a loan to Movant. At a minimum, the interests of Century and Cadence are not aligned as it relates to Movant. Consequently, none of Century's boilerplate privilege assertions protect these communications and they must be identified

**B. Disputed Production Responses of Century**

12. As an initial matter, Century has not actually produced any documents whatsoever and merely stated that it will do so without explaining when that will occur. Century must be compelled to produce all non-privileged documents immediately, not at some indeterminate date in the future.

13. Request No. 1 asks Century to produce any agreements between itself and the other petitioning creditors. Century has again asserted work product privilege and common interest privilege. For the reasons described above, none of these documents are protected by

either of these privileges. They are documents exchanged between third parties and must be produced. Moreover, like the interrogatories, Century has not produced a privilege log are even attempted to explain how the asserted privileges would be applicable.

14. Request No. 2 asks Century to produce its communications with the other petitioning creditors. Century objects based on a supposed common legal interest. For the reasons described above, the common legal interest privilege does not apply. Century also claims the request is overly broad and irrelevant in that it asks for communications regarding Century's lawsuit against Cadence for fraud. The request is not overly broad. It asks only for communications between January 1, 2025, and October 14, 2026. Moreover, the communications between Century and Cadence regarding their active litigation against each other is obviously relevant. Century accuses Cadence of defrauding it into giving a loan to Movant and now sued Cadence over the alleged fraud. If this allegation is true, it would call into question Cadence's motivations in filing an involuntary petition against Movant when it was apparently actively defrauding other banks into giving Movant a loan. If Cadence committed fraud in the transaction that gave rise to Movant's obligation to Cadence, that is clearly relevant to the current dispute.[2]

15. Request No. 4 asks Century to produce its communications with Josh Lubin, the owner of Spin Capital. Century again asserts a boilerplate work product and common interest privilege. Josh Lubin personally is not a petitioning creditor and is not owed a debt by Movant, so the assertion of a "common interest" is even more confusing in this context. Century further objects on the basis that the requests are not relevant because it does not concern whether "the Alleged Debtor is generally paying his debts as the[y] come due." *See* Exhibit C at pg. 15 of 21. This response is an intentional *non-sequitur*. Century and its counsel know exactly why this

[2] The fact that Century is suing Cadence for fraud regarding the same lending transaction that gave rise to their claims against Movant illustrative the absurdity of the claim that their interests are the same.

request was made, and it has nothing to do with proving that Movant was paying his debts as they come due. As detailed in previous filings, Otteson Shapiro, LLP, counsel for Century, represented that it also represented Spin Capital, LLC. Josh Lubin vehemently denied this assertion when asked whether Otteson Shapiro represented Spin Capital, LLC and expressed genuine disbelief when he was told what Otteson Shapiro, LLP had said to this Court. *See* **Exhibit "F**." On information and belief, Otteson Shapiro, LLP, possibly with the complicity of Century, lied to the Court about representing Spin Capital, LLC. Otteson Shapiro, LLP also did not sign the Involuntary Petition on behalf of Spin Capital, LLC, like it did on behalf of Century, for unknown reasons. These communications go to the heart of the issue with the Involuntary Petition. The Involuntary Petition was filed in bad faith and the petitioning creditors hurdled past all legal and ethical roadblocks that might have stood in the way of their attempt to "get" the Movant. These communications must be produced immediately, and Century must dispense with its sham objections.

16. Request No. 5 asks Century to produce the documents it relied upon when filing the Involuntary Petition. Century refuses to produce any of the documents for the same reasons it refused to answer Interrogatory No. 1. The objection fails for the same reasons. *See supra* ¶ 7.

17. Request No. 6 asks Century to produce any e-mails between itself and any other person it asked to join the Involuntary Petition. Century objects on the basis of common interest and work product privilege. This is a bad faith objection. An e-mail between a litigant and a person who is not even a party to the lawsuit is obviously not work product. It is also unclear why third parties who were solicited to participate in the Involuntary Petition and declined to do so have any common interest with Century.

18. Request No. 13 asks Century to produce its most recent quarterly financial statement. Century objects on relevance grounds. Century's financial health is clearly relevant. Century, along with the other petitioning creditors, has been asked to post a $20 million bond. Century objected to the Request to Set Bond Motion by stating that "[Cadence] and Century are banks that can plainly satisfy any award the Court might allow", and thus no bond should be ordered. *See* Objection to Bond, at ¶ 55 [Dkt No. 32]. Century has provided no evidence to support this assertion. Movant is not willing to take Century at its word under these circumstances, and the request is clearly relevant.

19. Request No. 14 asks Century to produce all documents it relied upon when asserting that Movant is "actively engaged in hiding assets to avoid paying his creditors." Century objects on the basis that the request is protected by work product privilege, and that the documents are supposedly in the public record and/or in the possession of Movant, thus the request is unduly burdensome. Century's objection is so disingenuous it would be laughable if this matter was not so serious. Century has claimed its primary motivation for filing the Involuntary Petition is that it believed Movant was actively hiding assets. Now, when asked to provide any evidence that this allegation is true, Century has totally refused to respond. Work product privilege does not protect the underlying facts of a claim. *Adams v. Mem'l Hermann*, 973 F.3d 343, 350 (5th Cir. 2020). Further, it is improper to object to a request on the basis that the requesting party already has possession of the (unidentified) document. A party must provide relevant discovery regardless of whether it is already available to the requesting party. *Federal Deposit Insurance Corp. v. Renda*, 126 F.R.D. 70, 72 (D. Kan. 1989) (defendant's refusal to produce documents was improper, as plaintiffs are entitled to review those documents which are in defendant's control regardless of whether plaintiffs are in possession of certain

documents which they requested from defendants); *Westhemeco v. New Hampshire Insurance Co.*,82 F.R.D. 702, 710 (S.D.N.Y. 1979) (plaintiff's possession of requested documents does not preclude plaintiff's request that defendant identify them, absent a showing of bad faith or harassment). Unsurprisingly, Movant also disputes Century's unsupported allegation that he has possession of any evidence that he is actively hiding assets, primarily because he is not doing that, and the allegation is a fabrication. Century's last objection on the basis that the requested documents are a matter of public record is meritless and confusing. *See, e.g., City Consumer Services v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.") (citing *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa. 1979)). At a minimum, Century must identify what documents it contends support its allegations of fraud and where these publicly available documents of fraud may be found. Realistically, Century must produce the documents supporting its allegations, or it should admit that no actual evidence exists to support its allegation, and that allegation was in truth an unsupportable misrepresentation.

20. Request No. 15 asks Century to produce any documents to support its assertion that Movant is not paying his debts as they come due, which Century has specifically alleged in this matter. Century has wholly refused to answer this request and asserts the same boilerplate objections that it asserted in relation to Request No. 14. The objections fail for the same reasons.

21. Request No. 16 asks Century to produce any communications between Century and all judgment creditors or litigation claimants Century referred to in ¶ 19 of its Preconference Statement. Century objects that this is overly broad and unduly burdensome, without explaining why. Century also claims all of the communications are protected by attorney client privilege, without explaining why communications with third parties are protected by attorney client

privilege. Century also objects that these communications are somehow work product, because it would reveal their mental impressions. Communications with third parties are simply not work product. Finally, Century objects on the basis of common interest privilege. Common interest does not apply in this situation. Century needs to produce these communications.

22. Request No. 17 asks Century to produce any documents supporting its allegation that Cadence "intentionally and recklessly" defrauded Century into giving Movant a loan. Century refuses to answer this request, on the basis that it is irrelevant. This loan is the basis of the dispute between Movant and the banks. Whether Cadence committed fraud in relation to that loan is clearly relevant to this dispute and goes to the matter of Cadence's good faith. The documents are relevant and must be produced.

23. Request No. 18 asks Century to produce any documents to support its specific allegation in the ongoing lawsuit between itself and Cadence that Cadence does not operate with integrity. Century has objected on the basis of work product privilege and relevance. The work product objection is made in bad faith. How Cadence operates its bank has nothing to do with Century's attorney's work product. Further, the relevance of that allegation is obvious. If Cadence does not operate with integrity, that would bear upon whether Cadence filed the Involuntary Petition in bad faith.

**C. Disputed Interrogatory Responses of Cadence Bank**

24. Request No. 3 asks Cadence to identify any contracts, agreements or understandings between itself and any other petitioning creditor. Cadence answered the request but only identified the credit agreement that itself and Century entered into with the Movant. The issue with this response is that it is objectively inconsistent with Century's response to the same question. Century identified no documents whatsoever in response to the same question.

Further, in response to Interrogatory No. 19, Century later claims a joint defense agreement exists between itself, Cadence and others. Both of these responses by Century are inconsistent with Cadence's response here. One or both are lying. Cadence, Century, or both, must supplement their relevant responses with the actual honest answer to this question.

25. Request No. 13 asks Cadence to identify all communications between itself and the other petitioning creditors between January 1, 2025, and October 3, 2026, regarding whether to file or participate in an involuntary petition against Movant. Cadence asserts the same boilerplate objections as Century did, asserting attorney client privilege, common interest privilege, or work product privilege. Cadence has produced no privilege log and does not explain why the privileges would apply. The boilerplate objections fail for the same reasons they fail when Century made this same objection to the same question. *See supra* ¶ 8.

26. Request No. 17 asks Cadence to identify any statement or representation made to a third party about whether that person should or would join the Involuntary Petition. Aside from pretending in bad faith that it does not understand the meanings of the word "statement" and the word "representation," Cadence refuses to answer because it claims the information is protected by attorney client privilege, work product privilege, and common interest privilege. These boilerplate privilege assertions, especially in the context of third parties who are not even party to this action, should be overruled.

27. Request No. 24 asks Cadence to identify the factual basis for its claim that Cord Johnson is actively engaged in hiding its assets. Cadence's answer is clearly evasive and inappropriate. Cadence responds to the request by referring Movant to its Objection to the Motion to Set Bond [Dkt. No. 32] claiming the objection and exhibits speak for themselves. They do not. The objection and its exhibits loudly shout: "no evidence exists." The issue with

Cadence's answer is that in the Objection to the Motion to Set Bond, the petitioning creditors did not allege that Movant was actively hiding assets but instead claimed they filed the Involuntary Petition because they had "legitimate and well-founded concern that [Movant] **would** dissipate or transfer assets beyond the reach of creditors." *See* Objection to Motion to Set Bond at ¶ 33 (emphasis added). The difference in the allegations is plain. The Court should ask itself the same question Movant finds himself pondering. Why are the banks so scared to produce evidence of Movant's alleged fraud? Surely such evidence would only damage Movant's position, of course assuming it actually exists. Cadence's objection does not answer the actual question asked, and its response must be supplemented. If the answer is "no evidence exists," Cadence should admit it and not hide behind bad faith objections.

**D. Disputed Production Responses of Cadence Bank**

28. Request No. 2 asks Cadence to produce all communications between itself and any other petitioning creditors between January 1, 2025, and October 14, 2026. Cadence has refused to answer, asserting the same objections Century asserted to this very same request. The objections fail for the same reasons. *See supra* ¶ 11.

29. Request No. 4 asks Cadence to produce any communications between itself and Josh Lubin between January 1, 2025, and October 2026. Cadence has refused to answer, asserting the same objections Century asserted to this very same request. The objections fail for the same reasons. *See supra* ¶ 12.

30. Request No. 5 asks Cadence to produce any documents it relied upon when deciding to join the Involuntary Petition. Cadence has refused to answer, asserting the same objections Century asserted to this very same request. The objections fail for the same reasons. *See supra* ¶ 13.

31. Request No. 13 asks Cadence to produce its most recent quarterly financial statement. Cadence asserts essentially the same objections that Century did to this request, with the exception that it claims the documents are publicly available. A document being publicly available is not a valid reason to object. *See supra* ¶ 14. The remaining objections fail for the reasons Century's objections fail. *See supra* ¶ 15.

32. Request No. 14 asks Cadence to produce any documents that support its assertion that Movant is actively engaged in hiding assets to avoid paying his creditors. Cadence refuses to answer, asserting the same bad faith objections Century made. The objections fail for the same reasons. *See supra* ¶ 16. Again, it must be asked, why are the banks unwilling to provide evidence of Movant's fraud?

33. Request No. 15 asks Cadence to produce any documents that support its assertion that Movant is not paying his debts as they come due. Cadence refuses to answer, asserting the same baseless, bad faith objections Century made. The objections fail for the same reasons. *See supra* ¶ 17.

34. Request No. 16 asks Cadence to produce any communications between itself and the entities referred to in paragraph 19 of the Preconference Statement. Cadence refuses to answer, asserting the same unfounded objections Century made. The objections fail for the same reasons. *See supra* ¶ 18.

**E. <u>Attorney's Fees</u>**

35. Cadence and Century should be ordered to pay Movant's attorney's fees and costs for having to file and litigate this Motion. Federal Rule of Civil Procedure 37 states in relevant part:

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity

> to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees

36. Movant has expended or will have expended at least $5,000 in reasonable and necessary attorneys' fees to prepare and litigate this Motion. Cadence and Century have refused to respond to relevant interrogatories and relevant requests for production on the basis of boilerplate privilege objections. Despite Movant's good faith attempt to meet and confer with Century and Cadence, the dispute could not be reasonably resolved. Century and Cadence will not respond to the Requests because they know answering the requests in an honest and forthright manner will indicate their bad faith. As other bankruptcy courts have noted "Petitioning creditors, who sign the petition under penalty of perjury, should have the documentation to support their claims before taking this serious step." *In re Taub*, 439 B.R. 261, 271 (Bankr. E.D. N.Y. 2010). Frankly, Movant fears that Century was correct when it asserted "the reality of Cadence Bank's core values proved to be significantly less than the bank claimed." *See* Exhibit F; Century's First Amended Complaint at ¶ 8.

## IV.

## <u>REQUESTED RELIEF</u>

WHEREFORE, the Movant requests that the Court enter an Order providing the following relief: (1) granting the Motion as filed; (2) compelling Cadence and Century to provide full and complete discovery responses within 7 days of the entry of the Order, without objection; (3) and ordering Cadence and Century to pay Movant's reasonable and necessary attorney's fees in the amount of $5,000 within 7 days of the entry of this Order. The Movant further requests such other and further relief as may be just and proper.

November 25, 2026

Respectfully submitted,

**WHITAKER CHALK SWINDLE &
SCHWARTZ PLLC**

/s/ *Robert A. Simon*
Robert A. Simon
State Bar No. 18390000
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: 817) 878-0501
rsimon@whitakerchalk.com
**COUNSEL FOR MOVANT
CORD JOHNSON**

## CERTIFICATE OF CONFERENCE

I hereby certify that, on November 25, 2026, I attempted to confer by email with John Leininger and Michael Napoli, counsel for Century and Cadence respectively, regarding the substance of this Motion. No response was received.

/s/*Robert A. Simon*
Robert A. Simon

## CERTIFICATE OF SERVICE

I hereby certify, on this 25th day of November 2026, I served a true and correct copy of the forgoing Motion upon all parties registered to receive service via this Court's ECF notification system.

/s/ *Robert A. Simon*
Robert A. Simon